Joshua D. Bendor, 031908
Timothy J. Eckstein, 018321
OSBORN MALEDON, P.A.
2929 N. Central Ave., Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
teckstein@omlaw.com
jbendor@omlaw.com

Stanley Young
Sarah MacDougall
Virginia Williamson
Covington & Burling LLP
5 Palo Alto Square
Palo Alto, California 94306
(650) 632-4704
syoung@cov.com

Katherine Chamblee-Ryan
Ryan Downer
Sumayya Saleh
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 656-5189
katie@civilrightscorps.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deshawn Briggs, *et. al.*,<br><br>                  Plaintiffs,<br>v.<br><br>County Attorney of Maricopa, *et. al.*,<br><br>                  Defendants. | No. CV-18-2684-PHX-EJM<br><br>**PLAINTIFFS' SECOND MOTION TO COMPEL** |

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs respectfully move to compel Defendant Treatment Assessment Screening Center (TASC) to perform an adequate search of key employees' emails for responsive documents. TASC has searched and started to produce emails of *one* managerial employee based on a list of search terms negotiated by the parties. But, despite demonstrably incomplete production that resulted from its search methods of other employees' emails, TASC refuses to perform a terms-based search of any other key managers' emails—and it refuses to search non-managerial employees' emails at all. Plaintiffs therefore ask this Court to compel TASC to perform an adequate search of the emails of certain employees most likely to have information critical to class certification, including key managers and the TASC employees who directly handled participants' cases and requests for financial assistance.

This information is central to Plaintiffs' request for class certification and proportional to the needs of the case. As described below, Defendant TASC's objections to producing it lack merit. Accordingly, this Court should grant Plaintiffs' motion to compel.

**I. BACKGROUND**

**A. Procedural History**

Named Plaintiffs filed this civil rights class action lawsuit on behalf of themselves and similarly-situated people on August 23, 2018 to challenge unconstitutional aspects of a marijuana diversion program jointly operated by the Treatment Assessment Screening Center (TASC) and the Maricopa County Attorney's Office (MCAO).[1] Specifically, Plaintiffs challenge three related policies:

> (1) Defendant TASC imposes longer terms of diversion supervision on participants who cannot afford to pay fees (the "wealth-based extension policy");

---

[1] Plaintiffs amended their Complaint on October 12, 2018, Doc. 20, and again on September 23, 2019, Doc. 110. Plaintiffs have since settled their claims on the merits with MCAO and are finalizing a settlement as to attorneys' fees with them as well.

2

(2) During those longer supervision terms, Defendant TASC requires those participants to continue to submit to and pay for invasive urinalysis tests (the "wealth-based extended urine testing policy"); and

(3) Defendant TASC terminates participants who cannot pay for urine-testing fees or make a monthly minimum payment toward program fees (the "wealth-based termination policy").

After denying Defendants' motions to dismiss in their entirety (Doc.89), this Court ordered the parties to engage in pre-certification class discovery (Doc. 98 at 2 n. 1). The class discovery period is scheduled to close on May 14, 2021. *See* (Doc. 203).

## B. Facts of the Discovery Dispute

Plaintiffs' request for an adequate search for and production of responsive emails stems from two sources: the Mandatory Initial Discovery Project (MIDP) and Plaintiffs' First Set of Requests for Production. The Mandatory Initial Discovery Project (MIDP) requires the parties to produce all electronically stored information (ESI) that "may be relevant to any party's claims or defenses." Doc. 5 at 5, 6–7. The MIDP also requires the parties to attempt to agree on "appropriate ESI searches, including custodians and search terms." *Id.* at 6.

Plaintiffs served Defendants with their First Set of Requests for Production on September 16, 2019, requesting information relevant to class certification. *See* Ex. A, Pls.' First Req. for Prod. Among other things, Plaintiffs requested all correspondence reflecting the MDPP program requirements, policies for program and urine testing fees, and discussion of individual participants' fee payments and requests for financial assistance. *See* Ex. A at Nos. 2, 3, 5, and 8; *see also* Ex. B, Chamblee-Ryan Decl. ¶ 4. Each of these requests specifically asked that Defendant TASC produce all responsive "email, text, or instant messages." *See* Ex. A at Nos. 2, 3, 5, and 8; Ex. B ¶ 4.

Two disputes subsequently arose regarding the scope and adequacy of TASC's search for responsive documents. First, TASC refused to search the email of any non-managerial employees. *See* Ex. B ¶¶ 24, 26. Second, although TASC contended it had searched the emails of managerial employees in four key roles, it refused to do so using

an agreed-upon set of search terms, contending instead that it had searched their emails "by topic." *See* Ex. B ¶¶ 21-22.[2]

The parties have negotiated these issues for more than a year. *See id.* ¶¶ 10-42. Plaintiffs sent their first deficiency letter addressing the inadequacy of TASC's search for email and other ESI on October 25, 2019, and a second deficiency letter addressing the same issues on December 18, 2019. *See id.* ¶ 15. After negotiating telephonically and over email, Plaintiffs sent another letter on February 19, 2020, detailing the specific custodians TASC should search, inquiring about TASC's search methodology, and asking TASC to agree to a list of search terms. *See id.* ¶ 23.

Further negotiations followed. *See id.* ¶¶ 24-26. As a result of them, TASC agreed to search the emails of one employee—Cheyenne Watson, the Diversion Program Manager/Diversion Program[3]—using an agreed-upon list of terms. *See id.* ¶ 27. The parties successfully negotiated a list. *See id.* ¶¶ 28-35; *see also* Ex. C, Negotiated List of Search Terms. During that process, TASC performed testing to assess the appropriateness of the selected terms and made adjustments, which Plaintiffs accepted. *See* Ex. B ¶ 33. TASC began to produce responsive emails from Cheyenne Watson's account on February 16, 2021. *See id.* ¶ 34. More than 400 pages have been produced so far, and production remains ongoing. *See id.* ¶¶ 34-35. However, TASC still refuses to search the e-mails of non-managerial employees. And aside from Ms. Watson, TASC will not agree to search any other employee's email using an agreed-upon list of terms. *See id.* ¶ 42.

After reviewing TASC's production so far, including the sample of participant files, and after an additional meet-and confer on March 3, 2021, Plaintiffs further

---

[2] Specifically, Defendant TASC searched emails of the Chief Operating Officer, Chief Program Officer, Diversion Program Director (also referred to as the Diversion Program Manager), and the Chief Executive Officer. *See* Ex. B ¶ 20.

[3] Plaintiffs have seen Watson referred to as both the "Diversion Program Manager" and "Diversion Program Director" in TASC's document production. Plaintiffs have asked TASC for clarification on this issue but have not received it. *See* Ex. B ¶ 38.

narrowed the list of employees for TASC to search, focusing on those most likely to have critical discovery. *See id.* ¶ 41. This narrowed list includes:

> (a) The following case managers: (1) Viviana Garcia; (2) Henry Rojo; (3) Leticia Nugent; (4) Yolanda Brooks; (5) Arnetia Cardona; (6) Josue Moreno;
>
> (b) TASC employees who held the following positions between August 23, 2016 and the present: (1) Chief Executive Officer (Douglas Kramer); (2) Chief Operating Officer (Marrya Briggs); (3) Chief Program Officer (Latrice Hickman); and (4) to the extent these positions were held by individuals other than Cheyenne Watson during the relevant period, the Diversion Program Manager and Diversion Program Director.[4]

Plaintiffs ask that TASC search all emails to and from each of these custodians between August 23, 2016[5] and the present, using the list of search terms that the parties have already negotiated, and which TASC has tested and used to search Cheyenne Watson's emails. *See* Ex. C. With respect to the case managers, Plaintiffs do need TASC to produce communications that occur solely between case managers and participants, since such communications already appear in the sample of participant files.[6] Outside of this exception, Plaintiffs ask that TASC produce all non-privileged documents identified by the search.

---

[4] Plaintiffs believe that Douglas Kramer, Marrya Briggs, and Latrice Hickman held the listed positions for all or the vast majority of the relevant period. For at least some part of the relevant period, Cheyenne Watson, whose emails TASC has already agreed to search, served as the Diversion Program Manager and Diversion Program Director. *See* Ex. B ¶ 38. However, Plaintiffs have also observed that the email production from Cheyenne Watson does not include any emails from prior to 2018, shortly before this lawsuit was filed. *See id.* To the extent any other person held these positions—or if those job titles did not exist, substantially similar positions—during the relevant period, TASC should search those emails as well.

[5] This time period is defined by the statute-of-limitations period, which is two years from when Plaintiffs filed this action on August 23, 2018. *See* Order on Mot. to Dismiss (Doc. 89) at 40-41.

[6] However, if a case manager forwarded such a conversation to another TASC employee and/or supervisor for any reason, this would not be excluded from production.

## II. LEGAL STANDARD

Both the Federal Rules of Civil Procedure and the MIDP govern discovery in this case. Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

After the party seeking to compel production has established the relevance of the requested evidence, the party resisting production has the burden to demonstrate that discovery should not be allowed. *See Andrich v. Arpaio*, No. CV-16-02111-PHX-DJH, 2018 WL 9785665, at *3 (D. Ariz. Sept. 4, 2018). The recitation of "boilerplate objections or blanket refusals" to a request for discovery is insufficient. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005); *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013) (noting that an objecting party "may not rely on boilerplate, generalized, conclusory, or speculative arguments").

Apart from the Federal Rules, the MIDP requires parties to produce documents and electronically stored information (ESI) that "may be relevant to any party's claims or defenses." MIDP (Doc. 5) at 5. Such production is mandatory regardless of whether the material is "favorable or unfavorable, and regardless of whether [parties] intend to use the information in presenting their claims or defenses." *Id.* at 2.

## III. ARGUMENT

For class certification, Plaintiffs must demonstrate not only that there is a "common policy or practice" affecting all class members, but also that the injuries suffered by the Named Plaintiffs are typical of the injuries suffered by putative class members. *See* Order on Pls.' Mot. to Compel (Doc. 173) at 13–14. TASC has argued that the policies challenged here were not "persistent and widespread" enough to constitute well-settled policies. *See* Doc. 29 at 5 (TASC's Mot. to Dismiss) ("Plaintiffs fail to allege facts regarding policies that TASC purportedly adopted, or any custom TASC had the discretion to implement that is so persistent and widespread that it constitutes a permanent and well settled entity policy." (quotations omitted)). TASC has indicated it intends to

continue making this argument at the class-certification stage. *See* Ex. D, TASC's Fourth Supp. MIDP Written Resp., at 15–18.

For this reason, Plaintiffs requested that TASC search for and produce documents showing how TASC's employees communicated with one another and with MDPP participants about TASC's policies, including policies regarding fee-waivers and reductions, termination, and extension. *See* Ex. A at Nos. 2, 3, 5, and 8. Plaintiffs now move to compel TASC to conduct an adequate search of the emails of its employees who are likely to have these communications: (1) six case managers; and (2) employees who held four key managerial roles. *See supra* at 5.

These communications are relevant to class certification. Email communications among key TASC employees will help Plaintiffs glean whether and how TASC instructed its agents to use any discretion regarding program requirements, extension and termination, charging and collecting fees, and drug and alcohol testing. Emails relating to TASC employees' application of the written policies can show how fee waivers, fee collection, drug and alcohol testing, and program extension and termination functioned in practice and may help show that the Named Plaintiffs and putative class members were subjected to the same practices and harmed in the same way.

However, TASC refuses to perform an email search of case managers at all. Moreover, although TASC contends it has searched emails of certain managerial employees, those searches were inadequate to identify responsive documents, and TASC refuses to perform a search using an agreed-upon list of terms.

**A. The Identified Custodians' Emails Are Highly Relevant to Class Certification**

As this Court has explained, three class certification elements—commonality, typicality, and adequacy—turn on whether the putative class members were harmed by a common policy or practice. *See* Order on Pls.' Mot. to Compel (Doc. 173) at 13 ("[J]ust as the existence of a common pattern or practice affecting all class members serves to establish commonality, it may also demonstrate typicality. Further, where named and

unnamed class members' interests are aligned because they share a common injury caused by a defendant's common pattern or practice of behavior, it supports a finding that the named plaintiffs will adequately represent the convergent interests of unnamed class members.") (citations omitted).[7]

Here, Plaintiffs challenge "not only written policies, but also TASC's allegedly unconstitutional unwritten policies and customs." Order (Doc. 179) at 13 (quotations omitted). Accordingly, at class certification, Plaintiffs must show that these policies were "so persistent and widespread as to constitute permanent and well-settled practice." *Id.*; *accord Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978). To do this, Plaintiffs must review not only what TASC purported to do as an official matter, but also what its employees actually did in practice. *See* Order (Doc. 179) at 13–14 (agreeing that evidence showing "how participants were actually treated" was "relevant to establishing TASC's pattern or practice of wealth-based discrimination and thereby demonstrating the commonality and typicality of the proposed class, as well as to show that Plaintiffs' interests are aligned with the putative class members such that Plaintiffs will adequately represent class interests").

The custodians on Plaintiffs' narrowed list are all highly likely to have responsive communications and documents in their email. Case managers are the front-line employees responsible for implementing the policies Plaintiffs seek to prove. As discovery so far has confirmed, they routinely field participants' questions about payment, distribute and collect financial hardship information, and determine whether a participant's diversion term should be terminated or extended. Their emails with their supervisors, one another, and other TASC employees will demonstrate how they were instructed and what they understood TASC's policies to be.

---

[7] *See also* Order (Doc. 173) at 12–13 ("Courts' analyses of typicality, commonality, and adequacy often merge, as these factors combine to establish 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011)). Plaintiffs must also demonstrate the challenged policies to satisfy the requirements of Rule 23(b)(2) and (3). *See* Order (Doc. 173) at 14–16.

1    Defendant TASC's recent production of Cheyenne Watson's emails demonstrates
2    this. For example, several emails document case managers' efforts to seek guidance about
3    how to address clients' financial struggles, as well as how supervisors advised them to
4    proceed. *See, e.g.*, Ex. E, Watson Emails, at TASC033665 (████████
5    ████████████████████████████████████████████████████████████████
6    ████████████████████████████████████████████████████████████████
7    ████████████████████████████████); *id.* at TASC033664
8    (████████████████████████████████████████████████████████████);
9    Ex. F, Watson Emails, at TASC033719–21 (████████████████████
10   ████████████████████████████████████████████████████████████████
11   ████████████████████████████).
12   Case managers' emails also evidence their communications about relevant issues
13   with one another. *See, e.g.*, Ex. E at TASC033665 (████████████████
14   ████████████████████████████████████████████████████████████████
15   ████████████████████████████████████); Ex. G, Watson Emails,
16   at TASC033998 (TASC counseling case manager explaining to another case manager
17   how to address a participant's non-payment of a fee). Other email correspondences with
18   case managers document meetings in which they were updated on changes regarding fees
19   and financial hardship applications. *See, e.g.* Ex. H, Watson Emails, at TASC033813; Ex.
20   I, Watson Emails, at TASC033915.
21   Both Plaintiffs' investigation and discovery thus far demonstrate that employees
22   in the managerial roles at issue were closely involved in decisions about how TASC
23   treated indigent participants. *See, e.g.*, Ex. J, MCAO Emails, at MC-01105–08 (email
24   discussion with Chief Program Officer Latrice Hickman, Diversion Program Manager
25   Cheyenne Watson, and an MCAO employee about whether and when TASC offers
26   financial assistance to diversion participants); Ex. K, Marrya Briggs Emails, at
27   Plaintiffs000927 (Chief Operating Officer Marrya Briggs explaining Defendant TASC's
28   policies for indigent participants over email); Ex. L, Kramer Letter, at TASC001534

(letter from Chief Executive Officer Douglas Kramer describing TASC's new practices with respect to indigent participants). Notably, TASC appears to agree that individuals in these positions possess relevant emails. Indeed, TASC identified these positions as appropriate for an email search when it performed such searches by "topic." Ex. B ¶ 20.

In sum, a search of the requested custodians' emails "is likely to produce persuasive information substantiating class allegations." Order (Doc. 173) at 9 (citing *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)); *see also Mann v. City of Chicago*, No. 13 CV 4531, 2017 WL 3970592, at *1-2 (N.D. Ill. Sept. 8, 2017) (granting motion to compel search of certain employees whose emails may shed light on unwritten policies, customs, and practices at issue).

### B. Defendant TASC Should Search Employee Emails Using the Parties' Agreed-Upon List of Search Terms.

Terms-based searches are a standard method of identifying responsive documents. *See, e.g.*, *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 109 (E.D. Pa. 2010). Here, a terms-based search is particularly appropriate. As described below, the email searches that TASC has performed without using search terms have proven inadequate to identify responsive documents. Moreover, the parties have already negotiated a list of search terms, which was tested by TASC and is currently yielding a high volume of responsive emails from TASC's Diversion Program Manager/Director, Cheyenne Watson.

Although TASC refuses to search non-managerial custodians' emails at all, it has searched certain managerial employees' emails by "topic." Ex. B ¶ 20-21. However, this search method is inadequate to identify responsive documents: after using an agreed-upon list of search terms for Cheyenne Watson's email, TASC produced more than 400 pages of relevant emails, most of which its earlier search by "topic" had evidently not identified, and additional production is forthcoming. Ex. B ¶¶ 34-35.

Many of these newly produced emails are central to the policies Plaintiffs must prove at class certification. They address, for example, announcements of fee-related policy-changes, *see, e.g.*, Ex. M, Watson Emails, at TASC033813; Ex. N, Watson Emails,

at TASC033915; documentation of participants' applications for financial assistance and demographic information related to indigence, *see, e.g.*, Ex. O, Watson Emails, at TASC033798; and correspondence with and about participants who could not afford fees, *see, e.g.*, Ex. P, Watson Emails, at TASC033720 (█████████████████████████████████████████████████████████████████████████████████████); Ex. Q, Watson Emails, at TASC034001 (███████████████████████████████████████████████████████████████). The new emails also included highly relevant attachments. For instance, one attachment appears to show that between July 2018 and June 2019, zero participants were placed on a sliding fee scale. *See* Ex. R, Watson Emails, at TASC033827.

Because TASC's original search method did not yield this production with respect to Cheyenne Watson, it follows that using these search terms—which the parties have already agreed to—for other key employees would similarly yield critical information. In these circumstances, ordering Defendant TASC to perform a terms-based search is appropriate. *See, e.g.*, *Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 2:12-CV-01361-SLG, 2015 WL 12592702, at *2 (D. Ariz. Apr. 6, 2015) (granting motion to compel a party to search its email archives using a specified list of terms).

### C. Defendant TASC's Objections Are Meritless.

Defendant TASC refuses to perform the requested searches based on three primary objections. First, Defendants claim that individual actions of non-managerial employees cannot give rise to a claim against TASC, citing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). *See* Ex. B ¶ 26. Second, Defendants object that discovery requests must focus only on the Named Plaintiffs. *See* Ex. B ¶ 5. Third, Defendant TASC contends that these searches are unduly burdensome and not proportional to the needs to the case. *See* Ex. B ¶ 24-25. None of these objections has merit.

Binding precedent forecloses TASC's first objection. Indeed, the words of *Praprotnik* itself contradict TASC's interpretation. In *Praprotnik*, the Court clearly stated

that "§ 1983 also authorizes suit for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." 485 U.S. at 121 (quoting *Monell*, 436 U.S. at 690). This is the present case: Plaintiffs allege that, however lawful TASC's *written* policies may have appeared on their face, the company's actual practices violated participants' rights. Communications among TASC's employees may help to prove Plaintiffs' claims.

TASC's objection also ignores this Court's prior conclusions in this case. In addressing Plaintiffs' motion to compel production of participant files, this Court found that the files were relevant because they "may enable Plaintiffs to prove the existence of an unwritten pattern or practice by TASC of wealth-based discrimination," and that "the existence of a policy or practice is relevant to establishing that Plaintiffs' bid for class certification satisfies the requirements of Rule 23(a) and Rule 23(b)." Order (Doc. 173) at 16. This Court also noted that "communications between TASC participants and their case managers regarding participants' inability to pay fees" were relevant for this purpose. *Id.* at 13–14. Thus, this Court has already found that non-managerial employees' communications are important to class certification.

TASC's second objection—that discovery requests must focus on Named Plaintiffs—makes no sense during a discovery period dedicated to the issue of class certification. TASC cites *In re Williams-Sonoma, Inc.*, 947 F.3d 535 (9th Cir. 2020), in support of its position, but that case does not support the proposition that discovery requests must focus on Named Plaintiffs during pre-certification class discovery. In *Williams-Sonoma*, the Ninth Circuit held that where "counsel is without a lead plaintiff for the class issues that counsel wishes to pursue . . . . using discovery to find a client to be the named plaintiff before a class action is certified is not within the scope of Rule 26(b)(1)." *Id.* at 540.

Here, this Court has already ordered discovery to enable Plaintiffs to carry their burden on class certification. Plaintiffs are not using this process to identify named

plaintiffs; they seek additional information to demonstrate commonality, typicality, and adequacy. *See Perez v. DirecTV Grp. Holdings, LLC*, No. SA CV 16-01440-JLS-DFMX, 2020 WL 3124353, at *2 (C.D. Cal. May 14, 2020) ("[U]nlike *Williams-Sonoma*, the class list discovery here was not sought solely to identify a new class representative, but also to support Plaintiff's class certification arguments and her expert's damages model, matters that are relevant to her claims and defenses under Fed. R. Civ. P. 26(b)(1).") (internal citations omitted). Having no basis in logic or the law, this objection should be overruled.

Moreover, this Court rejected an identical argument when TASC resisted production of the participant files. As this Court explained, "Plaintiffs must be able to discover more than just the files of the named plaintiffs in order to prove that TASC has an unconstitutional policy or practice so persistent and widespread that it constitutes a well-settled policy of wealth-based discrimination." Order (Doc. 173) at 16. This reasoning applies equally here.

Finally, TASC argues that the requested searches are unduly burdensome and not proportional to the needs to the case. *See* Ex. B ¶ 11. However, courts commonly order email searches comparable to or broader than that requested here. *See, e.g.*, *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07-CV-929 WWE, 2014 WL 6474285, at *3–4 (D. Conn. Nov. 19, 2014) (ordering defendants to perform email searches of twelve custodians); *Venturedyne, Ltd. v. Carbonyx, Inc.*, No. 2:14-CV-351-RL-JEM, 2016 WL 6694946, at *3 (N.D. Ind. Nov. 15, 2016) (finding that a list of 78 search terms was "reasonably calculated to lead to discovery of admissible evidence" and ordering the defendant to produce documents flagged by those terms). Indeed, a court in this District ordered a party to perform a supplemental search of key employees' email archives using eight additional search terms that were "reasonably required to generate a properly responsive pool of documents"—even though the party had already performed email searches using a list of 34 terms to produce approximately 500,000 pages of emails. *See Isola USA Corp.*, No. 2:12-CV-01361-SLG, 2015 WL 12592702, at *1–*2.

13

On the other hand, courts have found parties' efforts to limit email searches to only one or two custodians—as TASC has done here—unreasonable. *See, e.g.*, *A & R Body*, No. 3:07-CV-929 WWE, 2014 WL 6474285, at *3–4 ("The Court finds that defendants' proposal of one Connecticut and one corporate custodian is far too limited to provide the information which plaintiffs seek."); *Mann v. City of Chicago*, No. 13 CV 4531, 2017 WL 3970592, at *5 (N.D. Ill. Sept. 8, 2017) (finding that proportionality analysis "weigh[ed] in favor of allowing discovery of more than just the two custodians proposed by the City.").

With respect to the search terms, the parties have already developed a list of twenty-three search terms that TASC has agreed to use to identify relevant documents for one custodian. *See* Ex. C. TASC negotiated these terms, performed testing to hone them, and has used them to produce responsive documents from Diversion Program Manager/Director Cheyenne Watson's email. *See* Ex. B ¶ 28-34. Plaintiffs request only that this same list, already approved and tested by TASC, be reused to search for documents in the custody or control of TASC's other agents and employees. *Cf. Venturedyne, Ltd.*, No. 2:14-CV-351-RL-JEM, 2016 WL 6694946, at *3 (ordering defendant to produce documents flagged by the 78 search terms to which it had not previously objected).

Plaintiffs have also worked to mitigate any burden these searches impose on TASC. In particular, Plaintiffs have repeatedly narrowed the list of custodians for search. *See* Ex. B ¶¶ 37 40-41.  Now, based on Plaintiffs' review of discovery thus far, Plaintiffs move to compel searches only of those most likely to possess relevant information. For example, although case managers' emails frequently contain highly relevant information, *see supra* at 8–9, and although Plaintiffs are aware of at least 24 case managers who worked with MDPP participants during the relevant period, Plaintiffs have created a tailored list of six case managers for TASC to search, *see supra* at 5.

Finally, Plaintiffs' request is proportional under the factors listed in Federal Rule 26(b)(1).[8] As this Court has already concluded, "Plaintiffs have demonstrated the importance of class certification to their case, as well as the broader importance of the underlying constitutional issues at stake." Order (Doc. 173) at 18. Moreover, "because there are potentially thousands of class members," this Court has "f[ound] that the amount in controversy is likely to be very high." *Id.* at 19. As for the parties' relative access to information, Plaintiffs have no way to review TASC employees' emails—which uniquely demonstrate how formal and informal policies were applied and discussed in real time—unless TASC searches for and produces them. *Accord id.* at 20 ("Plaintiffs' lack of access to the information sought compared against the wealth of information at TASC's disposal weighs in favor of granting Plaintiffs' discovery request."). And, as described above, the requested searches are highly likely to produce responsive information, they are in line with searches other courts have deemed appropriate and not unduly burdensome, and Plaintiffs have tailored them to mitigate Defendant TASC's burden. *See supra* at 8–14.

As for the parties' resources, Defendant TASC has previously stated that it is winding down its operations and that, as a result, its lack of resources limits its ability to conduct discovery. *See* Def.'s Rep. (Doc. 178) at 5–6 (stating that TASC "will cease all operations by August 28, 2020" and that, as a result, "its resources are extremely limited"). However, in August 2020, TASC was acquired by Averhealth, a national for-profit corporation that has pledged to "ensure continuity" of TASC services and extend enhanced services to its existing customer base in Arizona and elsewhere.[9] Moreover,

---

[8] These include: (1) the importance of the issues at stake, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

[9] "Averhealth Expands Its National Footprint with the Acquisition of Treatment Assessment Screening Center (TASC) Drug Testing Services," PRNewsWire (Aug. 31, 2020), https://www.prnewswire.com/news-releases/averhealth-expands-its-national-footprint-with-the-acquisition-of-treatment-assessment-screening-center-tasc-drug-testing-services-301119943.html.

TASC has resisted Plaintiffs' efforts to learn any details about its financial resources, including those concerning the Averhealth acquisition.[10] *See* Ex. S, Def.'s Resp. to Pls.' Third Req. for Prod.; Ex. T, Def.'s Resp. to Pls.' Sec. Req. for Prod. Defendant TASC should not be permitted to escape its discovery obligations by claiming to lack resources while also rebuffing Plaintiffs' efforts to verify that claim.

## IV. CONCLUSION

As described above, the requested documents are likely to show official policy and common patterns and practices in support of Plaintiffs' forthcoming motion for class certification. The materials requested are also relevant, under both Federal Rule of Civil Procedure 26(b)(1) and the MIDP, and cause TASC no undue burden.

Accordingly, Plaintiffs respectfully request that the Court order TASC to search and produce all relevant electronic files and emails created, compiled, or maintained since August 23, 2016 by:

(a) The following case managers: (1) Viviana Garcia; (2) Henry Rojo; (3) Leticia Nugent; (4) Yolanda Brooks; (5) Arnetia Cardona; (6) Josue Moreno;

---

[10] In a deficiency letter addressing TASC's refusal to provide information about its finances, including whether an insurance agreement covers the cost of litigating this matter, Plaintiffs specifically noted TASC's reliance on its financial circumstances to mitigate its discovery obligations. *See* Ex. U, Pls.' Deficiency Ltr. (Sept. 16, 2020) ("Defendant TASC has put its financial status at issue in this case in seeking to reduce its discovery obligations. Defendant TASC recently represented to the Court that TASC lacks financial resources and that, because of this, the Court should require it to produce a smaller volume of program files. Doc. 178 at 5–6. The requested information is directly relevant to those contentions. . . . If Defendant TASC has insurance that covers its litigation expenses in this matter, this would seem a quite significant omission. And yet Defendant TASC's response to Plaintiffs' specific request for such an agreement refuses even to state whether such an agreement exists. Without clarity on this issue, then, Plaintiffs can only assume that it does."). During a subsequent telephonic conference, TASC's counsel stated that TASC's current status had no impact on its ability to fulfill its discovery obligations. *See* Ex. V, Email from Katie Chamblee-Ryan to Robert Henry (Nov. 18, 2020).

(b) TASC employees who held the following positions[11] between August 23, 2016 and the present: (1) Chief Executive Officer (Douglas Kramer); (2) Chief Operating Officer (Marrya Briggs); (3) Chief Program Officer (Latrice Hickman); and (4) to the extent these positions were held by individuals other than Cheyenne Watson during the relevant period, the Diversion Program Manager and Diversion Program Director.

Plaintiffs further request that this Court order Defendant TASC to conduct this search using the attached list of proposed search terms, which the parties agreed to use for the email search of TASC employee Cheyenne Watson. *See* Ex. C. In compliance with Rule 34, Plaintiffs ask that this Court order Defendant TASC to produce the results in native format. *See* Fed. R. Civ. P. 34(E). Finally, to avoid unnecessary delay, Plaintiffs respectfully request that this Court impose a deadline on Defendant TASC for compliance with these orders.

---

[11] Plaintiffs also ask that, if no one held these specific titles at any point during the relevant period, Defendant TASC search the emails of anyone who held a substantially similar role.

DATED this 24th day of March, 2021.

By /s/Katherine Chamblee-Ryan
Katherine Chamblee-Ryan
Ryan Downer
Sumayya Saleh*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009

Timothy J. Eckstein
Joshua D. Bendor
OSBORN MALEDON
2929 N. Central Ave., Suite 2100
Phoenix, Arizona 85012-2793

COVINGTON & BURLING LLP
Stanley Young
5 Palo Alto Sq.
Palo Alto, CA 94306
(650) 632-4704
syoung@cov.com

Sarah Mac Dougall
620 8th Avenue
New York, New York, 10018
(212) 841-1215
smacdougall@cov.com

Virginia Williamson
850 10th St. NW
Washington, D.C. 20001
(202) 662-5983
vwilliamson@cov.com

*Attorneys for Plaintiffs*

*Admitted to practice in Florida and Illinois. Not admitted in the District of Columbia; practice limited pursuant to App. R. 49(c)(8), with supervision by Ryan Downer.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2021 I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Eric J. Markovich
United States District Court

| | |
|---|---|
| 1 | Evo A. DeConcini U.S. Courthouse |
| 2 | 405 West Congress Street, Suite 3160 |
| | Tucson, Arizona 85701 |
| 3 | |
| 4 | Robert Arthur Henry |
| | Jennifer Hadley Catero |
| 5 | Kelly Ann Kszywienski |
| | Amanda Z. Weaver |
| 6 | Snell & Wilmer LLP - Phoenix, AZ |
| 7 | 1 Arizona Center |
| | 400 East Van Buren |
| 8 | Phoenix, Arizona 85004-2202 |
| | bhenry@swlaw.com |
| 9 | jcatero@swlaw.com |
| 10 | kkszywienski@swlaw.com |
| | aweaver@swlaw.com |
| 11 | Phxecf@swlaw.com |
| | *Attorneys for Defendant Treatment* |
| 12 | *Assessment Screening Center, Inc.* |
| 13 | |
| 14 | ANN THOMPSON UGLIETTA |
| | JOSEPH BRANCO |
| 15 | Deputy County Attorneys |
| 16 | Maricopa County Attorney's Office |
| | CIVIL SERVICES DIVISION |
| 17 | Security Center Building |
| 18 | 222 North Central Avenue, Suite 1100 |
| | Phoenix, Arizona  85004 |
| 19 | uglietta@mcao.maricopa.gov |
| | brancoj@mcao.maricopa.gov |
| 20 | ca-civilmailbox@mcao.maricopa.gov |
| 21 | |
| | *Attorneys for Defendants Maricopa County* |
| 22 | *and Maricopa County Attorney Adel* |
| 23 | |
| 24 |                             /s/ Katherine-Chamblee Ryan |
| 25 | |
| 26 | |
| 27 | |
| 28 | |