1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9    Deshawn Briggs, et al.,                     No. CV-18-02684-PHX-EJM

10            Plaintiffs,                         **ORDER**

11   v.

12   County of Maricopa, et al.,

13            Defendants.

14

15          Pending before the Court is Plaintiffs' Motion to Quash Defendant TASC's

16   Subpoena to Slepian Smith, PLLC. (Doc. 220). TASC filed a Response (Doc. 230), and

17   Plaintiffs filed a Reply (Doc. 235). The Court finds this matter suitable for decision

18   without oral argument. For the reasons explained below, the undersigned will grant

19   Plaintiffs' motion in part.

20      **I.   FACTUAL AND PROCEDURAL BACKGROUND**

21          Named Plaintiffs Antonio Pascale,[1] Deshawn Briggs, and Lucia Soria[2] filed this

22   class action lawsuit on behalf of themselves and other similarly situated individuals

23   against Defendants Maricopa County, Allister Adel in her official capacity as Maricopa

24   County Attorney,[3] and Treatment Assessment Screening Center, Inc. ("TASC"). (Doc.

---

[1] The original named plaintiff, Mark Pascale, is now deceased. Upon motion by
Plaintiffs, the Court ordered the substitution of Mark Pascale's son, Antonio Pascale, as
the named party and personal representative of Mark Pascale's estate. (Doc. 171).
[2] This action also originally included as named plaintiffs Taja Collier and McKenna
Stephens. (Doc. 110 ¶¶ 320–457). Upon stipulation by the parties, Collier and McKenna
were dismissed with prejudice. (Docs. 137, 138).
[3] Allister Adel was substituted as successor for former Maricopa County Attorney
William Montgomery. (Doc. 115).

110). Plaintiffs filed their initial complaint on August 23, 2018, alleging claims under § 1983 for wealth-based discrimination in violation of Plaintiffs' Fourteenth Amendment rights, (Doc. 1 ¶¶ 351–56, 363–70), and unreasonable search and seizure in violation of Plaintiffs' Fourth and Fourteenth Amendment rights, *id.* ¶¶ 357–62. Defendants conducted the Marijuana Deferred Prosecution Program ("MDPP") in which Plaintiffs were enrolled. (Doc. 110 ¶ 1). Plaintiffs allege that their participation in the program was involuntarily extended solely because they were too poor to pay required program fees, thus violating their constitutional rights. *Id.* ¶¶ 487–522. This case is now proceeding on the second amended complaint filed by Plaintiffs on September 23, 2019. (Doc. 110). Plaintiffs are seeking compensatory damages, punitive damages, damages for pain and suffering, and declaratory and injunctive relief. *Id.* ¶¶ 489–90, 514–15.

Plaintiff Soria is a 38-year-old resident of Maricopa County. (Doc. 110 at 31). As stated in Plaintiffs' complaint, Soria is "unemployed and without income because her ability to work is severely limited by her medical conditions, which include diabetes and neuropathy." *Id.* In November 2018, Soria's doctor advised her to stop working because of her medical conditions, and she ended her employment as an assistant manager at Dollar Tree. *Id.* On December 28, 2018, Soria filed an application for Social Security disability insurance benefits. (Doc. 235-4).

In December 2018, Soria was pulled over by a police officer who alleged that he found marijuana in her car. (Doc. 110 at 31.). She chose to be placed in TASC's MDPP rather than face a fine or prison sentence. *Id.* at 32. In March 2019, Soria told the TASC employee facilitating the program orientation class that she had no income and could not afford the $950 program fee and $15 for each drug and alcohol test. *Id.* at 32–33. Soria's caseworker stated that her anticipated MDPP completion date was July 29, 2019, if she had a zero balance. *Id.* at 33. However, by July 29, 2019, Soria could still not pay the program fees and remained in MDPP. *Id.* at 34. Soria received her certificate of completion from TASC on September 4, 2019. (Doc. 230 Ex. 7).

On December 11, 2020, TASC served Plaintiffs' counsel with a Notice of Intent to

Serve a Subpoena on Slepian Smith, PLLC, the law firm representing Soria in her application for Social Security disability insurance benefits. (Doc. 220-1 at 1). The subpoena requests 11 categories of documents:

1. Soria's application for Social Security Disability Insurance benefits filed on December 28, 2018. . . .

2. All communications related to Soria's application for Social Security Disability Insurance benefits.

3. All documents relating to Soria's application for Social Security Disability Insurance benefits.

4. All communications relating to any hearing relating to Soria's application for Social Security Disability Insurance benefits.

5. All documents related to any hearing relating to Soria's application for Social Security Disability Insurance benefits.

6. All communications you had with the Social Security Administration relating to Soria.

7. All communications you had with medical personnel regarding any medical or health condition that affected Soria's ability to work.

8. All communications you had with any current, former, or prospective employer for Soria relating to Soria's ability to work.

9. All documents relating to Soria's ability to work.

10. All communications you had with Soria's attorneys in this Action relating to Soria's application for Social Security Disability Insurance benefits.

11. All communications you had with Soria's attorney in this Action relating to Soria's ability to work.

*Id.* at 9–10.

On December 29, 2020, Plaintiffs filed their motion to quash TASC's subpoena to Slepian Smith. (Doc. 220). Plaintiffs contend that the subpoenaed documents are confidential and that Soria has a privacy interest in them. Plaintiffs further argue that the subpoena is overbroad, that it seeks information protected by the attorney work product doctrine, and that it seeks information protected by the attorney-client privilege.

- 3 -

TASC contends that: (1) the documents sought by the subpoena are relevant and Soria has placed them in issue; (2) Plaintiffs have not met their burden to demonstrate that either the attorney-client privilege or the work product doctrine apply to protect any of the documents or communications at issue; (3) even if Plaintiffs had met their burden, documents transmitted between Slepian Smith and the SSA are not protected by the attorney-client privilege or the work product doctrine; (4) Soria has placed her disability status and ability to work at issue such that any privilege or protection that might have applied is waived; and (5) any confidential or otherwise private documents can be disclosed pursuant to the Court's protective order. (Doc. 230).

## II.   STANDARD OF REVIEW

As an initial matter, "[t]he general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." *Orthoflex, Inc. v. Thermotek, Inc.*, 2012 WL 1038801, at *1 (D. Ariz. Mar. 28, 2012) (citation omitted); *see also Ocean Garden Prod. Inc. v. Blessings Inc.*, 2020 WL 4933646, at *2 (D. Ariz. Aug. 24, 2020) ("A party normally does not have standing to seek to quash a subpoena issued to a nonparty unless it has some personal right or privilege with regard to the documents sought." (internal quotations and citations omitted)). "Standing exists, however, if a party claims privilege or a privacy interest in the documents being sought." *Id.*

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . ." Fed. R. Civ. P. 45(d)(3)(A)(iii). "A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents [or] communications . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A). "The party seeking quashal bears the burden of persuasion." *BBK Tobacco & Foods LLP v. Skunk Inc.*, 2020 WL 2395104, at

1    *2 (D. Ariz. May 12, 2020).

2         Finally, it is within the district court's discretion whether to quash or modify an

3    overly broad subpoena. *See, e.g.*, *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir.

4    1994 ("Though modification of an overbroad subpoena might be preferable to quashing,

5    courts are not required to use that lesser remedy first.").

6    **III.    DISCUSSION**

7              **A. Relevancy and Overbreadth**

8         Although Rule 45 does not list relevancy or overbreadth as reasons to quash a

9    subpoena, the scope of discovery allowed by a subpoena is identical to the scope of

10   discovery under Rule 26. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)

11   ("courts have incorporated relevance as a factor when determining motions to quash a

12   subpoena"); *see also  Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th

13   Cir. 1994) (applying both Rule 45 and Rule 26 standards to rule on a motion to quash a

14   subpoena). Rule 26(b) allows discovery of:

15               [A]ny nonprivileged matter that is relevant to any party's
16               claim or defense and proportional to the needs of the case
17               considering the importance of the issues at stake in the action,
                 the amount in controversy, the parties' relative access to
                 relevant information, the parties' resources, the importance of
18               the discovery in resolving the issues, and whether the burden
19               or expense of the proposed discovery outweighs its likely
20               benefit.

21   Fed. R. Civ. P. 26(b)(1). Thus, the Court may quash a subpoena as overbroad if the

22   documents requested are not relevant to the underlying action. *Gonzales v. Google, Inc.*,

23   234 F.R.D. 674, 680 (N.D. Cal. 2006) ("Overbroad subpoenas seeking irrelevant

24   information may be quashed or modified"); *Singletary v. Sterling Transp. Co.*, 289

25   F.R.D. 237, 241 (E.D. Va. 2012) (finding subpoenas that were overbroad and not tailored

26   to a particular purpose imposed an undue burden); *In re Subpoena Duces Tecum to AOL,*

27   *LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008).

28         "The limitations set forth in Rule 26(b)(2)(C) apply to discovery served on non-

parties." *Evanston Ins. Co. v. Murphy*, 2020 WL 6869292, at *2 (D. Ariz. Nov. 23, 2020). "In the third-party subpoena context, however, courts have often demanded a stronger-than-usual showing of relevance, requiring the requesting party to demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure*." BBK Tobacco*, 2020 WL 2395104 at *2 (internal quotations and citation omitted).

When a claim involves the plaintiff's alleged disability and ability to work, a social security disability application and supporting documentation may be relevant. *Morris v. Sequa Corp.*, 275 F.R.D. 562, 570 (N.D. Ala. 2011). In *Morris*, the plaintiff sued his former employer after being terminated for taking prescribed medication and alleged that he was eligible for benefits under his employer's short-term and long-term disability policy. The employer sought the plaintiff's social security disability file, which the plaintiff opposed as containing personal and private information that was largely irrelevant to the case. The employer argued that the plaintiff's application for DIB benefits and sworn statements as to the extent of his disability and alleged onset date were relevant to determining his eligibility for benefits under the employer's policy and his claim for past and future wages. The court agreed and found that the file was relevant and discoverable, and therefore denied the plaintiff's motion to quash the subpoena. *Id.*; *see also Nyanjom v. Hawker Beechcraft, Inc.*, 2014 WL 782740, at *1 (D. Kan. Feb. 25, 2014) (denying a motion to quash a subpoena for social security disability application records where the plaintiff's ability to work was at issue); *Meade v. Parsley*, 2010 WL 1506970, at *3 (S.D. W.Va. Apr. 14, 2010) (denying motion to quash subpoena where social security disability records were reasonably related to claims and defenses at issue).

However, where only some of the information contained in a file is relevant to the action, the court may find that the subpoena is overly broad. *Singletary*, 289 F.R.D. at 241. In *Singletary*, a breach of contract and Fair Labor Standards Act dispute between a truck driver and his former employer, the employer sought the plaintiff's complete employment files from four of the plaintiff's previous employers. The subpoena requests included the employment "application, evaluations, payroll records, correspondence,

notes, [and] records, omitting nothing." *Id.* at 239. In holding the subpoenas to be overbroad, the court recognized that the requested files "could lead to the production of medical information, social security numbers, payroll information, income tax information, information about family members, and other documents completely extraneous to this litigation," and were therefore not sufficiently tailored to seek only documents relevant to the plaintiff's compensation and contract claims before the court. *Id.* at 241; *see also Lewin v. Nackard Bottling Co.*, 2010 WL 4607402, at *1 (D. Ariz. Nov. 4, 2010) ("defendant's request to obtain plaintiff's entire personnel file from five former employers is, on its face, overbroad and not reasonably calculated to lead to the discovery of admissible evidence").

Finally, while use of the phrases "regarding" or "relating to" may indicate overbreadth, the use of such phrases alone does not automatically make a subpoena overly broad. *Stewart v. Mitchell Transp.*, 2002 WL 1558210, at *4 (D. Kan. July 11, 2002). Rather, whether a subpoena containing these phrases is overbroad is again determined if the documents sought are relevant and proportional to a claim or defense. *See Gonzales*, 234 F.R.D. at 680. In other words, what follows "regarding" or "relating to" is more important than those specific words. Where the court finds that the use of such phrases is overly broad, the court is not required to quash the entire subpoena and may instead modify the subpoena. *Stewart*, 2002 WL 1558210 at *4. In *Stewart*, the subpoenas at issue sought "all records, documents, and information in your possession *regarding* Larry G. Ramsey, including, but not limited to, your complete personnel file, job applications, job description and performance evaluations." *Id.* The court found that "use of the term 'regarding' makes this request overly broad on its face[,]" noting that "[t]he use of such omnibus phrases as 'regarding' or 'pertaining to' requires the answering party 'to engage in mental gymnastics to determine what information may or may not be remotely responsive.'" *Id.* (citation omitted). However, the court also found that use of "regarding" did not invalidate the entire subpoena as overbroad because specific documents were also listed. The court thus allowed discovery of the personnel

- 7 -

file, job application, job description, and performance evaluations. *Id.*; *see also Richards v. Covergys Corp.*, 2007 WL 474012, *4 (D. Utah Feb. 7, 2007) (quashing subpoenas as overly broad that requested "all documents in your possession or control regarding the employment of [plaintiff]" but allowing the requesting party to "redraft subpoenas which are narrower in scope and reasonably calculated to lead to the discovery of admissible evidence"); *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 255–56 (S.D. Ohio 2011) (quashing as overly broad subpoenas seeking "any and all personnel documents" because although the subpoenas sought relevant information, "compliance with the subpoenas will result in defendants receiving a plethora of documents, the vast majority of which would be completely unrelated to any possible issue in this case[,]" and stating "defendants must draft a far more narrow set of subpoenas" if they desire relevant information from plaintiffs' employers ).

Here, the Court must determine whether the information sought by the subpoena is relevant to the underlying action and whether the requests are sufficiently tailored to identify and produce responsive information. As an initial matter, whether Soria had the ability to work is relevant to her claims and TASC's defenses. In a wealth discrimination claim, the question of whether a person made "sufficient bona fide efforts legally to acquire the resources to pay" is critical to the claim. *Bearden v. Georgia*, 461 U.S. 660, 672 (1983). Thus, whether Soria had the ability to earn income to pay TASC's fees is relevant to this action. However, the pertinent inquiry is much more nuanced: The question in this case is not just whether Soria was disabled during the time period that she was enrolled in MDPP and therefore unable to work, but also whether she made any other efforts to pay TASC's fees, such as using money in savings or borrowing from family members. Further, this Court adjudicates many social security disability appeals and is intimately familiar with SSA standards and processes. Whether the SSA ultimately determines Soria to be disabled or not does not necessarily correlate with whether Soria was physically able to work and earn money to pay TASC's fees during the relevant time period, or whether Soria was reasonable in her belief that she was unable to work due to

her medical conditions. The present case is thus distinguishable from *Morris*, where the plaintiff's social security disability file was central to resolving his claim for benefits under his employer's short-term and long-term disability policies.

While some of the documents TASC seeks potentially help to answer the question of whether Soria was able work and earn money while enrolled in MDPP and are thus relevant to this action, the subpoena also seeks broad categories of information such as "all communications related to" and "all documents relating to" Soria's application for Social Security DIB, "all communications relating to" and "all documents related to" any hearing on Soria's application for DIB, "all communications" Slepian Smith had with the SSA "relating to" Soria, "all documents relating to Soria's ability to work,"[4] and "all communications" Slepian Smith had with Soria's attorneys in the present action "relating to" Soria's application for DIB. (*See* categories 2, 3, 4, 5, 6, 9, and 10). The Court finds that these requests are overly broad and not sufficiently tailored to request specific documents or communications, thus requiring Slepian Smith "to engage in mental gymnastics to determine what information may or may not be remotely responsive." *Stewart*, 2002 WL 1558210 at *4. Here, as in *Singletary*, TASC essentially seeks Soria's complete social security disability file. Vague requests such as "all communications related to" and "all documents relating to" Soria's application for Social Security DIB may yield some information pertinent to the claims and defenses at issue, but will also lead to the production of medical information and other sensitive documents that are largely irrelevant to answering the question of whether Soria made sufficient bona fide efforts to pay TASC's fees.[5] TASC may not simply ask for everything falling into the

---

[4] The Court notes that category 9 fails to narrow the request to any specific party and places no limitations on the scope of the documents sought. Further, it is redundant, as other categories already request communications from specific parties relating to Soria's ability to work.

[5] The Court notes that to the extent medical and other sensitive documents requested by the subpoena are relevant to this action, Soria cannot object simply because the documents are of a private and confidential nature, as the documents may still be properly disclosed pursuant to the protective order entered in this case. *See Ocean Garden Prod. Inc*., 2020 WL 4933646 at *3 ("Assuming further that Defendants have standing to challenge the third-party subpoenas on the grounds that they seek personal, confidential information, the Court finds that any privacy concerns are adequately addressed by the Court's protective order."); s*ee also Stewart*, 2002 WL 1558210 at *5

- 9 -

1   social security disability file basket and then peruse the documents at its leisure in hopes

2   of finding something relevant.

3       To be clear, the Court does find that categories 1, 7, 8, and 11 are relevant and

4   sufficiently tailored to produce relevant information. These categories request documents

5   and communications that specifically address the question of whether Soria's medical

6   conditions affected her ability to work and earn money to pay TASC's fees. Because

7   these requests lay out a clear subject of the communications and specific recipients, they

8   are not overbroad.

9       Plaintiffs aver that they "have already produced evidence substantiating that

10  [Soria] applied for disability benefits shortly before she began diversion supervision, as

11  well as voluminous medical records documenting the medical conditions that led her to

12  do so." (Doc. 220 at 7).[6] TASC contends that discovery conducted to date fails to

13  substantiate Soria's claims, and further notes several apparent contradictions in the

14  medical records that have already been provided. (Doc. 230 at 4–5).[7] In an attempt to

---

("a party may not rely on the confidential nature of documents as a basis for refusing to produce them, because '[c]onfidentiality does not equate to privilege'" (citation omitted)); *Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979) ("there is no absolute privilege for . . . confidential information").

[6] Plaintiffs state that they have produced approximately 650 pages of Soria's medical records, including a "Medical Assessment of Ability to Do Work-Related Physical Activities" form completed by Dr. Kahlon opining that Soria's impairments "preclude an 8 hour work day." (Doc. 220 at 3; Doc. 235 at 4). Plaintiffs also produced a letter dated October 9, 2020 from Slepian Smith stating that Soria applied for DIB on December 28, 2018, that a request for hearing was made on August 26, 2019, and that it generally takes 14–18 months for a decision to be made. (Doc. 220 Ex. A at 33).). At her deposition on November 13, 2020, Soria testified that her DIB application was still in process and that she had not received a denial of benefits. (Doc. 230 Ex. 4 at 86:1–10).

[7] TASC asserts that "certain discovery has revealed that Ms. Soria's claim that she is unable to work due to a disability may be false[,]" noting that the records do not actually contain the doctor's statements advising Soria to quit her job. (Doc. 230 at 4). TASC also notes that the SSA sent Soria paperwork for physical therapy, perhaps suggesting that the SSA has determined that she is not disabled because her condition can be managed by PT. *Id.* TASC also notes contradictory answers on various forms completed by Soria asking whether she was unable to work due to a disability, and a PT note stating that Soria was "actively seeking employment." *Id.* at 5.

This Court has presided over numerous social security disability appeals and has yet to come across a doctor's note specifically advising a patient to quit their job due to their medical conditions. Indeed, at her deposition on November 13, 2020, Soria testified that Dr. Kahlon did not give her anything in writing stating that she should stop working; it was just verbal. (Doc. 230 Ex. 4 at 116:19–24).

Though none of the examples TASC points to are necessarily dispositive to the

1   resolve the parties' dispute, Plaintiffs previously offered to withdraw their objections to

2   several of the subpoena categories and produce documents responsive to the issues TASC

3   raised in its response to Plaintiffs' motion to quash. (Doc. 235 at 1–2). Though TASC

4   rejected this offer, Plaintiffs are willing to provide Soria's application for social security

5   DIB, documentation of Soria's efforts to schedule a hearing on her disability claim (to

6   confirm that it remains pending), and any additional medical records that Soria submitted

7   to the SSA that have not already been provided to TASC. *Id.* at 2–3. The Court finds that

8   disclosure of these materials is appropriate and the Court will order Plaintiffs to provide

9   the relevant documents to TASC.

10      Accordingly, the Court will next consider whether any of the documents or

11   communications in the categories that the Court finds are relevant and not overly broad

12   are protected by the attorney-client privilege or the work product doctrine.[8]

13                   **B. Attorney-Client Privilege**

14      The attorney-client privilege protects confidential communications between

15   attorneys and clients that are made for the purpose of obtaining legal advice. *Upjohn Co.*

16   *v. United States*, 449 U.S. 383, 389 (1981). "Because it impedes full and free discovery

17   of the truth, [this privilege] is strictly construed." *United States v. Ruehle*, 583 F.3d 600,

18   607 (9th Cir. 2009). Attorney-client privilege exists:

19              (1) Where legal advice of any kind is sought (2) from a
20              professional legal adviser in his capacity as such, (3) the
                communications relating to that purpose, (4) made in
                confidence (5) by the client, (6) are at his instance
21              permanently protected (7) from disclosure by himself or by
                the legal adviser, (8) unless the protection be waived.
22

23   *Id.* The party asserting the privilege bears the burden to establish the privileged nature of

24   _____

25   SSA's ultimate disability determination, they do shed additional light on the question of
     whether Soria made sufficient bona fide efforts to obtain funds to pay TASC's fees. Thus,
26   while it is valid for TASC to subpoena documents to help determine Soria's disability
     status and her ability to work (or whether Soria "was reasonable in her purported
27   understanding that she could not work due to her medical status" (Doc. 230 at 5)), the
     subpoena requests must still be tailored and specific.
     [8] The Court notes that although Plaintiffs originally disputed the timeframe of the
28   subpoena requests, the parties have since agreed to limit the timeframe from December
     2018 to September 2019. (Doc. 230 Ex. 1 at 2).

the communications sought. *Id.*; *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). "Further, the proponent has the obligation of establishing for *each and every* communication all the elements of the privilege. There is no blanket claim of the privilege." *S. Union Co. v. Sw. Gas Corp.*, 205 F.R.D. 542, 551 (D. Ariz. 2002); *Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("blanket assertions of the privilege are extremely disfavored [and t]he privilege must ordinarily be raised as to each record sought to allow the court to rule with specificity" (internal quotations and citation omitted)).

"A person withholding subpoenaed information under a claim that it is privileged . . . must expressly make the claim and 'describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.'" *Games2U, Inc. v. Game Truck Licensing, LLC*, 2013 WL 4046655, at *5 (D. Ariz. Aug. 9, 2013)  (quoting Fed. R. Civ. P. 45(d)(2)(A)); *see also* Fed. R. Civ. P. 26(b)(5)(A). As this Court noted in *Games2U, Inc.*,

> In *In re Grand Jury Investigation*, the Ninth Circuit held that a party met its burden to demonstrate the applicability of the protections by providing a privilege log that identified the following: (1) the attorney and client involved; (2) the nature of the document (i.e., letter, memorandum); (3) all persons or entities shown on the document to have received or sent the document; (4) the date the document was generated, prepared, or dated; and (5) information on the subject matter of each document.

2013 WL 4046655, at *5 (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)). The Court further stated that, "[a]lthough sufficient, this list of identifiers are neither exhaustive nor necessary to carry the burden to describe the nature of the withheld documents and enable the parties to assess the claim of privilege." *Id.*

"Attorney-client communications 'made in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality.'" *Regents of Univ. of California v. Affymetrix, Inc.*, 326 F.R.D. 275, 279 (S.D. Cal. 2018) (citation omitted); *see also United States v.*

*Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) ("voluntarily disclosing privileged documents to third parties will generally destroy the privilege" (citation omitted)); *Richey*, 632 F.3d at 566 ("Voluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject."); *S. Union Co.*, 205 F.R.D. at 548 ("Because the attorney-client privilege is based on the idea of encouraging open communications between the attorney and the client, the confidentiality of the communications must be maintained. Accordingly, if the documents containing confidential communications are disclosed to third parties, the privileged status of the communications within the documents is lost." (citations omitted)). "The reason behind this rule is that, [i]f clients themselves divulge such information to third parties, chances are that they would also have divulged it to their attorneys, even without the protection of the privilege." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012) (internal quotations and citation omitted). Thus, "[a]ny exception to this rule must be construed narrowly to avoid 'creating an entirely new privilege.'" *Regents of Univ. of California*, 326 F.R.D. at 279 (quoting *In re Pac. Pictures Corp*., 679 F.3d 1121, 1128 (9th Cir. 2012)). For example, in *Pac. Pictures Corp.*, the court held that a party's disclosure of documents to the U.S. Attorney waived the attorney-client privilege. 679 F.3d at 1127–28. In rejecting the petitioners' theory of selective waiver and refusing to grant the privilege to these communications, the court reasoned that voluntary disclosure of the documents, whether to a civil litigant or the government, breaches confidentiality and undermines the intended purpose of the privilege. *Id.*; *see also In re Horn*, 976 F.2d 1314, 1316 (9th Cir. 1992) ("The purpose of the attorney-client privilege is to protect every person's right to confide in counsel free from apprehension of disclosure of confidential communications." (citation omitted)). Accordingly, "the proponent of the privilege must establish that it has not been waived." *S. Union Co.*, 205 F.R.D. at 551.

Here, Plaintiffs have failed to meet their burden to establish the privileged nature of the communications sought. While Plaintiffs' opposition to the subpoena is based primarily on relevancy and overbreadth, to the extent that Plaintiffs contend any of the

requested items are protected by the attorney-client privilege, it is Plaintiffs' burden to establish the privilege by providing a privilege log or affidavit describing the nature of the withheld documents. Yet Plaintiffs have not produced anything, instead stating that they "need not submit a privilege log in response to an overly broad request." (Doc. 235 at 9).[9] Without some kind of evidence, the Court is unable to assess whether the privilege applies to any specific document, just as TASC is unable to properly challenge the propriety of Plaintiffs' privilege claims. *See Ruehle*, 583 F.3d at 609 (Ruehle "made no effort to identify with particularity which of his communications to the Irell attorneys are within his claim of privilege" and "failure to define the scope of his claim of privilege weighs in favor of disclosure"); *see also In re Horn*, 976 F.2d at 1318 ("Blanket assertions of attorney-client privilege in response to a subpoena duces tecum are strongly disfavored."); *McCormick v. United States*, 2006 WL 8440318, at *3 (D. Ariz. Feb. 6, 2006) ("Failure to provide sufficient information may constitute a waiver of the privilege."). Because the Court finds that categories 1, 7, 8, and 11 are relevant and not overly broad, Plaintiffs would need to submit a privilege log or other documentation to establish the privileged nature of the communications sought. Furthermore, because categories 7, 8, and 11 involve communications with third parties and do not specifically request confidential communications between Soria and her attorneys at Slepian Smith, to the extent that the attorney-client privilege applies, it is waived.[10]

[9] Plaintiffs note that they have offered to consult with Slepian Smith about the creation of a privilege log, limited to the time period of when Soria submitted her application for DIB and when she completed MDPP. (Doc. 235 at 10).
[10] The Court further notes that Soria's statements to her attorneys at Slepian Smith were not "made in confidence," but rather for the purpose of disclosure to the SSA in her efforts to obtain DIB benefits. *See Ruehle*, 583 F.3d at 611 ("The salient point from a privilege perspective is that Ruehle readily admits his understanding that all factual information would be communicated to third parties, which undermines his claim of confidentiality to support invoking the privilege.").

Further, "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield . . . [and w]here a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *see also Solito v. Direct Capital Corp.*, 2018 WL 2283410, at *4 (N.H. Super. May 17, 2018) ("Ultimately, the issue is one of fairness; privilege is implicitly waived when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." (internal quotations and citation omitted)).

### C. Work Product Doctrine

"In contrast to the attorney-client privilege, the work-product doctrine can protect documents and tangible things that are both non-privileged and relevant if prepared in anticipation of litigation by or for another party or its representative." *Games2U, Inc.*, 2013 WL 4046655 at *5; *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 906 (9th Cir. 2004); *see also* Fed. R. Civ. P. 26(b)(3). This doctrine, "like other privilege rules, [is] narrowly construed because its application can derogate from the search for the truth." *U.S. v. 22.80 Acres of Land*, 107 F.R.D. 20, 22 (N.D. Cal. 1985). Like the attorney-client privilege, "[t]he burden of establishing protection of materials as work product is on the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion." *S. Union Co.*, 205 F.R.D. at 549; *see also Games2U, Inc.*, 2013 WL 4046655 at *5 ("A person withholding subpoenaed information under a claim that it is . . . subject to protection as trial preparation material must expressly make the claim . . . [and] may make a prima facie showing that the . . . work-product doctrine protects information by providing a 'privilege log' . . . ."); *see also Evanston Ins. Co.*, 2020 WL 4429022 at *3 (citing the lack of affidavit or other supporting document to prove attorney work product); *Callwave Commc'ns, LLC v. Wavemarket, Inc.*, 2015 WL 831539, at *3 (N.D. Cal. Feb. 23, 2015) (using a privilege log to determine whether the work product burden had been met). If the party seeking protection meets its initial burden, the "documents may only be ordered produced upon an adverse party's demonstration of 'substantial need [for] the materials' and 'undue hardship [in obtaining] the substantial equivalent of the materials by other means.'" *In re Grand Jury Subpoena*, 357 F.3d at 906 (quoting Fed. R. Civ. P. 26(b)(3)).

Here, Plaintiffs did not submit a privilege log, affidavit, or other documentation to support their argument that the documents sought are protected by the attorney work product doctrine.[11] Rather, Plaintiffs assert that the attorney work product doctrine applies because the documents sought by the subpoena were prepared for litigation. (Doc.

---

[11] *See infra* n. 9

220 at 8). But "[c]onclusory statements of privilege, without affidavits or other competent support, are not enough for the Court to find privilege." *Evanston Ins. Co.*, 2020 WL 4429022 at *3 (rejecting claim that work product doctrine applied where defendant had "not provided any affidavits from knowledgeable parties, any supporting case law, or any other competent indication that the materials were created 'because of' anticipated litigation and would not have otherwise been created, in substantially similar form, in anticipation of settlement between the adverse parties in the Underlying Action"). Further, not every legal matter constitutes litigation. An attorney's work drafting a contract or preparing an individual's tax return is not litigious in nature. While Slepian Smith represents Soria in her efforts to obtain social security disability benefits, it is questionable whether documents prepared in the course of this representation would be considered "in preparation for litigation" when benefits may be granted or denied without an administrative hearing. *See In re Grand Jury Subpoena*, 357 F.3d at 907 (adopting the "because of" standard, which "states that a document should be deemed prepared 'in anticipation of litigation' and thus eligible for work product protection under Rule 26(b)(3) if 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024 (2d ed. 1994)); *22.80 Acres of Land*, 107 F.R.D. at 25 (the doctrine "was designed to offer limited protection to materials that are prepared *because* litigation is anticipated *and for the purpose* of helping a party prepare to effectively litigate its side of a lawsuit").[12] Nor does either party

---

[12] As the court explained in *22.80 Acres of Land*,

> The work product doctrine was developed in order to discourage counsel for one side from taking advantage of the trial preparation undertaken by opposing counsel, and thus both to protect the morale of the profession and to encourage both sides to a dispute to conduct thorough, independent investigations in preparation for trial. These purposes would not be advanced by extending the protection of the work product doctrine to materials that are prepared in the ordinary course of business or primarily for a purpose other than use in

1    provide case law stating whether documents prepared for DIB proceedings are, or are not,

2    "work product" prepared "in preparation of litigation." Regardless, the only category that

3    this objection applies to is category 1, Soria's application for social security disability

4    insurance benefits, which Plaintiffs have already offered to disclose, making this point

5    moot.[13]

6        **IV.    CONCLUSION**

7        In sum, the Court finds that categories 1, 7, 8, and 11 are not overly broad. To the

8    extent that Plaintiffs argue any of the requests in categories 1, 7, 8, and 11 are protected

9    by the attorney-client privilege or the work product doctrine, Plaintiffs have failed to

10   meet their burden to establish the privileged nature of the documents or communications

11   sought. The Court further finds that categories 2, 3, 4, 5, 6, 9, and 10 are overly broad and

12   not sufficiently tailored to the issues at hand. Accordingly,

13       IT IS HEREBY ORDERED:

14       1. Granting Plaintiffs' Motion to Quash as to subpoena categories 2, 3, 4, 5, 6, 9,

15          and 10.

16       2. Denying Plaintiffs' Motion to Quash as to categories 7, 8, and 11.

17       3. Plaintiffs' objection to category 1 is moot, as Plaintiffs have offered to disclose

18          Soria's application for Social Security DIB.

19       4. Within ten (10) days of the date of this Order, Plaintiffs shall disclose to

20          TASC: (a) Soria's application for Social Security DIB; (b) documentation of

21          Soria's efforts to schedule a hearing on her disability claim (to confirm that it

22          remains pending); and (c) any additional medical records that Soria submitted

23

24          litigation. Thus, in determining whether given documents
             ought to be protected by this doctrine, it is important to ask
25           whether they would have been prepared in the normal course
             of events, even if there were no meaningful prospect of
26          litigation.

27   107 F.R.D. at 24 (internal citation omitted).
     [13] The attorney work product doctrine would not protect the communications at issue in
28   categories 7, 8, or 11. The Court has determined the remaining categories to be overly
     broad and it is thus unnecessary to consider whether any privilege applies.

to the SSA that have not already been provided to TASC.

5. Defendant TASC may draft a new subpoena to Slepian Smith as to categories 2, 3, 4, 5, 6, 9, and 10 that is narrower in scope and reasonably calculated to lead to the discovery of admissible evidence.

Dated this 30th day of March, 2021.


Eric J. Markovich
United States Magistrate Judge