Timothy J. Eckstein, 018321
Joshua D. Bendor, 031908
OSBORN MALEDON, P.A.
2929 N. Central Ave., Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
teckstein@omlaw.com
jbendor@omlaw.com

Katherine Chamblee-Ryan (*pro hac vice*)
Ryan Downer (*pro hac vice*)
Bina Ahmad (*pro hac vice*)
Sumayya Saleh (*pro hac vice*)
CIVIL RIGHTS CORPS
910 17th Street NW, Second Floor
Washington, D.C. 20002
(202) 656-5189
katie@civilrightscorps.org
ryan@civilrightscorps.org
sumayya@civilrightscorps.org

Stanley Young (*pro hac vice*)
Sarah Mac Dougall (*pro hac vice*)
Virginia Williamson (*pro hac vice*)
Nicholas Baer (*pro hac vice*)
COVINGTON & BURLING LLP
5 Palo Alto Sq.
(650) 632-4704
syoung@cov.com
smacdougall@cov.com
vwilliamson@cov.com
nbaer@cov.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deshawn Briggs, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> Allister Adel, in her official capacity as County Attorney of Maricopa County, et al., <br><br> *Defendants*. | No. CV-18-2684-PHX-EJM <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY** |

Plaintiffs oppose Defendant Treatment Assessment Screening Center's ("TASC") motion seeking to halt discovery on the basis of its recently filed motion for summary judgment. Motions to stay during the pendency of an undecided, "potentially dispositive" motion are disfavored in this district, and they carry a "heavy burden," requiring the party to "make a strong showing" justifying a stay—a showing that TASC has not made.

TASC's request for an immediate stay should be denied because it is predicated on the filing of a motion for summary judgment that is premature, factually misleading, and wrong on the merits. TASC's central thesis is that no Named Plaintiff "has ever had[] a claim against TASC" because they could afford to pay TASC's fees. *See* Def. Mot. to Stay (Doc. 252) at 1, 2. Not only does TASC's motion for summary judgment raise contested issues of material fact about whether Named Plaintiffs, given their financial circumstances, had the ability to pay TASC's program fees before they were extended solely for non-payment, but it also reflects a profound misunderstanding of the law applicable to Plaintiffs' claims. The core holding of *Bearden v. Georgia* and its progeny is that the body administering fees, like TASC, "must *inquire* into the reasons for the failure to pay." 461 U.S. 660, 672 (1983) (emphasis added). Accordingly, TASC could not extend or terminate any Named Plaintiff for non-payment, unless it first (i) assessed ability to pay, and (ii) determined that failure to pay was willful. A "peek" at the merits of TASC's summary judgment motion confirms that TASC completely ignores this basis for *Bearden* liability and cannot be "dispositive" of the entire action. Moreover, a stay is inappropriate because currently pending discovery is relevant to Plaintiffs' response.

TASC's desire to be shielded from the ordinary time and expense of litigation, while a meritless motion is pending, does not establish good cause for a stay. That is especially true because part of the supposed burden that TASC points to is hypothetical discovery requests that Plaintiffs have not even made. On the other hand, a stay would

unfairly prejudice Plaintiffs by delaying the adjudication of their claims and the resolution of this case. A blanket prohibition on discovery less than six weeks before the close of pre-certification fact discovery makes no practical sense.

For these reasons and the reasons that follow, TASC's motion to stay discovery pending resolution of its motion for summary judgment should be denied.

## RELEVANT BACKGROUND

On August 23, 2018, Plaintiffs filed this case on behalf of themselves and a putative class, alleging that certain practices by Defendant TASC and the Maricopa County Attorney's Office ("MCAO") violated their constitutional rights under the Fourth and Fourteenth Amendments. *See* Compl., Doc. 1.[1] After the Court denied TASC's motion to dismiss, *see* Doc. 89, this Court ordered the parties to conduct fact discovery for class certification purposes, the deadline for which is currently May 14, 2021. *See* Doc. 205.

In spite of this deadline, TASC filed a motion for summary judgment on March 10, 2021 that TASC falsely labels as "dispositive" of the entire case. *See* Def. Mot. for Summary Judgment (Doc. 246), at 12 n.23 (hereinafter "Def. MSJ").

On March 23, 2021, TASC filed a motion to stay discovery pending resolution of the motion for summary judgment. Def. Mot. to Stay, at 1, 6. TASC waited until one week before the start of a string of three depositions of former TASC case managers to raise with Plaintiffs its intent to seek this blanket order staying discovery. After hearing from the parties on the three depositions specifically, the Court ordered the depositions to go forward as planned. Mar. 25, 2021 Hr'g Tr. 15:1-8.[2]

Meanwhile, Plaintiffs have sought—and continue to seek—discovery that is commensurate with the present phase of discovery. After lengthy negotiations that

---

[1] The operative complaint was filed on September 29, 2019. *See* Sec. Am. Compl. (Doc. 110).
[2] Accordingly, the depositions of Viviana Garcia, Leticia Nugent, and Henry Rojo took place on March 27, 2021, March 29-30, 2021, and April 3, 2021, respectively.

3

lasted more than a year, TASC finally began producing responsive emails from one TASC program director (Cheyenne Watson) on February 16, 2021. Yet TASC refuses to perform a terms-based search for other key employees and refuses altogether to search and produce emails from *any* non-management level employee. Plaintiffs' recently filed motion to compel targets this information. *See* Sec. Mot. to Compel (Doc. 256), at 4-5. Plaintiffs have also served pending requests for production of documents and interrogatories seeking information about TASC's policies and practices for assessing eligibility for fee reductions, among other information. *See* Pls. Fourth Set of Req. for Prod; Pls. Sec. Set of Interrogs. Plaintiffs' counsel have initiated conversations with TASC's counsel regarding the scheduling of additional depositions.[3] These outstanding discovery requests seek information relevant to how TASC's policies regarding program fees actually worked in practice, including whether and to what extent TASC assessed Plaintiffs' inability to pay before extending them in the program for their failure to do so.

In the midst of Plaintiffs' efforts to collect this relevant information, and with the class-based fact discovery deadline looming, TASC's filing of a motion to stay discovery based on a premature and meritless motion for summary judgment is a delay tactic designed to frustrate resolution of Plaintiffs' claims.

---

[3] In particular, Plaintiffs recently asked to schedule the depositions of three former TASC employees Yolanda Brooks, Abigail Pacheco, and Cheyenne Watson, who held roles involving supervision of case managers. Plaintiffs were unable to proceed with these depositions earlier in the discovery period due to TASC's unreasonable delays in producing documents related to its key former employees and case managers. These three depositions have taken on new significance in this case because Plaintiffs discovered during the recent deposition of Leticia Nugent that TASC supervisors, including at a minimum Cheyenne Watson, instructed case managers—as recently as 2020—to "shred" incomplete applications for financial assistance submitted by TASC participants. In addition to providing Plaintiffs with relevant information about TASC's fee waiver policies and practices, these depositions will allow Plaintiffs to investigate TASC's potential destruction of documents that it was obligated to preserve.

4

**LEGAL STANDARD**

A party seeking a blanket stay of discovery "carries the heavy burden of making a strong showing why discovery should be denied." *See DRK Photo v. McGraw-Hill Companies, Inc.*, No. CV 12-8093-PCT-PGR, 2012 WL 5936681, at *1 (D. Az. Nov. 27, 2012) (internal marks and citation omitted). Indeed, courts in this circuit, including in this district, disfavor such stays. *Id.* at *1 ("A pending dispositive motion is not generally a situation that in and of itself would warrant a stay" (internal marks and citation omitted)); *Mlejnecky v. Olympus Imaging Am., Inc.*, No. 2:10-cv-02630-JAM-KJN, 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011). The Federal Rules of Civil Procedure also do not provide for an automatic pause on discovery solely because a potentially dispositive motion is pending. *Id.* A stay of discovery is justified only upon a showing of "good cause," *see* Fed. R. Civ. P. 26(c)(1), where the moving party must show a particularized need for the stay; broad, generalized allegations of harm are not enough. *DRK Photo*, 2012 WL 5936681, at *1.

Courts in this circuit deny stay requests if the moving party cannot establish that (1) "the pending motion [is] potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed"; and (2) "the motion can be decided without additional discovery." *Id.*; *accord Pac. Lumber Co. v. Nat'l Union Fire Ins. Co.*, 220 F.R.D. 349, 351–52 (N.D. Cal. 2003). Applying the two-part test warrants a "preliminary peek" at the merits of the pending motion, and a showing by the moving party, "that there is *at least an 'immediate and clear possibility of success'* on [that] motion." *DRK Photo*, 2012 WL 5936681, at *2 (emphasis added). Discovery proceeds if one or both prongs is not satisfied. *See, e.g., id.*; *Mlejnecky*, 2011 WL 489743, at *9 (denying defendant's motion for a protective order where defendant failed the first prong of the test). But even satisfying this two-part test does not relieve the moving party of its heavy burden to show good cause justifying a stay. *See DRK Photo*, 2012 WL 5936681, at *1 (noting "a stay *may* issue" if both prongs are satisfied (emphasis

5

added)). Courts in the Ninth Circuit consider factors such as the "harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004); *Smith v. Levine-Leichtman Cap. Partners, Inc.*, No. C 10-00010 JSW, 2011 WL 13153189, at *2-3 (N.D. Cal. Feb. 11, 2011) (finding both prongs satisfied but denying stay motion because moving party failed to demonstrate good cause). TASC cannot make any of these essential showings.[4]

## ARGUMENT

### I. TASC's Pending Motion for Summary Judgment Would Not Dispose of Plaintiffs' Action.

TASC's motion to stay discovery should be denied because TASC has not demonstrated "an immediate and clear possibility" that its pending motion for summary judgment would prevail. To the contrary, the necessary "peek" at the merits shows TASC's summary judgment motion has significant factual and legal failings and is not "potentially dispositive" of all of Plaintiffs' claims.

*First*, even accepting TASC's (incorrect) view of the applicable law, TASC's factual arguments about whether Named Plaintiffs' could afford to pay lack merit. For Plaintiffs Briggs and Soria, TASC selectively identifies expenses in their bank statements that, if totaled, could cover the financial obligations owed to TASC. *See* Mot. to Stay, at 2. For Plaintiff Mark Pascale, TASC asserts that Pascale had equity in his home and appears to suggest that he could have satisfied his debt to TASC by selling his home. *Id.* This Court should reject such arguments.

That the Named Plaintiffs qualified for public assistance—all three received nutrition assistance, and Plaintiff Soria was also on AHCCCS—is evidence of their low-income status and indicia of their inability to afford TASC's fees. *See, e.g.*, *Cain v. City*

---

[4] TASC's offhanded request in a footnote for a modification of the scheduling order under Rule 16(b)(4), *see* Def. Mot. Stay, at 4 n.4, is unsupported by good cause for the same reasons. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent").

6

*of New Orleans*, 281 F. Supp. 3d 624, 651 (E.D. La. 2017) (conducting *Bearden* analysis and noting that people who qualify for the services of a public defender are presumptively indigent and therefore presumptively unable to afford court costs). Indeed, MCAO itself seemed to acknowledge that receipt of public assistance was relevant to ability to pay, when it agreed to waive Plaintiff Soria's fee after "independently verif[ying] that Soria is AHCCCS insured, *which means that there is objective information showing that she is at or below 133% of the FPLs*." See Def. Statement of Facts, Ex. 20 (emphasis added); Def. MSJ, at 4.

      Furthermore, TASC's arguments reveal a deep lack of understanding of the challenges faced by those who live in poverty. That Plaintiffs may have had some money in their bank accounts at a single point in time does not establish that they were not poor or, more to the point, that they could reasonably divert more than $1000 of their limited funds to TASC within a 90-day period. Under *Bearden*, inability to pay does not require one to give up life's basic necessities, just as courts do not require one to be penniless to show inability to pay in other contexts. *See Williams v. Wells Fargo Bank*, No. 18-CV-02831-MEJ, 2018 WL 4378836, at *1 (N.D. Cal. June 4, 2018) (plaintiffs need not pay "their 'last dollar' or 'make themselves and their dependents wholly destitute'" to proceed in forma pauperis) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)). If TASC's crabbed view of Plaintiffs' ability to pay is countenanced, virtually no one would ever be able to prevail under *Bearden*. There would always be some purchase, meal, or belonging that could be tabulated, years later, to argue that the plaintiff *could* have afforded the fee in question only if he or she had foregone those specific expenses.

      TASC's arguments are also factually misleading. TASC fails to mention, for example, that Plaintiff Briggs's trip was a familial obligation that had been planned for a while and that he incurred some of the expenses TASC identifies *before* he began the diversion program. It also ignores that Plaintiff Soria had been unemployed for months

due to her disability and reasonably believed that she would be without a stable source of income for the foreseeable future.

At the least, TASC's summary judgment motion raises material, triable issues of fact about Plaintiffs' ability to pay TASC's fees given their financial circumstances, making the pending motion an inappropriate basis for staying discovery. *See DRK Photo,* 2012 WL 5936681, at *3 (denying stay where, after having peeked at the merits of defendant's motion for partial summary judgment, "facts susceptible to opposing inferences" existed and thus defendants did not show "a clear and immediate possibility of success" on its argument (internal quotation marks omitted)); *Anderson v. SeaWorld Parks and Entertainment, Inc.*, No. 15-cv-02172-JSW, 2017 WL 6448206, at *2-3 (N.D. Cal. 2017) (denying stay pending resolution of summary judgment motion because "preliminary peek" showed there may be material facts in dispute).

*Second*, TASC's summary judgment motion is not dispositive because it hinges on a misconstruction of the legal framework set out in *Bearden v. Georgia*, 461 U.S. 660 (1983). TASC attempts to shoehorn Plaintiffs' claims into a binary question that TASC falsely characterizes as "simple[]": whether Plaintiffs had the ability to pay TASC's fees. Def. MSJ, at 12 n.23; *see also* Def. Mot. to Stay, at 2 (noting TASC has moved for summary judgment because no Plaintiff can "establish that they were unable to afford the fees"). However, TASC's argument falls prey to the type of "easy slogan[] or pigeonhole analysis" that *Bearden* rejected. 461 U.S. at 666; *see also id.* at n.8. As *Bearden* and related cases have established, and as this Court recognized in denying TASC's motion to dismiss,[5] the relevant inquiry is not merely whether Plaintiffs were able to pay or not, but also whether TASC itself properly inquired into Plaintiffs'

---

[5] This Court highlighted that *Bearden* claims raise both due process and equal protection concerns and acknowledged the main holding from *Bearden* that a sentencing court (in this case, Defendant TASC) violates the constitution for "automatically" imposing a consequence for non-payment "without first determining" that the individual "had not made sufficient bona fide efforts to pay[.]" Doc. 89, at 17-18 (citing to *Bearden*, 461 U.S. at 662).

8

inability to pay and determined that any failure to pay was willful before imposing a consequence for non-payment. *Bearden* held that, "that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." *Id.* at 672; *see also, e.g.*, *Alkire v. Irving*, 330 F.3d 802, 816 (6th Cir. 2003) (applying *Bearden* and holding that "'fundamental fairness' requires that a court inquire into an individual's reasons for failing to pay a fine or courts costs" (quoting *Bearden*, 461 U.S. at 672)). TASC's blinkered focus on Plaintiffs' ability to pay completely ignores that TASC was constitutionally required to assess Plaintiffs' financial circumstances and determine that non-payment was willful. TASC's failure to do so injured Plaintiffs and alone creates liability under *Bearden*. TASC does not argue in its summary judgment motion that it satisfied its constitutional obligations to Plaintiffs in this respect. A stay of discovery is therefore inappropriate because TASC's summary judgment motion misapprehends the constitutional rights at issue in this case.

    *Third*, TASC's contention that its pending motion for summary judgment will dispose of Plaintiffs' Fourth Amendment claims is unsound. In denying TASC's motion to dismiss, the Court found that continued drug testing of "pay-only participants" who remain in the program for more than 90 days could violate the Fourth Amendment to the extent there was not a sufficient government interest in the warrantless search. *See* Doc. 89, at 24-25. The Court instructed that discovery was needed to determine "whether the government's interest does outweigh the Plaintiffs' privacy interests, whether the special needs exception applies, and whether Plaintiffs' consent . . . made the searches permissible." *Id.* at 26.[6] Nowhere does the Court's Order say that the Plaintiffs' Fourth Amendment claims turn on ability to pay. Thus, TASC fails to demonstrate how its summary judgment motion is "potentially dispositive of the entire case," as TASC asserts. Def. Mot. to Stay, at 6.

---

[6] Plaintiffs submit that these issues are the proper subjects of merits discovery, not class discovery, further underscoring the untimeliness of TASC's summary judgment motion.

9

In view of the foregoing, this Court should deny TASC's stay motion because TASC fails to meet its burden of showing an "immediate and clear possibility" that its motion for summary judgment will dispose of Plaintiffs' claims. *See DRK Photo*, 2012 WL 5936681, at *2-3. TASC asserts in conclusory fashion that there is a "reasonable potential that the motion will be granted," Def. Mot. to Stay, at 6. But TASC's misplaced confidence in its own arguments is an insufficient reason to stay discovery. *See Zervas v. USAA Gen. Indem. Co.*, No. 2:18-CV-00051-JAD-EJY, 2020 WL 2840146, at *5 (D. Nev. June 1, 2020) (noting that "[m]otions for summary judgment are frequently part of federal practice" and that a stay "based on Defendant's confidence that it will prevail" applies "an overly lenient standard . . . likely to result in unnecessary discovery delay" (internal marks and citation omitted)).

**II.  TASC's Motion for Summary Judgment Cannot Be Decided Without Additional Discovery.**

Application of the second factor—whether the supposedly "dispositive" pending motion can be decided absent further discovery—also compels denial of TASC's motion for a stay. Courts have recognized that denying a protective order is "particularly appropriate if a stay of discovery could preclude either party from fully preparing for the pending dispositive motion." *See Pac. Lumber*, 220 F.R.D. at 352.

Here, a stay of discovery would halt Plaintiffs' ongoing and upcoming discovery efforts, that Plaintiffs would need, in part, to rebut TASC's argument that Named Plaintiffs have no *Bearden* claims. *See* Def. Mot. to Stay, at 2. Though TASC contends that no further discovery is needed to resolve the motion for summary judgment "since no Plaintiff needs discovery to assess their own finances," Def. Mot. to Stay, at 6, as explained above, TASC's motion rests on a superficial view of what inability to pay means and ignores *Bearden*'s core holding that requires TASC to inquire into financial status before extending Plaintiffs in the program solely for inability to pay. *See supra* 6-8.

10

For example, many of Plaintiffs' current requests seek information from TASC and its former employees that bear on how TASC's fee waiver policies worked in practice. This information goes directly to the practices and policies that Named Plaintiffs were subject to while they were in the program, including whether and, to what extent, TASC assessed their inability to pay. Specifically, Plaintiffs' recent motion to compel seeks emails from a targeted set of employees relating to, among other things, TASC's practices for assessing eligibility for fee waivers. *See* Pls. Sec. Mot. to Compel, at 7. Plaintiffs also have outstanding requests for production and interrogatories seeking information about TASC's practices with respect to reviewing fee reduction or waiver applications and guidance provided to TASC employees relating to same. *See* Pls. Fourth Set of Req. for Prod.; Pls. Sec. Set of Interrogs.

In addition, whether Named Plaintiffs were or were not able to pay TASC's fees within 90 days, given that they lived in poverty, is a complex factual question that calls for expert testimony and cannot be answered in a vacuum by taking a snapshot of Plaintiffs' bank statements at a moment in time. Accordingly, the evidence sought from TASC itself will be relevant to respond to TASC's motion for summary judgment, just as expert testimony will be relevant to whether Plaintiffs had the ability to pay. Denying TASC's stay request is "particularly appropriate" for this reason. *Pac. Lumber*, 220 F.R.D. at 352.

The two cases on which TASC relies are easily distinguishable, and provide no support for a stay in this action. In both, the court granted a stay in the absence of *any* showing by the plaintiffs for the need for further discovery to oppose the pending motion. In *Khalafala v. Kane*, No. 09-cv-1148-ROS-JRI, 2010 WL 3516746, at *2 (D. Ariz. Sept. 1, 2010), the court granted a stay because plaintiff articulated no reasons for why: 1) the pending summary judgment motion would not be granted, or that 2) "specific discovery was necessary to address the dispositive motion." *Id.* at *2. The court even noted that if plaintiff had made the latter showing, the court may have

"err[ed] on the side of pressing the matter forward." *Id.* And, in *Stavrianoudakis v. U.S. Dept. of Fish & Wildlife*, No. 1:18-cv-01505-LJO-BAM, 2019 WL 9667685 (E.D. Cal. Dec. 20, 2019), the court found good cause for the requested stay where, unlike here, the pending motion was already "fully briefed" and where the plaintiffs made no argument that discovery was needed to resolve them. *Id.* at *3. Unlike the parties opposing a stay in both cases, Plaintiffs are in the process of taking discovery that is needed to respond to TASC's summary judgment motion. TASC's stay motion fails on this basis.

### III. The Burden of Additional Discovery Is Insufficient to Establish Good Cause for a Stay.

The supposed burdens that TASC cites in support of a stay of discovery are insufficient to demonstrate a "strong showing" of good cause. The three case manager depositions, which TASC cited as the triggering reasons for its requested emergency conference with the Court, have already taken place.[7] The other remaining "burdens" that TASC asserts ring hollow for several reasons.

First, TASC asserts undue burden with respect to hypothetical discovery requests that Plaintiffs have not yet propounded. TASC speculates that it will be onerous to produce unredacted MDPP files, something Plaintiffs have not yet requested, let alone began negotiating. To the extent that TASC speculates about other future discovery requests, it can raise any concerns regarding the burdensomeness of a specific request with Plaintiffs' counsel and—as necessary—with the Court. A blanket stay of discovery is not the answer to address such hypothetical concerns.

Second, the other discovery expenses that TASC points to are ordinary activities incidental to litigation. TASC points to the time and expense associated with reviewing

---

[7] Recognizing that "litigation is, by its nature, expensive, and the depositions are always going to be a bit inconvenient for third parties," the Court ordered the three depositions to "go forward as scheduled[.]" *See* Mar. 25, 2021 Hr'g Tr. 14:23-25.

12

and producing emails from certain TASC employees. TASC says the emails will need to be reviewed for HIPAA and/or PHSA concerns and would require use of an outside vendor "since TASC has ceased operations and has no search capabilities."[8] TASC has not demonstrated how it would incur any atypical burdens in producing this relevant information. *See DRK Photo*, 2012 WL 5936681, at *3 ("some inconvenience and expense is not sufficient to establish good cause for a stay"); *Smith*, 2011 WL 13153189, at *2 ("The expense of discovery alone does not amount to good cause to stay discovery based on Defendants' argument that they are likely to succeed on the pending motions and could therefore avoid unnecessary expenses."); *S.F. Tech. v. Kraco Enterprises LLC*, No. 5:11-cv-00355 EJD, 2011 WL 2193397, at *4 (N.D. Cal. June 6, 2011) (finding "broad allegations of inconvenience" insufficient to show good cause and denying motion for protective order).

## IV. A Complete Stay of Discovery Would Unduly Prejudice Plaintiffs.

A complete stay of discovery will unnecessarily delay resolution of Plaintiffs' claims, resulting in unfair prejudice. In evaluating whether there is good cause for a stay of discovery, some courts in this circuit consider the stage of the litigation, including whether discovery has begun and the time invested into the case. *See, e.g.*, *Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-CV-0580-AC, 2016 WL 6963039, at *8 (D. Or. Nov. 28, 2016) (finding that the "early stage" of the litigation, where motion to dismiss had not yet been decided and "discovery on class certification issues" had not occurred, weighed in favor of a stay because delay would "not add appreciably to the life span of this case").

---

[8] The Court should not credit TASC's repeated argument that its closing of operations somehow contributes to burden. As discussed in Plaintiffs' motion to compel, TASC has resisted Plaintiffs' efforts to discover information about TASC's financial resources and acquisition by another company, Averhealth. *See* Pls. Sec. Mot. to Compel, at 15-16. TASC should not be allowed to evade discovery in this case by claiming it is resource-constrained while rebuffing Plaintiffs' efforts to verify that claim.

Here, further delay at this stage—while the parties are in the middle of discovery, and a mere six weeks away from the close of fact discovery—weighs against a stay. Plaintiffs filed their complaint in 2018; the Court denied TASC's motion to dismiss in 2019; and, after having served multiple rounds of discovery requests and filing two motions to compel, Plaintiffs are in the process of concluding fact discovery for class certification. TASC's assertions that there is "no urgency in getting the class certification issues resolved," *see* Def. Mot. to Stay, at 7; Mar. 25, 2021 Hr'g Tr. 7:20-21, belies TASC's own contributions to the delays.[9] It also ignores Plaintiffs' significant interest in vindicating their constitutional rights. Given that Plaintiffs' claims date back several years at this point and TASC says it is closing down, allowing the pre-class certification discovery to proceed in its normal course is important to avoid any loss of documentary evidence,[10] unavailability of third-party witnesses, and memories fading due to passage of time.

TASC's additional claim that Plaintiffs will somehow benefit from a stay of discovery is illusory. TASC says that Plaintiffs' discovery efforts will "drain[] the pool of funds from which Plaintiffs (and the putative class) may ultimately recover." Def. Mot. to Stay, at 7. But, Plaintiffs and the putative class will recover nothing if discovery is delayed indefinitely and TASC's motion for summary judgment is granted. Courts have rejected analogous reasoning as a basis for good cause. *Cf. Smith*, 2011 WL 13153189, at *2 (rejecting defendants' argument that the "expense of discovery," if discovery is not stayed, will "reduc[] the amount of available [payments]" to class members in a related action).

---

[9] At every turn, TASC has orchestrated maximum delay, either refusing to produce relevant evidence altogether or evading Plaintiffs' discovery requests through partial, incomplete productions. *See* Pls. Sec. Mot. to Compel, at 2 (noting TASC's refusal to search and produce relevant emails except for a single managerial employee).

[10] Plaintiffs' concerns about documentary evidence are especially pronounced in light of recent deposition testimony from case manager Leticia Nugent indicating that TASC has already "shredded" and failed to preserve relevant documents during the pendency of this litigation. *See supra* 4 n.3.

14

Finally, judicial economy counsels against a stay. Contrary to TASC's contention that the "goals of Rule 1" favor a stay, shutting down discovery is directly at odds with the principles of "just, speedy, and inexpensive" resolution of claims, as prescribed by Fed. R. Civ. P. 1. *See Qwest Comms. Corp. v. Herakles, LLC*, No. 2:07-cv-00393-MCE-KJM, 2007 WL 2288299, at *2 (E.D. Cal. Aug. 8, 2007) (noting that motions to stay discovery are generally "disfavored because discovery stays may interfere with judicial efficiency and cause unnecessary litigation in the future"). Granting the requested stay based on TASC's premature and meritless motion for summary judgment would delay this case for months, only to have the parties resume the class certification discovery they are now completing. This needless delay would work to the detriment of the parties and the Court.

## CONCLUSION

For the reasons discussed above, TASC's motion to stay discovery pending resolution of the motion for summary judgment must be denied.

DATED this 6th day of April, 2021.

Respectfully submitted,

/s/ *Nicholas Baer*

Timothy J. Eckstein
Joshua D. Bendor
OSBORN MALEDON, P.A.
2929 N. Central Ave., Suite 2100
Phoenix, Arizona 85012-2793

Katherine Chamblee-Ryan (*pro hac vice*)
Ryan Downer (*pro hac vice*)
Bina Ahmad (*pro hac vice*)
Sumayya Saleh (*pro hac vice*)
CIVIL RIGHTS CORPS
910 17th Street NW, Second Floor
Washington, D.C. 20002

COVINGTON & BURLING LLP
Stanley Young (*pro hac vice*)
5 Palo Alto Sq.
Palo Alto, CA 94306

15

Sarah Mac Dougall (*pro hac vice*)
620 8th Avenue
New York, New York, 10018
Virginia Williamson (*pro hac vice*)
Nicholas Baer (*pro hac vice*)
850 10th St. NW
Washington, D.C. 20001

*Attorneys for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2021, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Eric J. Markovich
United States District Court
Evo A. DeConcini U.S. Courthouse
405 West Congress Street, Suite 3160
Tucson, Arizona 85701

Robert Arthur Henry
Jennifer Hadley Catero
Kelly Ann Kszywienski
Amanda Z. Weaver
Snell & Wilmer LLP - Phoenix, AZ
1 Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-2202
bhenry@swlaw.com
jcatero@swlaw.com
kkszywienski@swlaw.com
aweaver@swlaw.com
Phxecf@swlaw.com

*Attorneys for Defendant Treatment Assessment Screening Center, Inc.*

Ann Thompson Uglietta
Joseph Branco
Deputy County Attorneys
Maricopa County Attorney's Office
CIVIL SERVICES DIVISION
Security Center Building
222 North Central Avenue, Suite 1100
Phoenix, Arizona  85004
uglietta@mcao.maricopa.gov
brancoj@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov

*Attorneys for Defendants Maricopa County and Maricopa County Attorney Adel*

17

1
2                                                                    /s/ *Nicholas Baer*
                                                                     Nicholas Baer (admitted *pro hac vice*)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28