# Ex. 18

[This exhibit is being filed under seal.]

# EXHIBIT 19

MICHAEL K. JEANES, CLERK
BY *J. Spelgatti* DEP.
FILED

17 SEP 15 AM 9: 42

WILLIAM G MONTGOMERY
MARICOPA COUNTY ATTORNEY

April Sponsel
Deputy County Attorney
Bar ID #: 023009
301 West Jefferson, 8th Floor
Phoenix, AZ 85003
Telephone: (602) 506-1131
mcaoctd@mcao.maricopa.gov
MCAO Firm #: 00032000
Attorney for Plaintiff

DR 201700028796 - Peoria Police Department
Arrowhead Justice Court

0131671718

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### COUNTY OF MARICOPA, EDC-DOWNTOWN

THE STATE OF ARIZONA,

    Plaintiff,

vs.

MARK PASCALE,
aka Mark Anthony Pascale

    Defendant.

$CR 2017 - 141973 - 001$

DIRECT COMPLAINT

**COUNT 1:** POSSESSION OR USE OF
MARIJUANA, A CLASS 6 FELONY (Mark
Pascale)

The complainant herein personally appears and, being duly sworn, complains on information and belief against MARK PASCALE, charging that in Maricopa County, Arizona:

**COUNT 1:**

MARK PASCALE, on or about May 1, 2017, knowingly did possess or use an amount of marijuana having a weight of less than two pounds, in violation of A.R.S. §§ 13-3401, 13-3405, 13-3418, 13-701, 13-702, and 13-801.

**DCO**

MC-00057

/s/ April Sponsel
Deputy County Attorney

It is requested that a **SUMMONS** be issued. **IT IS** requested that the Defendant appear for fingerprints and photograph.

Agency: Peoria Police Department

Complainant

Subscribed and sworn upon information and belief this /_/day of September, 2017.

AS/mm

2

MC-00058

Superior _____ COURT          Maricopa ___ County, Arizona

| State of Arizona Plaintiff | [CASE/COMPLAINT NO.] | **RELEASE** |
|---|---|---|
| -vs- | 2017-00028796 | **QUESTIONNAIRE** (To be completed by Law Enforcement) |
| Mark Pascale | Booking No. _____ | |
| Defendant (FIRST, MI, LAST) | | |

Alias(es)

## A.    GENERAL INFORMATION

Charges: 13-3405A1, 13-3515A, 13-3102A8

Offense Date: 05-01-2017          Offense Time: 1543

Location: 7500 W. Cactus Road Peoria, Arizona

Arrest Date: 05-01-2017          Arrest Time: 1607

Arrest Location: 7500 W. Cactus Road Peoria, Ariozna

Pursuant to A.R.S. 41-1750, were ten-print fingerprints taken
of the arrested Person?                ☐ Yes  ☒ No

Pursuant to A.R.S. 13-610, does one or more of the above charges
require the arresting agency to secure a DNA sample from the
arrested person                ☐ Yes  ☒ No

If yes, does the defendant have a valid DNA sample on file
with AZDPS?                ☐ Yes  ☒ No

If no, has the arresting agency taken the required sample?
                ☐ Yes  ☒ No

## B.    PROBABLE CAUSE STATEMENT

1. Summarize and include the facts which establish probable
   cause for the crime(s) charged. Certain felonies may be
   non-bondable and require facts which establish proof
   evident or presumption great for the crime(s) charged.
   These include (1) felonies involving a capital offense, sexual
   assault, sexual conduct with a minor who was under fifteen
   years of age, and (2) felony offenses committed when the
   person charged is already admitted to bail on a separate
   felony charge.

   Explain the crime(s) in detail (e.g., arresting officer or other
   law enforcement officers witnessed offense, physical
   evidence directly connects defendant to offense, multiple
   eyewitnesses, defendant admissions, victim statements,
   nature of injuries, incriminating photographic, audio, visual,
   or computer evidence, defendant attempted to flee or resist
   arrest).

2. The person entered or remained in the United States
   illegally. Explain in detail (e.g., admission of by the person,
   statements of co-defendants at the time of arrest, verification of
   illegal presence or proceeding establishes illegal presence):

3. The crime(s) occurred while the person was admitted to bail on
   any separate felony. Provide information on the separate felony:

Defendant's Name Mark Pascale _____ DOB ▆▆▆ Booking No. _____ Case No. 2017-00028796

## C.   OTHER INFORMATION (Check if applicable)

1. ☐ Defendant is presently on probation or any other form of release involving other charges or convictions. Explain:

2. List any prior Arrests:

Convictions:

Failures to Appear (FTA):

Protective Orders:

3. There is an indication of:

☐ Alcohol Abuse  ☐ Other Substance Abuse  ☐ Physical Abuse

☐ Mental Health Issues  ☐ Developmental Disability

Explain:

4. Defendant is employed by:

Address:

Cell/Phone:

How Long:

5. Defendants resides at:

With Who:

How Long:

Alternate Address for court notification:

6. Facts to indicate defendant will flee is released:

---

6.Cont.

7. Reasons to oppose an unsecured release:

8. ☐ Defendant speaks a language other than English

Language Spoken:

☐ American Sign Language

☐ Defendant requested an interpreter

## D.   CIRCUMSTANCES OF THE OFFENSE

1. ☐ Defendant used firearm or other weapon
Type:

2. ☐ Defendant injured someone. Explain:

3. ☐ Medical attention was necessary
Nature of Injuries:

4. ☐ Defendant threatened someone. Nature of threats:

5. Did the offense involve a child victim?  ☐ Yes  ☒ No

If yes, was the DCS notified?  ☐ Yes  ☐ No

6. If property Offense

a. Value of property taken/damaged:

b. ☐ Property was recovered

7. Names of co-defendant(s), if any:

## E.   CRIME(S) AGAINST PERSONS

1. Relationship of defendant to victim: _____

2. ☐ Victim(s) and defendant reside together

3. Law enforcement learned of the situation by

☐ Victim  ☐ Third Party  ☒ Officer Observation

4. ☐ Previous incidents involving these same parties Explain:

5. Defendant is currently the subject of:
☐ Order of Protection  ☐ Injunction against Harassment
☐ Other court order _____

6. ☐ Likelihood of inappropriate contact with victim(s) Explain:

Revised: 3/21/2017
MC-00060

Defendant's Name Mark Pascale _____ DOB _____ Booking No. _____ Case No. 2017-00028796

7. ☐ Victim(s) expressed an opinion on defendant's release
Explain:

4. State whether defendant was under the influence of
alcohol or drugs at the time of the offense

☐ Yes    ☒ No      ☐ Unknown
Type of substance:

## F.   DOMESTIC VIOLENCE DEFENDANT ISSUES

☐ Access to, or use of weapons

☐ Children/Vulnerable adults present

☐ Crime occurred in public

☐ Control/ownership/Jealousy Issues

☐ Depression

☐ Frequency/intensity of Domestic Violence increasing

☐ Kidnapping

☐ Potential for multiple violations of court orders

☐ Prior history of Domestic Violence

☐ Prior Protective Order

☐ Recent separations

☐ Stalking behavior

☐ Threats of homicide/suicide/bodily harm

☐ Violence against children, vulnerable adults or animals
Explain:

## H.   DRUG OFFENSES

1. If the defendant is considered to be a drug dealer, state the
supporting facts:
No.

2. State quantities and types of illegal drugs directly involved
with offense:
Marijuana

☐ Methamphetamine was involved:

☐ Drug field test was positive

☒ Defendant admitted drug type: marijuana

☐ Approximate monetary value of drugs _____

3. State whether money was seized ☐ Yes ☐ No Amount: _____

## G.   CIRCUMSTANCES OF ARREST

1. Did defendant attempt to:

☐ Avoid arrest ☐ Resist arrest ☐ Self Surrender Explain:

**If this is a fugitive arrest, complete the
affidavit as required by the Uniform
Criminal Extradition Act (ARS 13-3841 et
seq.)**

2. ☒ Defendant was armed when arrested? Type of weapon:
Handgun on the floor board of the car.

3. ☒ Evidence of the offense was found in defendant's possession. Explain:
Found in the center console of the vehicle he was driving.

I certify that the information presented is true to the best of my knowledge

| 05-01-2017 | M. Fuller | Peoria | 11205 |
|---|---|---|---|
| Date | Arresting Officer | Agency | Serial No. |

2017-00028796
Departmental Report #       Duty Phone No.

Pursuant to AO 2003-046, the oath has been
administered pursuant to the law and
required procedures.

MC-00061

Defendant's Name Mark Pascale _____ DOB _▮▮▮▮▮_ Booking No. _____ Case No. _2017-00028796_

## Additional Narrative

On May 1st, 2017 at about 1547 hours, I was dispatched to a non-injury hit and run accident in the area of 7500 W. Cactus Road Peoria, Arizona 85381. The caller stated they were involved in a road rage incident and the other vehicle hit them and then ran a red light. Upon my arrival, I made contact with the caller, (S) Mark Pascale, who was standing nest to his gold sedan bearing an Arizona license plate of BDK3825.

While walking up to the vehicle, I was able to observed in plain view a glass bong sticking out of the center console. The bong was clear, and marijuana leaves emblems on the sides of it. I asked Mark about the bong, and he stated it was his girlfriends and she had left it inside of the car.

I removed the bong from the center console and discovered an overwhelming odor of unburnt marijuana emitting from inside of the car. Also in the center console was a black pouch with a glass smoking pipe sticking out of it and several plastic cylinder containers. I removed the pouch and found a green leafy substance inside of them based on my training and experience as a Police Officer believed to be marijuana.

On the driver's floor board of the vehicle, I also located a small black in color handgun. I removed the .380 handgun and unloaded it at the rear of the sedan which it had a round chambered.

Officer M. Kane had been speaking with Mark about the hit and run accident. Once he was done, I advised Mark of his Miranda rights at about 1607 hours which Mark stated "yes to understanding his rights. Mark stated he had just dropped his girlfriend, Krystle Aguilar, off at work and it was her bong, pipe, and marijuana. Krystle also has a medical marijuana card according to Mark, and usually, he doesn't drive around with it in the vehicle. Mark, however, did admit to knowingly being in possession of it while also in possession of a handgun.

The green leafy substance was later impounded at the Peoria Police Department as evidence and submitted to DPS for testing of its content and weight. The handgun was left in Marks possession.

Due to Mark being found in possession of drug paraphernalia, marijuana, and a handgun the following charges are being submitted to the Maricopa County Prosecutors Office for charging; ARS 13-3405A1. ARS 13-3415A, and ARS 13-3102A8.

MC-00062

# EXHIBIT 20

## MARICOPA COUNTY ATTORNEY/TASC DIVERSION SUBMITTAL FORM

| | |
|---|---|
| **TASC ID:** Redacted 9808 | **CASE MANAGER:** VIVIANA GARCIA |
| DR #: Redacted 28796 | OFFENSE:  POM |
| SUBMITTAL #:   CR2017-141973-001 | ACCEPTANCE DEADLINE: |
| AGENCY:     PEORIA PD | 6  MOS TASC DEADLINE: 05/21/2018 |
| ATTORNEY:     MARC BIVENS | X   EDC ___ PRE IA ___ SEF ___ PREFILE |
| | ___ RE-ENTRY ___ 2ND OFFER ___ RCC |

TASC CLIENT:  PASCALE, MARK  ANTHONY                AKA:

| | |
|---|---|
| HOME ADDRESS: 13051 N. 75TH DR | BUSINESS PHONE: |
| | MESSAGE PHONE:  602-518-8271 |
| PEORIA AZ 85381 | CELLULAR PHONE: |

HOME PHONE: 602-619-5970

DEFENDANT'S DESCRIPTION:

RACE:                          SEX:  M              HAIR:               EYES:              HEIGHT:

WEIGHT:                    DOB:  Redacted 1958     SOCIAL SECURITY #:   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

TASC LETTER DATE:                                   X   PRESCREENING START DATE:11/21/17

X  PRESCREENING COMPLETION DATE:   12/27/17        ___ NO RESPONSE:

X  TASC ACCEPTANCE: 11/21/17                        ___ REFUSED TASC:

___ RESPONDED, FAIL TO APPEAR:                     ___ INCORRECT ADDRESS

___ FAILED PRESCREEN                               ___ OTHER:

___ TASC DENIAL:

X  **TASC COMPLETED IN FULL:**        7/5/18

X   TASC FEE PAID IN FULL: $150.00            MCSO FUND:  $0.00

X   DRUG FUND ASSESSMENT PAID IN FULL: $650.00 on 6/29/18

X   SEMINAR COMPLETED

X   DRUG TESTING NEGATIVE

___ **UNSUCCESSFUL TASC TERMINATION:**

| | | |
|---|---|---|
| ___ TASC FEE NOT PAID OR ONLY  PAID | **BALANCE:** | **MSCO FUND BALANCE:** |
| ___ DRUG FUND ASSESSMENT NOT PAID, OR ONLY  PAID | | **DRUG FUND BALANCE:** |

___ SEMINAR NOT ATTENDED/UNEXCUSED ABSENCES

___ DRUG TESTING POSITIVE ON DATES AND FOR THE DRUGS LISTED UNDER COMMENTS

___ NEW ARREST CHARGE

___ MOVED NO FORWARD ADDRESS

___ FAILURE TO PROVIDE URINE TEST

___ FAILURE TO RESPOND TO CONTACT LETTER

___ OTHER:

LAST KNOWN ADDRESS:  SAME AS ABOVE

PROTECTED HEALTH INFORMATION        TASC000221

**TASC ID:**          Redacted 9808
TASC CLIENT:  PASCALE, MARK  ANTHONY
DR #:              Redacted  3796
SUBMITTAL #:   CR2017-141973-001

COMMENTS:
CLIENT HAS SUCCESSFULLY COMPLETED  THE TASC POM  DIVERSION PROGRAM.

PROTECTED HEALTH INFORMATION     TASC000222



**TASC**

This certifies that

*Mark Pascale*

has successfully completed

The Maricopa County Attorney/TASC Adult
Deferred Prosecution Program

*Presented on July 5, 2018*

CEO

Case Manager

PROTECTED HEALTH INFORMATION     TASC000223



July 5, 2018

RE: CR # 2017-141973-001

Dear Mark Pascale,

You have successfully completed the Maricopa County Attorney/TASC Adult Deferred Prosecution Program.  The necessary paperwork has been submitted to the Maricopa County Attorney's Office (MCAO) for processing.

Please allow six to eight weeks for paperwork to be processed.  At that time you can go to the Customer Service Center to pick up your dismissal. The Customer Service Center is located at 601 W. Jackson Phoenix, AZ with hours of operation Monday- Friday 8am-5pm. Your case number has been referenced above for your convenience in order to obtain a copy of your court dismissal.

Congratulations and good luck to you in your future endeavors. Feel free to contact us if we may be of further assistance to you.

Sincerely,

Viviana Garcia
POM Case Manager
602-254-7328 Ext. 220-Phone
602-903-1290 -Fax

PROTECTED HEALTH INFORMATION        TASC000224

7/5/18  2:02:21PM

## Case Notes

### For

### PASCALE, MARK

Created on: 7/5/2018          Created by: vgarcia

CM called CT and informed CT GCMS were positive for RX but CM does not have an updated prescription for Morphine, in order for CM to complete CT from the program CM needs proof of morphine prescription CM has a prescription but dated 4/26/18. CT stated can get it for CM. CM informed CT to provide it before 5pm that way CM is able to complete CT from program today. CT stated if he can fax it to CM. CM stated yes and provided Ct CM fax number. CM informed CT once CM has prescription Cm can send completion papers to HQ. CT stated will go to pharmacy right now. CM reviewed program requirements.

Created on: 7/5/2018          Created by: vgarcia

CT turned in prescription for Morphine Sulfate dated 6/25/18 (30qty)

Created on: 7/5/2018          Created by: vgarcia

CM called CT informed CM has received prescription CM will be completing CT from program today CT can go into HQ to pick up completion papers. CM explained that after 6-8 weeks CT can go to pick up a court dismissal to location listed on letter. cT stated though he was never going to be done. CM stated the good thing CT completed program and does not have to worry about felony on record. CT acknowledged and thanked CM. CM reviewed program requirements.

Created on: 7/5/2018          Created by: vgarcia

CLIENT SUCCESSFULLY COMPLETED THE TASC DIVERSION PROGRAM. FILE WAS RETURNED TO COUNTY ATTORNEY TO BE DISMISSED.

PROTECTED HEALTH INFORMATION        TASC000225

7/5/18  2:02:21PM

## Case Notes

### For

### PASCALE, MARK

Created on:  5/10/2018          Created by:  vgarcia

CT turned in prescription for Oxycodone filled 4/26/18 120 qty and Morphine Sulfate.

Created on:  5/11/2018          Created by:  vgarcia

CT tested pos for OPI CT has prescription.

Created on:  5/31/2018          Created by:  vgarcia

CT tested pos for OPI CT has prescription.
CM sent GCMS request to lab.

Created on:  6/5/2018          Created by:  vgarcia

CT GCMS was pos for RX.

Created on:  6/21/2018          Created by:  vgarcia

CT called CM and stated today is CT birthday and has to test is CT can be excused from test. CM stated no must test when required, CM stated CT been compliant asked when is CT able to pay fee's to be S.Term. CT stated is hoping by next week. cM stated once fee's are paid to contact CM. CT stated he will. cM reviewed program requirements.

Created on:  7/2/2018          Created by:  vgarcia

CT called CM and stated has paid off fee's in full. CM reviewed CT requirements and informed CT of OPI positive on 6/29/18 and informed CT would have to pay for GCMS test to confirm positive. CT upset stated why id CT has paid fee's CT should be done. CM stated cannot complete CT from program due to positive, CT needs to confirm OPI per CA. CT upset (raising voice) stated that is is not right what TASC is doing CT has been in program longer than should have and CM is aware of CT prescription. CM stated is aware of medication but has been told numerous time CT is to pay for GCMS to confirm positive. CT (raising voice) stated this is ridiculous and TASC is just taking money away that. CM stated if CT continued to raise voice CM would have to disconnect call. CT calmed down, CM explained to CT again that CT would have to pay GCMS to confirm positive, it would be best if CT can do it by today so CM can send request to lab and hopefully CT can be done from program by Friday. CT stated he will pay for it. CM reviewed program requirements .

Created on:  7/2/2018          Created by:  vgarcia

CM sent GCMS request for OPI positive

Created on:  7/5/2018          Created by:  vgarcia

CM received CT GCMS result pos for RX.

PROTECTED HEALTH INFORMATION      TASC000226

4

7/5/18  2:02:21PM

## Case Notes

### For

### PASCALE, MARK

Created on: 3/21/2018          Created by: vgarcia

Called CM upset re: mandatory payment. CT stated was just told CT can pay $50 and CT did CT will try to gets funds for this month. CM informed CT put on mandatory payment as CT is behind CM is aware CM informed CT on only paying $50 but payments are of $160 leaving CT still behind. CT stated if he can just pay for UA. CM informed CT will have to pay additional $10 that does towards balance and per contract if CT does not make payment will be on mandatory payment, CT should have initially be done but has a big balance. CT stated he understood but is struggling did not have food last week had to go to food bank. CM suggested CT apply for food stamps if CT is struggling.

Created on: 3/27/2018          Created by: vgarcia

CT called CM and stated go an increase in credit card to pay balance. CM informed CT TASC only accepts money order or debit card if CT is able to pay balance and not test on 3/29/18 CT can be done. CT stated will talk to bank to see if CT can take money out to pay off balance. CM stated if CT pays off to contact CM. CT acknowledged.

Created on: 3/28/2018          Created by: vgarcia

CT called CM and stated was only able to get a cash advance of $300, but is going to find out if it is only once a month, CM stated to pay that and hopefully CT can get balance paid off soon. CT stated that is what is hoping for going to find out and will pay the $300 next time. CM acknowledged.

Created on: 3/30/2018          Created by: vgarcia

CT met with CM and stated made a payment if CT can be removed mandatory payment. CM removed CT off mandatory and informed CT once CT is able to pay balance off to inform CM to see when CT can be completed. CT acknowledged.

Created on: 4/13/2018          Created by: vgarcia

CT met with CM. CT stated this is third time in a week CT has not tested although CT did not test for two weeks. CM stated due to CT not testing for some weeks that might be as to why CT has had to test so frequently. CT stated it is nice not to test so much but that is to much in a week. CM suggested CT save the money for the week CT did not test as CT will have to test.

Created on: 4/16/2018          Created by: vgarcia

CT met with CM and provided prescription oxycodone and Morphine Sulfate filled 3/26/18. CT stated will pay for GCMS test. CT stated had to test three times in a week. CM stated it might have been due to CT not testing for two week. CT acknowledged. CM asked CT how is CT doing with balance CT stated is working on it aware that is only thing that is keeping CT on program. CM acknowledged.

CT tested pos for OPI. CT now has a prescription on file.

Created on: 5/2/2018          Created by: vgarcia

CM attempted to contact CT re: OPI pos. CM LVM stating if CT has filled prescription for Oxycodone as CM needs proof, CM asked for call back.

Created on: 5/2/2018          Created by: vgarcia

CT returned CM call. CM asked CT if has filled prescription for Oxycodone. CT stated just did on the 26th. CM stated of April. CT acknowledged. CM informed CT must provide CM proof of prescription each time CT fills medication, CT tested pos on 5/1/18 CT will be required to pay for GCMS not later than 5/18/18. CT stated if CT has to each time. CM acknowledged as it also states in contract. CT stated why are test now showing pos. CM stated is just going off UA results and provides information to CT. CT stated needs to pay balance soon, CT will get prescription. CM reviewed program requirements.

PROTECTED HEALTH INFORMATION          TASC000227

3

7/5/18  2:02:21PM

## Case Notes

### For

### PASCALE, MARK

Created on: 1/30/2018          Created by: vgarcia

Ct met with CM and provided CM financial hardship proof CM informed CT Cm will forward information to lead with decision CT stated if he has to continue testing CM informed CT is until CT is done with program CT stated he understood CM reviewed program requirements

Created on: 2/1/2018          Created by: vgarcia

CM called CT to remind of seminar on 2/1/18 CM informed CT has not made a payment was told had to make one by end of month. CT stated he will make payment tomorrow. CM informed CT failure to do so will result in $10 mandatory payment each time CT test. CT acknowledged and stated he will make a payment. CM informed CT payment are of $160 but CT can make a $50 payment although CT is behind. CT acknowledged CM reviewed program requirements

Created on: 2/2/2018          Created by: vgarcia

CT attended 2/1/18 seminar

Created on: 2/8/2018          Created by: vgarcia

CT tested pos for OPI CT has a prescription
From: Viviana GarciaSent: Thursday, February 08, 2018 3:53 PMTo: 'mark2496@cox.net' <mark2496@cox.net>Subject: TASC
Hi Mark,You tested positive for opiates you will need to pay for a GCMS to confirm it is your medication as you do have a prescription on file.
Thank you,
VIVIANA GARCIACase Manager

Created on: 2/9/2018          Created by: sthrash

Client tested positive for OPI on 2/8/18. Client has prescription on file.

Created on: 2/12/2018          Created by: vgarcia

CT called CM and stated CT just saw email that CT has to pay for GCMS but CM has prescription to proof CT is on medication. CM informed CT has to pay for GCMS to confirm that it is medication if CT does not want to pay for GCMS CT will not be able to take medication while on program. CT stated if he will have to pay each time as CT is struggling. CM informed CT has only tested pos for medication in January and in February 7 and 8 CT has to pay for GCMS by 2/13/18 that would cover for both dates. cT acknowledged CM reviewed program requirements

Created on: 3/21/2018          Created by: vgarcia

mandatory payments
From: Viviana GarciaSent: Wednesday, March 21, 2018 8:22 AMTo: 'mark2496@cox.net' <mark2496@cox.net>Subject: TASC
Hello Mark,Please be advised that our records indicate that you are behind on your monthly payments. Per your signed client contract, you are responsible to make your designated payment of $160.00 every 3rd Friday of the calendar month until your balance is paid in full. If you are unable to make your full monthly payment, you MUST make a minimum payment of $50.00 each month in order to stay in program compliance. Due to you being behind you will be on mandatory payment and be required to pay $25 each time you test ($15 for your UA $10 towards your balance). If you have any questions feel free to contact me.Thank you,
VIVIANA GARCIACase Manager

PROTECTED HEALTH INFORMATION     TASC000228

7/5/18   2:02:21PM

## Case Notes

### For

### PASCALE, MARK

Created on:  12/1/2017          Created by:  vgarcia

Name: Mark PascaleDOB: 6/21/1958Donor ID: 236209808Intake: 11/21/17Pin: 3615Charge/UA Fee: 14Payment: $ 160First payment: 12/15/17Seminar: 1/11/18Email: mark2496 @ cox.net

Created on:  12/6/2017          Created by:  vgarcia

CM received CT SSI letter  and list of medication from June to October Oxycodone morphine sulfate  and clonazepam

Created on:  12/27/2017         Created by:  vgarcia

CLIENT HAS BEEN ACCEPTED INTO THE TASC POM  DIVERSION PROGRAM

Created on:  1/19/2018          Created by:  vgarcia

CM attempted to contact CT LVM for call back
CT tested pos for opiates CM does not have new prescription on file

Created on:  1/22/2018          Created by:  vgarcia

CM called CT and asked if CT is taking any medication CT stated CT is taking the same medication. CM informed CT tested pos for opi. CM needs CT to turn  in prescription as well pay for GCMS. CT stated he cannot afford to pay . CM informed CT if CT continues to test pos. will only have to pay for GCMS one time, CT failed to attend seminar and make payment. CT stated he was not informed and can get letter from doctor that CT is on medication. CM informed CT per agreement if CT desires to take medication has to pay for GCMS. CT stated CT has been on medication and should have been pos. CM informed CT has not.CM asked CT if CT has CM business card CT stated he does. CM informed CT on back of business card has information about seminar. CT stated he must have forgotten. CM r/s 2/1/18 informed CT has to make a payment by end of month or will result in mandatory payment CT has to pay for GCMS before 1/23/18. CT stated he understood CM reviewed program requirements

Created on:  1/24/2018          Created by:  vgarcia

CT turned in prescription for oxycodone Hcl ,Morphine Sulfate,Cyclobenaprine Hcl, Tramadol Hcl, Pantoprazole, Januvia, Atorvastatin Ct informed CM CT paid for GCMS test CM informed CT CM will submit it to the lab should get results in about 3-5 days CT stated he understood CM reviewed program requirements

Created on:  1/26/2018          Created by:  vgarcia

GCMS results came back pos for RX.

Created on:  1/29/2018          Created by:  vgarcia

CT me with Cm and provided information for Financial Hardship. CM informed CT needs to show proof of everything written of financial form as CM as to turn into lead. CT stated he will get proof. CM informed CT failed to test. CT stated he did forget to check. CM informed CT will result in VL due to not testing and GCMS results came back pos. for prescription.CM informed CT due to missed test it can push CT financial hardship back. CT stated hopefully it does not CM informed CT it would depend on lead. CT stated he understood CM reviewed program requirements

PROTECTED HEALTH INFORMATION     TASC000229

 **TASC DRUG DETECTION LABORATORY**
4016 N. Black Canyon Hwy -- Phoenix, AZ 85017
CLIA# 03D0938729 / CAP-LAP# 3201701
DIRECTOR: Dr. Gerald Clement, Ph.D.

7/5/18   1:58PM

## Individual Testing Compliance Summary for the Period:  7/1/11 - 7/31/18

| Name | | | DOB | Account | Agency ID | | Current Color | | Referred By: | | | | | | |
|------|--|--|-----|---------|-----------|--|---------------|--|-------------|--|--|--|--|--|--|
| PASCALE, MARK | | | Redacted/58 | POM/B | | | | | GARCIA, VIVIANA | | | | | | |

| Date | Random Color Match | Accn # | ALC | AMP | BAR | BEN | COC | MDN | OPI | PCP | PRO | THC | BUP | XTC | ETG | OTH | Com |
|------|--------------------|--------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 05/30/18 | IVR - Match | 12107447 | | neg | | | neg | | POS | | | neg | | | neg | | 1 |
| 06/05/18 | IVR - Match | 12119618 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 06/08/18 | IVR - Match | 12128208 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 06/13/18 | IVR - Match | 12136839 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 06/21/18 | IVR - Match | 12154827 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 06/29/18 | IVR - Match | 12173120 | | neg | | | neg | | POS* | | | neg | | | neg | | |

* Confirmed by alternate method. Refer to individual report for details of analysis.

Comments:
1        TASC recommends confirming all positive drug screens by GC/MS or LC/MS/MS analysis

TEST LEGEND:
| | | | | | | | | |
|--|--|--|--|--|--|--|--|--|
| ALC | - Alcohol | BUP | Buprenorphine | OPI | - Opiates | XTC | - Ecstasy |
| AMP | - Amphetamines | COC | - Cocaine | PCP | - Phencyclidine | OTH | - Other |
| BAR | - Barbiturates | ETG | Ethyl Glucuronide | PRO | - Propoxyphene | Com | - Comments |
| BEN | - Benzodiazepines | MDN | - Methadone | THC | - Marijuana | | |

Donor   Redacted 808

TASC Recommends that all Positive samples be confirmed by GCMS analysis.
If a donor appears as a "No Specimen Collected" on this report,
contact a TASC representative to verify compliance before taking any action against the donor.

Copyright © 2005, TASC, Inc.

PROTECTED HEALTH INFORMATION        TASC000230

 **TASC DRUG DETECTION LABORATORY**
4016 N. Black Canyon Hwy -- Phoenix, AZ 85017
CLIA# 03D0938729 / CAP-LAP# 3201701
DIRECTOR: Dr. Gerald Clement, Ph.D.

7/5/18   1:58PM

## Individual Testing Compliance Summary for the Period: 7/1/11 - 7/31/18

| Name | | DOB | Account | Agency ID | Current Color | Referred By: |
|---|---|---|---|---|---|---|
| PASCALE, MARK | | Redacted/58 | POM/B | | | GARCIA, VIVIANA |

| Date | Random Color Match | Accn# | ALC | AMP | BAR | BEN | COC | MDN | OPI | PCP | PRO | THC | BUP | XTC | ETG | OTH | Com |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/21/17 | No Sample Collected (IVR) | | | | | | | | | | | | | | | | |
| 11/22/17 | IVR - Match | 11693889 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 11/30/17 | IVR - Match | 11708211 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 12/01/17 | IVR - Match | 11712745 | | neg | | | neg | | neg | | | neg | | | | | |
| 12/08/17 | IVR - Match | 11728609 | | neg | | | neg | | neg | | | neg | | | | | |
| 12/16/17 | IVR - Match | 11746912 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 12/20/17 | IVR - Match | 11754813 | | neg | | | neg | | neg | | | neg | | | | | |
| 12/27/17 | IVR - Match | 11769307 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 01/11/18 | IVR - Match | 11801559 | | neg | | | neg | | POS* | | | neg | | | neg | | |
| 01/22/18 | IVR - Match | 11822582 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 01/25/18 | No Sample Collected (IVR) | | | | | | | | | | | | | | | | |
| 01/26/18 | No Sample Collected (IVR) | | | | | | | | | | | | | | | | |
| 01/29/18 | IVR - Match | 11837020 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 02/02/18 | IVR - Match | 11849620 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 02/07/18 | IVR - Match | 11861343 | | neg | | | neg | | POS | | | neg | | | neg | | 1 |
| 02/08/18 | IVR - Match | 11862803 | | neg | | | neg | | POS* | | | neg | | | neg | | |
| 02/13/18 | IVR - Match | 11874323 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 02/27/18 | IVR - Match | 11905033 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 03/09/18 | IVR - Match | 11930187 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 03/14/18 | IVR - Match | 11939479 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 03/15/18 | IVR - Match | 11942587 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 03/16/18 | IVR - Match | 11945832 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 03/20/18 | IVR - Match | 11953518 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 04/11/18 | IVR - Match | 12001675 | | neg | | | neg | | POS | | | neg | | | neg | | 1 |
| 04/12/18 | IVR - Match | 12003807 | | neg | | | neg | | POS* | | | neg | | | neg | | |
| 04/13/18 | IVR - Match | 12006673 | | neg | | | neg | | POS | | | neg | | | neg | | 1 |
| 04/19/18 | IVR - Match | 12019988 | | neg | | | neg | | POS | | | neg | | | neg | | 1 |
| 04/30/18 | IVR - Match | 12043111 | | neg | | | neg | | POS | | | neg | | | neg | | 1 |
| 05/01/18 | IVR - Match | 12046004 | | neg | | | neg | | POS | | | neg | | | neg | | 1 |
| 05/10/18 | IVR - Match | 12066367 | | neg | | | neg | | POS | | | neg | | | neg | | 1 |
| 05/15/18 | IVR - Match | 12076608 | | neg | | | neg | | neg | | | neg | | | neg | | |
| 05/24/18 | IVR - Match | 12099389 | | neg | | | neg | | POS* | | | neg | | | neg | | |

**TEST LEGEND:**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ALC | - Alcohol | BUP | Buprenorphine | OPI | - Opiates | XTC | - Ecstasy |
| AMP | - Amphetamines | COC | - Cocaine | PCP | - Phencyclidine | OTH | - Other |
| BAR | - Barbiturates | ETG | Ethyl Glucuronide | PRO | - Propoxyphene | Com | - Comments |
| BEN | - Benzodiazepines | MDN | - Methadone | THC | - Marijuana | | |

Redacted
Donor I        808

TASC Recommends that all Positive samples be confirmed by GCMS analysis.
If a donor appears as a "No Specimen Collected" on this report,
contact a TASC representative to verify compliance before taking any action against the donor.

PROTECTED HEALTH INFORMATION        TASC0000231, TASC, Inc

 **TASC DRUG DETECTION LABORATORY**
4016 N. Black Canyon Hwy -- Phoenix, AZ 85017
CLIA# 03D0938729 / CAP-LAP# 3201701
DIRECTOR: Dr. Gerald Clement, Ph.D.



| | | | | |
|---|---|---|---|---|
| **DONOR NAME:** | PASCALE, MARK | | **CLIENT ID:** | POM/B |
| **ACCESSION NUMBER:** | 12173120 | | **DONOR ID:** | Redacted 9808 |
| **COLLECTION DATE:** | 06/29/18  16:33 | | **D.O.B.:** | Redacted /58 · 12:00:0| |
| **RECEIVED DATE:** | 06/30/18  0:29 | | **TEST COLOR:** | IVR |
| **REPORT DATE:** | 07/05/18  9:00 | | | |
| **REFERRED BY:** | GARCIA, VIVIANA | | | |

### SCREENING TESTS

| TEST NAME | TEST RESULT / CONCENTRATION | NORMALIZED | CUTOFF LEVEL | METHOD | MEDIA |
|---|---|---|---|---|---|
| AMPHETAMINE | Negative | | 1000 NG/ML | EIA | URINE |
| COCAINE | Negative | | 300 NG/ML | EIA | URINE |
| ETHYL GLUCURONIDE | Negative | | 500 NG/ML | EIA | URINE |
| OPIATES | POSITIVE | | 2000 NG/ML | EIA | URINE |
| THC | Negative | | 50 NG/ML | EIA | URINE |

### CONFIRMATORY TESTS

| ANALYTE | TEST RESULT / CONCENTRATION | NORMALIZED | CUTOFF LEVEL | METHOD | MEDIA |
|---|---|---|---|---|---|
| GCMS CODEINE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS HYDROCODONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS HYDROMORPHONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS MORPHINE | POSITIVE | 1178 NG/ML | 300 NG/ML | GCMS | URINE |
| GCMS OXYCODONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS OXYMORPHONE | POSITIVE | 431 NG/ML | 300 NG/ML | GCMS | URINE |

### URINE VALIDITY TESTS

| TEST NAME | TEST RESULT / INTERPRETATION | ACCEPTABLE RANGE |
|---|---|---|
| SPECIFIC GRAVITY | 1.0080 | 1.003 or greater |
| CREATININE | 71.0 | 20 mg/dL or greater |

PROTECTED HEALTH INFORMATION     TASC000232

Certified By  JDEMKO  7/5/18  9:00:23AM



## CONFIRMATION REQUEST

### SAMPLE INFORMATION

| Donor Name: | | PASCALE, MARK | | | Account Code: | POM/B | |
|---|---|---|---|---|---|---|---|
| Accession #: | 12173120 | | Donor Id : | Redacted9808 | | DOB: | Redacted1958 |
| Collection Date: | | 6/29/2018 4:33:00 PM | | | | | |
| Requesting Agency: | | TASC Diversion | | | | | |
| Drugs to be confirmed: | | OPI | | | | | |
| Billing Type: | | PREPAY | | | | | |

| Approving Agency Contact Person: | GARCIA, VIVIANA | | Date: | 7/2/2018 5:40:39 PM |
|---|---|---|---|---|

--------------------------------
**(Signature)**



12173120

7/2/2018 5:40:42 PM

**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE AGENCY, PRINT THIS FORM AND FAX TO 480-865-2079.**
**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE CLIENT, PLEASE PRINT THIS FORM AND PROVIDE TO THE CLIENT TO SUBMIT WITH PAYMENT AT THE TASC FACILITY.**

Copyright © 2018, TASC Inc, A private, non-profit, 501 (C)(3) corporation.

PROTECTED HEALTH INFORMATION     TASC000233

 **TASC DRUG DETECTION LABORATORY**
4016 N. Black Canyon Hwy -- Phoenix, AZ 85017
CLIA# 03D0938729 / CAP-LAP# 3201701
DIRECTOR: Dr. Gerald Clement, Ph.D.



| | | | | |
|---|---|---|---|---|
| **DONOR NAME:** | PASCALE, MARK | | **CLIENT ID:** | POM/B |
| **ACCESSION NUMBER:** | 12099389 | | **DONOR ID:** | Redacted 9808 |
| **COLLECTION DATE:** | 05/24/18  19:52 | | **D.O.B.:** | 6/21/58  12:00:0 |
| **RECEIVED DATE:** | 05/24/18  22:29 | | **TEST COLOR:** | IVR |
| **REPORT DATE:** | 06/01/18  10:09 | | | |
| **REFERRED BY:** | GARCIA, VIVIANA | | | |

### SCREENING TESTS

| TEST NAME | TEST RESULT / CONCENTRATION | NORMALIZED | CUTOFF LEVEL | METHOD | MEDIA |
|---|---|---|---|---|---|
| AMPHETAMINE | Negative | | 1000 NG/ML | EIA | URINE |
| COCAINE | Negative | | 300 NG/ML | EIA | URINE |
| ETHYL GLUCURONIDE | Negative | | 500 NG/ML | EIA | URINE |
| OPIATES | POSITIVE | | 2000 NG/ML | EIA | URINE |
| THC | Negative | | 50 NG/ML | EIA | URINE |

### CONFIRMATORY TESTS

| ANALYTE | TEST RESULT / CONCENTRATION | NORMALIZED | CUTOFF LEVEL | METHOD | MEDIA |
|---|---|---|---|---|---|
| GCMS CODEINE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS HYDROCODONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS HYDROMORPHONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS MORPHINE | POSITIVE | 1210 NG/ML | 300 NG/ML | GCMS | URINE |
| GCMS OXYCODONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS OXYMORPHONE | Negative | | 300 NG/ML | GCMS | URINE |

### URINE VALIDITY TESTS

| TEST NAME | TEST RESULT / INTERPRETATION | ACCEPTABLE RANGE |
|---|---|---|
| SPECIFIC GRAVITY | 1.0135 | 1.003 or greater |
| CREATININE | 98.0 | 20  mg/dL or greater |

PROTECTED HEALTH INFORMATION    TASC000234
Certified By:  JDEMKO  6/1/18  10:09:41AM

05/30/2018 WED 15:07    FAX                                                                          ☑001

```
*********************
*** FAX TX REPORT ***
*********************


          TRANSMISSION OK

JOB NO.                2790
DESTINATION ADDRESS    4808652079
SUBADDRESS
DESTINATION ID
ST. TIME               05/30 15:06
TX/RX TIME             00' 29
PGS.                   1
RESULT                 OK
```



**CONFIRMATION REQUEST**

## SAMPLE INFORMATION

| Donor Name: | | PASCALE, MARK | | Account Code: | POM/B | |
|---|---|---|---|---|---|---|
| Accession #: | 12099389 | Donor Id : | Redacted 9808 | | DOB: | Redacted 58 |
| Collection Date: | | 5/24/2018 7:52:00 PM | | | | |
| Requesting Agency: | | TASC Diversion | | | | |
| Drugs to be confirmed: | | OPI | | | | |
| Billing Type: | | PREPAY | | | | |

| Approving Agency Contact Person: | GARCIA, VIVIANA | | Date: | 5/30/2018 3:00:49 PM |
|---|---|---|---|---|

------------------------------
(Signature)

12099389

5/30/2018 3:00:54 PM

**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE AGENCY, PRINT THIS FORM AND FAX TO 480-865-2079**
**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE CLIENT, PLEASE PRINT THIS FORM**
**AND PROVIDE TO THE CLIENT TO SUBMIT WITH PAYMENT AT THE TASC FACILITY.**

PROTECTED CONFIDENTIAL INFORMATION                    TASC000835

 **TASC DRUG DETECTION LABORATORY**
4016 N. Black Canyon Hwy -- Phoenix, AZ 85017
CLIA# 03D0938729 / CAP-LAP# 3201701
DIRECTOR: Dr. Gerald Clement, Ph.D.



| | | | | |
|---|---|---|---|---|
| **DONOR NAME:** | PASCALE, MARK | | **CLIENT ID:** | POM/B |
| **ACCESSION NUMBER:** | 12003807 | | **DONOR ID:** | Redacted 9808 |
| **COLLECTION DATE:** | 04/12/18  14:38 | | **D.O.B.:** | Redacted/58  12:00:0| |
| **RECEIVED DATE:** | 04/12/18  23:11 | | **TEST COLOR:** | IVR |
| **REPORT DATE:** | 04/19/18  10:49 | | | |
| **REFERRED BY:** | GARCIA, VIVIANA | | | |

### SCREENING TESTS

| TEST NAME | TEST RESULT / CONCENTRATION | NORMALIZED | CUTOFF LEVEL | METHOD | MEDIA |
|---|---|---|---|---|---|
| AMPHETAMINE | Negative | | 1000 NG/ML | EIA | URINE |
| COCAINE | Negative | | 300 NG/ML | EIA | URINE |
| ETHYL GLUCURONIDE | Negative | | 500 NG/ML | EIA | URINE |
| OPIATES | POSITIVE | | 2000 NG/ML | EIA | URINE |
| THC | Negative | | 50 NG/ML | EIA | URINE |

### CONFIRMATORY TESTS

| ANALYTE | TEST RESULT / CONCENTRATION | NORMALIZED | CUTOFF LEVEL | METHOD | MEDIA |
|---|---|---|---|---|---|
| GCMS 6-MAM | Negative | | 10 NG/ML | GCMS | URINE |
| GCMS CODEINE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS HYDROCODONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS HYDROMORPHONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS MORPHINE | POSITIVE | 4794 NG/ML | 300 NG/ML | GCMS | URINE |
| GCMS OXYCODONE | POSITIVE | 2682 NG/ML | 300 NG/ML | GCMS | URINE |
| GCMS OXYMORPHONE | POSITIVE | 692 NG/ML | 300 NG/ML | GCMS | URINE |

### URINE VALIDITY TESTS

| TEST NAME | TEST RESULT / INTERPRETATION | ACCEPTABLE RANGE |
|---|---|---|
| SPECIFIC GRAVITY | 1.0142 | 1.003 or greater |
| CREATININE | 131.5 | 20  mg/dL or greater |

PROTECTED HEALTH INFORMATION      TASC000236

Certified By:  JDEMKO  4/19/18  10:49:34AM



## CONFIRMATION REQUEST

### SAMPLE INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| Donor Name: | | PASCALE, MARK | | Account Code: | POM/B |
| Accession #: | 12003807 | | Donor Id : | Redacted 0808 | DOB: Redacted 1958 |
| Collection Date: | | 4/12/2018 2:38:00 PM | | | |
| Requesting Agency: | | TASC Diversion | | | |
| Drugs to be confirmed: | | OPI | | | |
| Billing Type: | | PREPAY | | | |

| Approving Agency Contact Person: | GARCIA, VIVIANA | | Date: | 4/16/2018 2:37:57 PM |
|---|---|---|---|---|

------------------------------
(Signature)



12003807
4/16/2018 2:38:00 PM

**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE AGENCY, PRINT THIS FORM AND FAX TO 480-865-2079.**
**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE CLIENT, PLEASE PRINT THIS FORM AND PROVIDE TO THE CLIENT TO SUBMIT WITH PAYMENT AT THE TASC FACILITY.**

Copyright © 2018,TASC Inc, A private, non-profit, 501 (C)(3) corporation.

04/16/2018 MON 14:44     FAX                                                        ☒001

```
                    **********************
                    *** FAX TX REPORT ***
                    **********************

                        TRANSMISSION OK

            JOB NO.                    2308
            DESTINATION ADDRESS        4808652079
            SUBADDRESS
            DESTINATION ID
            ST. TIME                   04/16 14:44
            TX/RX TIME                 00' 29
            PGS.                       1
            RESULT                     OK
```



## ✖ TASC

### CONFIRMATION REQUEST

### SAMPLE INFORMATION

| Donor Name: | PASCALE, MARK | | Account Code: | POM/B | |
|---|---|---|---|---|---|
| Accession #: | 12003807 | Donor Id : | Redacted I9808 | DOB: | Redacted 1958 |
| Collection Date: | 4/12/2018 2:38:00 PM | | | | |
| Requesting Agency: | TASC Diversion | | | | |
| Drugs to be confirmed: | OPI | | | | |
| Billing Type: | PREPAY | | | | |

| Approving Agency Contact Person: | GARCIA, VIVIANA | | Date: | 4/16/2018 2:37:57 PM |
|---|---|---|---|---|

_____
(Signature)

```
              12003807
    ██║║█║║█║█║║█║█║║█║║█║█║
         4/16/2018 2:38:00 PM
```

IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE AGENCY, PRINT THIS FORM AND
PROTECTED HEALTH INFORMATION        TASC000238
IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE CLIENT, PLEASE PRINT THIS FORM
AND PROVIDE TO THE CLIENT TO SUBMIT WITH PAYMENT AT THE TASC FACILITY.

**TASC DRUG DETECTION LABORATORY**
2234 N. 7th Street -- Phoenix, AZ 85006
CLIA# 03D0938729 / CAP-LAP# 3201701
DIRECTOR: Dr. Gerald Clement, Ph.D.



| | | | |
|---|---|---|---|
| **DONOR NAME:** | PASCALE, MARK | **CLIENT ID:** | POM/B |
| **ACCESSION NUMBER:** | 11862803 | **DONOR ID:** | Redacted 9808 |
| **COLLECTION DATE:** | 02/08/18 13:02 | **D.O.B.:** | Redacted 58 12:00:0( |
| **RECEIVED DATE:** | 02/08/18 16:07 | **TEST COLOR:** | IVR |
| **REPORT DATE:** | 02/16/18 10:35 | | |
| **REFERRED BY:** | GARCIA, VIVIANA | | |

### SCREENING TESTS

| TEST NAME | TEST RESULT / CONCENTRATION | NORMALIZED | CUTOFF LEVEL | METHOD | MEDIA |
|---|---|---|---|---|---|
| AMPHETAMINE | Negative | | 1000 NG/ML | EIA | URINE |
| COCAINE | Negative | | 300 NG/ML | EIA | URINE |
| ETHYL GLUCURONIDE | Negative | | 500 NG/ML | EIA | URINE |
| OPIATES | POSITIVE | | 2000 NG/ML | EIA | URINE |
| THC | Negative | | 50 NG/ML | EIA | URINE |

### CONFIRMATORY TESTS

| ANALYTE | TEST RESULT / CONCENTRATION | NORMALIZED | CUTOFF LEVEL | METHOD | MEDIA |
|---|---|---|---|---|---|
| GCMS CODEINE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS HYDROCODONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS HYDROMORPHONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS OXYCODONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS OXYMORPHONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS MORPHINE | POSITIVE | 1391 NG/ML | 300 NG/ML | GCMS | URINE |

### URINE VALIDITY TESTS

| TEST NAME | TEST RESULT / INTERPRETATION | ACCEPTABLE RANGE |
|---|---|---|
| SPECIFIC GRAVITY | 1.0112 | 1.003 or greater |
| CREATININE | 101.7 | 20 mg/dL or greater |

PROTECTED HEALTH INFORMATION     TASC000239

Distribution: INTERNET

Certified By: JDEMKO 2/16/18 10:35:03AM

```
************************
*** FAX TX REPORT ***
************************

        TRANSMISSION OK

JOB NO.                 1609
DESTINATION ADDRESS     4808652079
SUBADDRESS
DESTINATION ID
ST. TIME                02/14 14:37
TX/RX TIME              00'29
PGS.                    1
RESULT                  OK
```



## CONFIRMATION REQUEST

### SAMPLE INFORMATION

| Donor Name: | | PASCALE, MARK | | Account Code: | POM/B |
|---|---|---|---|---|---|
| Accession #: | 11862803 | Donor Id : | Redacted 9808 | DOB: | Redacted 1958 |
| Collection Date: | | 2/8/2018 1:02:00 PM | | | |
| Requesting Agency: | | TASC Diversion | | | |
| Drugs to be confirmed: | | OPI | | | |
| Billing Type: | | PREPAY | | | |

| Approving Agency Contact Person: | GARCIA, VIVIANA | | Date: | 2/14/2018 2:31:39 PM |
|---|---|---|---|---|

_____
(Signature)

```
      11862803
||||||||||||||||||||||||||||||||||
   2/14/2018 2:31:42 PM
```

**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE AGENCY, PRINT THIS FORM AND FAX TO 480-865-2079.**
**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE CLIENT, PLEASE PRINT THIS FORM AND PROVIDE TO THE CLIENT TO SUBMIT WITH PAYMENT AT THE TASC FACILITY.**

PROTECTED HEALTH INFORMATION     TASC000240



## CONFIRMATION REQUEST

### SAMPLE INFORMATION

| | | | | |
|---|---|---|---|---|
| Donor Name: | | PASCALE, MARK | Account Code: | POM/B |
| Accession #: | 11862803 | Donor Id : Redacted9808 | DOB: | Redacted58 |
| Collection Date: | | 2/8/2018 1:02:00 PM | | |
| Requesting Agency: | | TASC Diversion | | |
| Drugs to be confirmed: | | OPI | | |
| Billing Type: | | PREPAY | | |

| | | | |
|---|---|---|---|
| Approving Agency Contact Person: | GARCIA, VIVIANA | Date: | 2/14/2018 2:31:39 PM |

---------------------------
**(Signature)**


11862803
2/14/2018 2:31:42 PM

**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE AGENCY, PRINT THIS FORM AND FAX TO 480-865-2079.**
**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE CLIENT, PLEASE PRINT THIS FORM AND PROVIDE TO THE CLIENT TO SUBMIT WITH PAYMENT AT THE TASC FACILITY.**

Copyright © 2018, TASC Inc, A private, non-profit, 501 (C)(3) corporation.

PROTECTED HEALTH INFORMATION     TASC000241

**TASC DRUG DETECTION LABORATORY**
2234 N. 7th Street -- Phoenix, AZ 85006
CLIA# 03D0938729 / CAP-LAP# 3201701
DIRECTOR: Dr. Gerald Clement, Ph.D.



| DONOR NAME: | PASCALE, MARK | | CLIENT ID: | POM/B |
| ACCESSION NUMBER: | 11801559 | | DONOR ID: | Redacted3808 |
| COLLECTION DATE: | 01/11/18  17:53 | | D.O.B.: | Redacted58  12:00:0 |
| RECEIVED DATE: | 01/11/18  22:43 | | TEST COLOR: | IVR |
| REPORT DATE: | 01/26/18  11:15 | | | |
| REFERRED BY: | GARCIA, VIVIANA | | | |

—————— SCREENING TESTS ——————

| TEST NAME | TEST RESULT / CONCENTRATION | NORMALIZED | CUTOFF LEVEL | METHOD | MEDIA |
|---|---|---|---|---|---|
| AMPHETAMINE | Negative | | 1000 NG/ML | EIA | URINE |
| COCAINE | Negative | | 300 NG/ML | EIA | URINE |
| ETHYL GLUCURONIDE | Negative | | 500 NG/ML | EIA | URINE |
| OPIATES | POSITIVE | | 2000 NG/ML | EIA | URINE |
| THC | Negative | | 50 NG/ML | EIA | URINE |

—————— CONFIRMATORY TESTS ——————

| ANALYTE | TEST RESULT / CONCENTRATION | NORMALIZED | CUTOFF LEVEL | METHOD | MEDIA |
|---|---|---|---|---|---|
| GCMS CODEINE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS HYDROCODONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS HYDROMORPHONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS OXYMORPHONE | Negative | | 300 NG/ML | GCMS | URINE |
| GCMS MORPHINE | POSITIVE | 5869 NG/ML | 300 NG/ML | GCMS | URINE |
| GCMS OXYCODONE | POSITIVE | 3843 NG/ML | 300 NG/ML | GCMS | URINE |
| GCMS 6-MAM | Negative | | 10 NG/ML | GCMS | URINE |

—————— URINE VALIDITY TESTS ——————

| TEST NAME | TEST RESULT / INTERPRETATION | ACCEPTABLE RANGE |
|---|---|---|
| SPECIFIC GRAVITY | 1.0052 | 1.003 or greater |
| CREATININE | 76.2 | 20  mg/dL or greater |

PROTECTED HEALTH INFORMATION     TASC000242

Distribution:   INTERNET

Certified By:  JDEMKO  1/26/18  11:15:56AM

01/24/2018 WED 09:37    FAX                                                          ☒001

```
                        ***********************
                        *** FAX TX REPORT ***
                        ***********************

                        TRANSMISSION OK

              JOB NO.               1381
              DESTINATION ADDRESS   4808652079
              SUBADDRESS
              DESTINATION ID
              ST. TIME              01/24 09:37
              TX/RX TIME            00'29
              PGS.                  1
              RESULT                OK
```



## CONFIRMATION REQUEST

### SAMPLE INFORMATION

| Donor Name: | PASCALE, MARK | | Account Code: | POM/B | |
|---|---|---|---|---|---|
| Accession #: | 11801559 | Donor Id : | Redacted 9808 | DOB: | Redacted 58 |
| Collection Date: | 1/11/2018 5:53:00 PM | | | | |
| Requesting Agency: | TASC Diversion | | | | |
| Drugs to be confirmed: | OPI | | | | |
| Billing Type: | PREPAY | | | | |

| Approving Agency Contact Person: | GARCIA, VIVIANA | Date: | 1/24/2018 9:30:24 AM |
|---|---|---|---|

--------------------------
(Signature)

```
                                    11801559
                            |||||||||||||||||||||||||||||
                              1/24/2018 9:31:00 AM
```

**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE AGENCY, PRINT THIS FORM AND FAX TO 480-865-2079.**
IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE CLIENT, PRINT THIS FORM AND PROVIDE TO THE CLIENT TO SUBMIT WITH PAYMENT AT THE TASC FACILITY.

PROTECTED HEALTH INFORMATION          TASC000243



## CONFIRMATION REQUEST

### SAMPLE INFORMATION

| | | | |
|---|---|---|---|
| Donor Name: | PASCALE, MARK | Account Code: | POM/B |
| Accession #: | 11801559 | Donor Id : | Redacted 9808 | DOB: | Redacted 58 |

| | |
|---|---|
| Collection Date: | 1/11/2018 5:53:00 PM |
| Requesting Agency: | TASC Diversion |
| Drugs to be confirmed: | OPI |
| Billing Type: | PREPAY |

| | | | |
|---|---|---|---|
| Approving Agency Contact Person: | GARCIA, VIVIANA | Date: | 1/24/2018 9:30:24 AM |

---

(Signature)



11801559

1/24/2018 9:31:00 AM

**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE AGENCY, PRINT THIS FORM AND FAX TO 480-865-2079.**
**IF THIS CONFIRMATION AUTHORIZATION IS PAID BY THE CLIENT, PLEASE PRINT THIS FORM AND PROVIDE TO THE CLIENT TO SUBMIT WITH PAYMENT AT THE TASC FACILITY.**

Copyright © 2018,TASC Inc, A private, non-profit, 501 (C)(3) corporation.

PROTECTED HEALTH INFORMATION      TASC000244

VO. VIVIANA GARCIA    Medical Expenses    FROM MARK PASCALE    Page: 1 of 1

Dates: 06/25/2018 to 06/25/2018

ent: Pascale
Mark
13051 N 75th Dr
Peoria, AZ 85381-4005

DOB: [958 Redacted]

Pharmacy: SAFEWAY #17-1841
12320 N 83RD AVENUE
PEORIA
AZ 85381
NCPDP: 0326264
Pharmacist: Bazzano,
Steven

| Date RR/RN criber | Rx# Tx# | Drug Name | | Drug NDC | DispQty | DaysSupply |
|---|---|---|---|---|---|---|
| | | Prescriber ID | | U & C Price | | Final Patient Copay |
| 2018 021074 /0 | 1574151 | Morphine Sulfate Er 15 Mg | Tab Endo | 60951065270 | 30.0 | 30 |
| | | | | $ | | $ 0.00 |
| ON, HONN S : Arizona Physicians Appa ID: A4430085 #: 18177405325806496 eceived Amount: $ 6.25 | | MW4425826 Plan: OPTUM RX Prior Auth #: | Prov#: Group: | | | |
| 2018 021075 0 | 1574153 | Oxycodone Hcl 30 Mg | Tab Mall | 00406853001 | 120.0 | 30 |
| | | | | $ | | $ 0.00 |
| ON, HONN S : Arizona Physicians Appa ID: A4430085 #: 18176058760022998 eceived Amount: $ 27.17 | | MW4425826 Plan: OPTUM RX Prior Auth #: | Prov#: Group: | | | |

Third Party Recv: $33.42    Total Patient Pay: $0.00

t Date: 07/05/2018

Attested By: _____    Registered Pharmacist

PROTECTED HEALTH INFORMATION    TASC000245

```
- - - - - - - - - - - - - - - - - - - - - - - -
M E D I C A L   E X P E N S E S                                    Page   1
- - - - - - - - - - - - - - - - - - - - - - - -
```

Patient : Pascale
       Mark

RespPty :

     13051 N 75th Dr

    Peoria, AZ 85381-4005

  Birth : **Redacted**58

Pharmacy: SAFEWAY #17-1841
          12320 N 83RD AVENUE
          PEORIA, AZ 85381
    RPh: England
        Katie L
NCPDP#: 0326264

Prescriptions:            Dates : 03/01/2018   TO   05/05/2018

| LastFill / Physician Name | Rx # | Drug Name | | Qty | T/P | Price | RPh |
|---|---|---|---|---|---|---|---|
| 03/02/2018 TOBIN, CYNTHIA K | 6196580 | Escitalopram Oxalate 10 Mg | Tab Acco | 10 | MAZ | $0.00 | CH |
| 03/02/2018 TOBIN, CYNTHIA K | 6196580 | Escitalopram Oxalate 10 Mg | Tab Myla | 20 | | $0.00 | CH |
| 03/02/2018 REINHART, JASON C | 4029365 | Clonazepam 1 Mg | Tab Nort | 14 | MAZ | $0.00 | CH |
| 03/05/2018 ARPINO, GIROLAMO J | 6196684 | Lantus Solostar 100 Unit/Ml | Inj Sano | 15 | MAZ | $0.00 | CH |
| 03/05/2018 ARPINO, GIROLAMO J | 6196687 | Bd Pen Needle Nano U/F 32g X 4 Mm | Mis Bd D | 100 | MAZ | $0.00 | CH |
| 03/06/2018 ARPINO, GIROLAMO J | 6179899 | Montelukast Sodium 10 Mg | Tab Krem | 30 | MAZ | $0.00 | SB |
| 03/09/2018 LENYARD, BONNIE S | 4029385 | Clonazepam 1 Mg | Tab Nort | 34 | MAZ | $0.00 | KLE |
| 03/10/2018 ENGLAND, KATIE L | 6196962 | Shingrix 50 Mcg | Inj Glax | 1 | MAZ | $0.00 | KLE |
| 03/12/2018 GLEICHMAN, VICTORIA J | 6197028 | Gabapentin 300 Mg | Cap Nort | 90 | MAZ | $0.00 | CH |
| 03/12/2018 GLEICHMAN, VICTORIA J | 6197029 | Cyclobenzaprine Hcl 10 Mg | Tab Solc | 90 | MAZ | $0.00 | CH |
| 03/12/2018 GLEICHMAN, VICTORIA J | 6197031 | Clonidine Hcl 0.1 Mg | Tab Acta | 28 | MAZ | $0.00 | CH |
| 03/13/2018 GLEICHMAN, VICTORIA J | 6197032 | Promethazine Hcl 12.5 Mg | Tab Amne | 21 | MAZ | $0.00 | CH |
| 03/15/2018 GLEICHMAN, VICTORIA J | 6197030 | Nabumetone 500 Mg | Tab Glen | 60 | MAZ | $0.00 | CH |

PROTECTED HEALTH INFORMATION      TASC000246

## MEDICAL EXPENSES

Page 2

Patient : Pascale
Mark

RespPty :

13051 N 75th Dr

Peoria, AZ 85381-4005

Birth : Redacted;8

Pharmacy: SAFEWAY #17-1841
12320 N 83RD AVENUE
PEORIA, AZ 85381
RPh: England
Katie L
NCPDP#: 0326264

Prescriptions:                                      Dates : 03/01/2018   TO   05/05/2018

| LastFill / Physician Name | Rx # | Drug Name | | Qty | T/P | Price | RPh |
|---|---|---|---|---|---|---|---|
| 03/18/2018 ARPINO, GIROLAMO J | 6181348 | Lisinopril 30 Mg | Tab Solc | 30 | MAZ | $0.00 | CH |
| 03/21/2018 TOBIN, CYNTHIA K | 6196581 | Rozerem 8 Mg | Tab Take | 30 | MAZ | $0.00 | CH |
| 03/21/2018 TOBIN, CYNTHIA K | 6196579 | Hydroxyzine Hcl 50 Mg | Tab Nort | 90 | MAZ | $0.00 | CH |
| 03/26/2018 UHRIK, OTTO | 2020513 | Morphine Sulfate Er 15 Mg | Tab Endo | 30 | MAZ | $0.00 | CH |
| 03/26/2018 UHRIK, OTTO | 2020512 | Oxycodone Hcl 30 Mg | Tab Mall | 118 | MAZ | $0.00 | CH |
| 03/26/2018 UHRIK, OTTO | 2020512 | Oxycodone Hcl 30 Mg | Tab Sunp | 2 | | $0.00 | CH |
| 03/28/2018 TOBIN, CYNTHIA K | 6196580 | Escitalopram Oxalate 10 Mg | Tab Acco | 30 | MAZ | $0.00 | KLE |
| 03/28/2018 ARPINO, GIROLAMO J | 6192267 | Pantoprazole Sodium Ec 40 Mg | Tab Auro | 60 | MAZ | $0.00 | ~BG |
| 04/03/2018 ARPINO, GIROLAMO J | 6184267 | Jardiance 25 Mg | Tab Boeh | 30 | MAZ | $0.00 | KLE |
| 04/03/2018 ARPINO, GIROLAMO J | 6192268 | Januvia 100 Mg | Tab Merc | 30 | MAZ | $0.00 | KLE |
| 04/03/2018 ARPINO, GIROLAMO J | 6192265 | Pioglitazone Hcl 45 Mg | Tab Macl | 30 | MAZ | $0.00 | KLE |
| 04/03/2018 ARPINO, GIROLAMO J | 6194594 | Glipizide 5 Mg | Tab Sand | 60 | MAZ | $0.00 | KLE |
| 04/07/2018 ARPINO, GIROLAMO J | 6179899 | Montelukast Sodium 10 Mg | Tab Camb | 30 | MAZ | $0.00 | KLE |

PROTECTED HEALTH INFORMATION        TASC000247

## MEDICAL EXPENSES

Page  3

Patient : Pascale
    Mark

RespPty :

    13051 N 75th Dr

    Peoria, AZ 85381-4005

Birth : Redacted 58

Pharmacy: SAFEWAY #17-1841
    12320 N 83RD AVENUE
    PEORIA, AZ 85381
    RPh: England
        Katie L
NCPDP#: 0326264

Prescriptions:                                      Dates : 03/01/2018   TO   05/05/2018

| LastFill Physician Name | Rx # | Drug Name | | Qty | T/P | Price | RPh |
|---|---|---|---|---|---|---|---|
| 04/10/2018 UHRIK, OTTO | 6197637 | Cyclobenzaprine Hcl 10 Mg | Tab Solc | 90 | MAZ | $0.00 | CH |
| 04/10/2018 REINHART, JASON C | 4029503 | Clonazepam 1 Mg | Tab Nort | 27 | MAZ | $0.00 | CH |
| 04/12/2018 REINHART, JASON C | 6198627 | Topiramate 25 Mg | Tab Zydu | 21 | MAZ | $0.00 | KLE |
| 04/12/2018 REINHART, JASON C | 6198628 | Topiramate 50 Mg | Tab Cipl | 45 | MAZ | $0.00 | KLE |
| 04/19/2018 ARPINO, GIROLAMO J | 6181348 | Lisinopril 30 Mg | Tab Solc | 30 | MAZ | $0.00 | CH |
| 04/23/2018 TOBIN, CYNTHIA K | 6196579 | Hydroxyzine Hcl 50 Mg | Tab Nort | 90 | MAZ | $0.00 | CH |
| 04/26/2018 WILSON, HYON S | 2020734 | Morphine Sulfate Er 15 Mg | Tab Endo | 30 | MAZ | $0.00 | KLE |
| 04/26/2018 WILSON, HYON S | 6199315 | Gabapentin 300 Mg | Cap Nort | 60 | MAZ | $0.00 | KLE |
| 04/26/2018 WILSON, HYON S | 2020735 | Oxycodone Hcl 30 Mg | Tab Mall | 120 | MAZ | $0.00 | KLE |
| 04/30/2018 ARPINO, GIROLAMO J | 6184272 | Prochlorperazine Maleate 10 Mg | Tab Cadi | 90 | MAZ | $0.00 | CH |

Report Date:   05/05/2018                                                          $0.00

Attested By:

_____

Registered Pharmacist

## MEDICAL EXPENSES

Page   4

Patient : Pascale
      Mark

RespPty :

      13051 N 75th Dr

      Peoria, AZ 85381-4005

Birth : Redacted 58

Pharmacy: SAFEWAY #17-1841
      12320 N 83RD AVENUE
      PEORIA, AZ 85381
  RPh: England
      Katie L
NCPDP#: 0326264

Prescriptions:

Dates : 03/01/2018   TO   05/05/2018

| LastFill | Rx # | Drug Name | Qty | T/P | Price | RPh |
|----------|------|-----------|-----|-----|-------|-----|
| Physician Name | | | | | | |

PROTECTED HEALTH INFORMATION      TASC000249

ent: Pascale
Mark
13051 N 76th Dr
Peoria, AZ 85381-4005

DOB:

**Medical Expenses**
Dates: 01/01/2018 to 04/09/2018

Pharmacy: SAFEWAY #17-1841
12320 N 83RD AVENUE
PEORIA
AZ 85381
NCPDP: 0326264
Pharmacist: Hibben,
Crystal

58
Redacted

| Date | Rx# | Tx# | Drug Name | | Prescriber ID | Drug NDC U & C Price | DispQty | DaysSupply Final Patient Copay |
|------|-----|-----|-----------|---|---------------|----------------------|---------|--------------------------------|
| | | | | | | | | |
| 2018 4 / 5 | 6184267 | 1544385 | Jardiance 25 Mg | Tab Boeh | | 00597015330 $ | 30.0 | 30 $ 0.00 |
| INO, GIROLAMO J | | | | | FA1459191 | | | |
| 2018 / 3 | 6187192 | 1544996 | Atorvastatin Calcium 10 Mg | Tab Apot | | 60505257809 $ | 30.0 | 30 $ 0.00 |
| INO, GIROLAMO J | | | | | FA1459191 | | | |
| 2018 / 0 | 4029153 | 1545818 | Tramadol Hcl 50 Mg | Tab Nort | | 16714048101 $ | 240.0 | 30 $ 17.59 |
| AN PATRICK W | | | | | FH0182333 | | | |
| 2018 / 0 | 2019968 | 1546078 | Morphine Sulfate Er 15 Mg | Tab Endo | | 60951065270 $ | 30.0 | 30 $ 0.00 |
| AN PATRICK W | | | | | FH0182333 | | | |
| 2018 / 0 | 2019969 | 1546079 | Oxycodone Hci 30 Mg | Tab Mall | | 00406853001 $ | 120.0 | 30 $ 0.00 |
| AN PATRICK W | | | | | FH0182333 | | | |
| 2018 / 0 | 6193835 | 1546592 | Cyclobenzaprine Hcl 10 Mg | Tab Solc | | 43547040011 $ | 90.0 | 30 $ 0.00 |
| AN PATRICK W | | | | | FH0182333 | | | |
| 2018 3 / 1 | 6192268 | 1546699 | Januvia 100 Mg | Tab Merc | | 00006027731 $ | 30.0 | 30 $ 0.00 |
| INO, GIROLAMO J | | | | | FA1459191 | | | |

PROTECTED HEALTH INFORMATION          TASC000250

| Bill Date | Rx# | Tx# | Drug Name | | Drug NDC | DispQty | DaysSupply |
|---|---|---|---|---|---|---|---|
| PA/RR/RN Prescriber | | | Prescriber ID | | U & C Price | | Final Patient Copay |
| 15/2018 / 2 / 1 | 6192267 | 1546700 | Pantoprazole Sodium Ec 40 Mg | Tab Auro | 65862056090 $ | 60.0 | 30 $ 0.00 |
| RPINO, GIROLAMO J | | | FA1459191 | | | | |
| 23/2018 / 0 / 2 | 6191477 | 1548247 | Hydroxyzine Hcl 50 Mg | Tab Nort | 16714008310 $ | 90.0 | 30 $ 0.00 |
| OBIN, CYNTHIA K | | | MT0682927 | | | | |
| 24/20 / 1 /10 | 6194594 | 1548409 | Glipizide 5 Mg | Tab Sand | 00781145210 $ | 60.0 | 30 $ 0.00 |
| RPINO, GIROLAMO J | | | FA1459191 | | | | |
| 25/20 / 0 / 2 | 6191478 | 1548567 | Rozerem 8 Mg | Tab Take | 64764080530 $ | 30.0 | 30 $ 0.00 |
| OBIN, CYNTHIA K | | | MT0682927 | | | | |
| 25/20 / 5 / 0 | 6194670 | 1548679 | Bd Pen Needle Mini U/F 31g X 5 Mm | Mis Bd D | 08290320119 $ | 100.0 | 30 $ 0.00 |
| MITH, KATARZYNA M | | | MS4496065 | | | | |
| 25/20 / 0 / 0 | 6194671 | 1548681 | Lantus Solostar 100 Unit/Ml | Inj Sano | 00088221905 $ | 15.0 | 31 $ 0.00 |
| MITH, KATARZYNA M | | | MS4496065 | | | | |
| 26/20 / 0 / 2 | 4028982 | 1548778 | Clonazepam 1 Mg | Tab Nort | 16714075001 $ | 60.0 | 30 $ 0.00 |
| EINHA[?]T, JASON C | | | BR7655701 | | | | |
| 26/20 / 5 / 0 | 6194728 | 1548831 | Qvar 80 Mcg/Act | Aer Teva | 59310020412 $ | 8.7 | 31 $ 0.00 |
| RPINO, GIROLAMO J | | | FA1459191 | | | | |

PROTECTED HEALTH INFORMATION        TASC000251

| ll Date A/RR/RN rescriber | Rx# | Tx# | Drug Name / Prescriber ID | Drug NDC / U & C Price | DispQty | DaysSupply / Final Patient Copay |
|---|---|---|---|---|---|---|
| '27/2018 0/1/8 | 6181343 | 1548992 | Lisinopril 30 Mg    Tab Sand | 00185063001  $ | 30.0 | 30    $ 0.00 |
| RPINO, GIROLAMO J |  |  | FA1459191 |  |  |  |
| 30/208 1/0/ | 6179899 | 1549495 | Montelukast Sodium 10 Mg    Tab Krem | 62175021032  $ | 30.0 | 30    $ 0.00 |
| RPINO, GIROLAMO J |  |  | FA1459191 |  |  |  |
| 3/20 1/4 | 6184267 | 1550396 | Jardiance 25 Mg    Tab Boeh | 00597015330  $ | 30.0 | 30    $ 0.00 |
| RPINO, GIROLAMO J |  |  | FA1459191 |  |  |  |
| 5/20 /1/ | 6187192 | 1550872 | Atorvastatin Calcium 10 Mg    Tab Gree | 59762015501  $ | 30.0 | 30    $ 0.00 |
| RPIN, GIROLAMO J |  |  | FA1459191 |  |  |  |
| 6/20 /0/ | 6195378 | 1551057 | Anox/K Clav 500-125    Tab Nort | 16714049401  $ | 30.0 | 10    $ 0.00 |
| RPIN, GIROLAMO J |  |  | FA1459191 |  |  |  |
| 9/20 /0/0 | 2020192 | 1551637 | Morphine Sulfate Er 15 Mg    Tab Endo | 60951065270  $ | 30.0 | 30    $ 0.00 |
| HOGAN PATRICK W |  |  | FH0182333 |  |  |  |
| 9/20 /0/0 | 2020193 | 1551638 | Oxycodone Hcl 30 Mg    Tab Mall | 00406853001  $ | 120.0 | 30    $ 0.00 |
| HOGAN PATRICK W |  |  | FH0182333 |  |  |  |
| 13/2058 /0/ | 6195425 | 1552254 | Cyclobenzaprine Hcl 10 Mg    Tab Solc | 43547040011  $ | 83.0 | 28    $ 0.00 |
| HOGAN PATRICK W |  |  | FH0182333 |  |  |  |

PROTECTED HEALTH INFORMATION

TASC000252

| Bill Date A/RR/RN rescriber | Rx# | Tx# | Drug Name Prescriber ID | Drug NDC U & C Price | DispQty | DaysSupply Final Patient Copay |
|---|---|---|---|---|---|---|
| 13/2018 / 0 / 0 | 6195425 | 1552253 | Cyclobenzaprine Hcl 10 Mg    Tab Myla | 00378075110 $ | 7.0 | 2 $ 0.00 |
| OGAN PATRICK W | | | FH0182333 | | | |
| 16/2018 / 0 / | 4029308 | 1552847 | Tramadol Hcl 50 Mg    Tab Nort | 16714048101 $ | 240.0 | 30 $ 17.59 |
| OGAN PATRICK W | | | FH0182333 | | | |
| 19/2018 / 2 / | 6184272 | 1553266 | Prochlorperazine Maleate 10 Mg    Tab Cadi | 59746011506 $ | 90.0 | 30 $ 0.00 |
| RPINO GIROLAMO J | | | FA1459191 | | | |
| 19/2018 / 2 / | 6192267 | 1553267 | Pantoprazole Sodium Ec 40 Mg    Tab Auro | 65862056090 $ | 60.0 | 30 $ 0.00 |
| RPINO GIROLAMO J | | | FA1459191 | | | |
| 23/2018 / 0 / | 6196204 | 1554008 | Rozerem 8 Mg    Tab Take | 64764080530 $ | 30.0 | 30 $ 0.00 |
| DBIN CYNTHIA K | | | MT0682927 | | | |
| 23/2018 / 0 / | 6196205 | 1554009 | Hydroxyzine Hcl 50 Mg    Tab Nort | 16714008310 $ | 90.0 | 30 $ 0.00 |
| DBIN CYNTHIA K | | | MT0682927 | | | |
| 26/2018 / 8 / | 6192268 | 1554370 | Januvia 100 Mg    Tab Merc | 00006027731 $ | 30.0 | 30 $ 0.00 |
| RPINO GIROLAMO J | | | FA1459191 | | | |
| 2/20 / 1 / | 6196580 | 1555206 | Escitalopram Oxalate 10 Mg    Tab Acco | 16729016901 $ | 10.0 | 10 $ 0.00 |
| DBIN, CYNTHIA K | | | MT0682927 | | | |

PROTECTED HEALTH INFORMATION

TASC000253

| Date /RR/RN scriber | Rx# | Tx# | Drug Name Prescriber ID | Drug NDC U & C Price | DispQty | DaysSupply Final Patient Copay |
|---|---|---|---|---|---|---|
| 2018 1 / 0 | 6196580 | 1555205 | Escitalopram Oxalate 10 Mg    Tab Myla | 51079054320 $ | 20.0 | 20 $ 0.00 |
| BIN, CYNTHIA K | | | MT0682927 | | | |
| 2018 0 / 0 | 4029365 | 1555274 | Clonazepam 1 Mg    Tab Nort | 16714075001 $ | 14.0 | 7 $ 0.00 |
| NHARF, JASON C | | | BR7655701 | | | |
| 2018 0 / 0 | 6196684 | 1555705 | Lantus Solostar 100 Unit/Ml    Inj Sano | 00088221905 $ | 15.0 | 31 $ 0.00 |
| PINO, GIROLAMO J | | | FA1459191 | | | |
| 2018 3 / 0 | 6196687 | 1555711 | Bd Pen Needle Nano U/F 32g X 4 Mm    Mis Bd D | 08290320122 $ | 100.0 | 30 $ 0.00 |
| PINO, GIROLAMO J | | | FA1459191 | | | |
| 2018 0 / 10 | 6179899 | 1555974 | Montelukast Sodium 10 Mg    Tab Krem | 62175021032 $ | 30.0 | 30 $ 0.00 |
| PINO, GIROLAMO J | | | FA1459191 | | | |
| 2018 1 / 0 | 4029385 | 1556512 | Clonazepam 1 Mg    Tab Nort | 16714075001 $ | 34.0 | 30 $ 0.00 |
| YARD, BONNIE S | | | ML3239882 | | | |
| 2018 1 / 0 | 6196962 | 1556615 | Shingrix 50 Mcg    Inj Glax | 58160082311 $ | 1.0 | 1 $ 0.00 |
| GLANI KATIE L | | | | | | |
| 2018 1 / 0 | 6197028 | 1556830 | Gabapentin 300 Mg    Cap Nort | 16714050402 $ | 90.0 | 30 $ 0.00 |
| ICHMAN, VICTORIA J | | | MG3488346 | | | |

PROTECTED HEALTH INFORMATION    TASC000254

| Date | Rx# | Tx# | Drug Name | Prescriber ID | Drug NDC | DispQty | DaysSupply | U & C Price | Final Patient Copay |
|------|-----|-----|-----------|---------------|----------|---------|------------|-------------|---------------------|
| RR/RN scriber | | | | | | | | | |
| 2/2018 0/0 | 6197029 | 1556832 | Cyclobenzaprine Hcl 10 Mg | Tab Solc | 43547040011 | 90.0 | 30 | $ | $ 0.00 |
| EICHMAN, VICTORIA J | | | | MG3488346 | | | | | |
| 2/2018 0/0 | 6197031 | 1556835 | Clonidine Hcl 0.1 Mg | Tab Acta | 00228212710 | 28.0 | 7 | $ | $ 0.00 |
| EICHMAN, VICTORIA J | | | | MG3488346 | | | | | |
| 3/2018 0/0 | 6197032 | 1557046 | Promethazine Hcl 12.5 Mg | Tab Amne | 65162074510 | 21.0 | 3 | $ | $ 0.00 |
| EICHMAN, VICTORIA J | | | | MG3488346 | | | | | |
| 5/20 0/0 | 6197030 | 1557441 | Nabumetone 500 Mg | Tab Glen | 68462035805 | 60.0 | 30 | $ | $ 0.00 |
| EICHMAN, VICTORIA J | | | | MG3488346 | | | | | |
| 8/20 /1/ | 6181348 | 1557891 | Lisinopril 30 Mg | Tab Solc | 43547041810 | 30.0 | 30 | $ | $ 0.00 |
| PIN, GIROLAMO J | | | | FA1459191 | | | | | |
| 1/20 2/ | 6196581 | 1555186 | Rozerem 8 Mg | Tab Take | 64764080530 | 30.0 | 30 | $ | $ 0.00 |
| BIN, CYNTHIA K | | | | MT0682927 | | | | | |
| 1/20 2/ | 6196579 | 1555183 | Hydroxyzine Hcl 50 Mg | Tab Nort | 16714008310 | 90.0 | 30 | $ | $ 0.00 |
| BIN, CYNTHIA K | | | | MT0682927 | | | | | |
| 6/20 0/0 | 2020513 | 1559093 | Morphine Sulfate Er 15 Mg | Tab Endo | 60951065270 | 30.0 | 30 | $ | $ 0.00 |
| RIK, OTTO | | | | BU7384744 | | | | | |

PROTECTED HEALTH INFORMATION   TASC000255

| Date | Rx# | Tx# | Drug Name | Prescriber ID | Drug NDC | DispQty | DaysSupply |
| --- | --- | --- | --- | --- | --- | --- | --- |
| RR/RN | | | | | U & C Price | | Final Patient Copay |
| criber | | | | | | | |
| 2018 2020512 | | 1559095 | Oxycodone Hcl 30 Mg | Tab Sunp | 57664022488 | 2.0 | 1 |
| / 0 | | | | | $ | | $ 0.00 |
| IK, OTTO | | | | BU7384744 | | | |
| 2018 2020512 | | 1559096 | Oxycodone Hcl 30 Mg | Tab Mall | 00406853001 | 118.0 | 29 |
| / 0 | | | | | $ | | $ 0.00 |
| IK, OTTO | | | | BU7384744 | | | |
| 2018 6196580 | | 1559531 | Escitalopram Oxalate 10 Mg | Tab Acco | 16729016901 | 30.0 | 30 |
| / 1 | | | | | $ | | $ 0.00 |
| IN, CYNTHIA K | | | | MT0682927 | | | |
| 2018 6192267 | | 1559619 | Pantoprazole Sodium Ec 40 Mg | Tab Auro | 65862056090 | 60.0 | 30 |
| / 3 | | | | | $ | | $ 0.00 |
| NO, GIROLAMO J | | | | FA1459191 | | | |
| 018 6184267 | | 1560599 | Jardiance 25 Mg | Tab Boeh | 00597015330 | 30.0 | 30 |
| 4 / 7 | | | | | $ | | $ 0.00 |
| NO, GIROLAMO J | | | | FA1459191 | | | |
| 018 6192268 | | 1560597 | Januvia 100 Mg | Tab Merc | 00006027731 | 30.0 | 30 |
| 3 / 3 | | | | | $ | | $ 0.00 |
| NO, GIROLAMO J | | | | FA1459191 | | | |
| 018 6192265 | | 1560600 | Pioglitazone Hcl 45 Mg | Tab Macl | 33342005607 | 30.0 | 30 |
| 0 / 1 | | | | | $ | | $ 0.00 |
| NO, GIROLAMO J | | | | FA1459191 | | | |
| 018 6194594 | | 1560598 | Glipizide 5 Mg | Tab Sand | 00781145210 | 60.0 | 30 |
| 0 / 1 | | | | | $ | | $ 0.00 |
| NO, GIROLAMO J | | | | FA1459191 | | | |

PROTECTED HEALTH INFORMATION      TASC050256

| Date | Rx# | Tx# | Drug Name | | Drug NDC | DispQty | DaysSupply |
|------|-----|-----|-----------|---|----------|---------|------------|
| RR/RN | | | | | U & C Price | | Final Patient Copay |
| scriber | | | Prescriber ID | | | | |
| 2018 | 6179899 | 1561356 | Montelukast Sodium 10 Mg | Tab Camb | 31722072630 | 30.0 | 30 |
| 0 / 11 | | | | | $ | | $ 0.00 |

PINO, GIROLAMO J                FA1459191

Total Patient Pay:   $35.18

Attested By:

Registered Pharmacist

PROTECTED HEALTH  NFORMATION        TASC000257

Medical Expenses
Dates: 01/01/2018 to 01/22/2018

ient: Pascale
Mark
13051 N 75th Dr
Peoria, AZ 85381-4005

DOB: ___ #58 Redacted

NCPDP:
Pharmacist:

Pharmacy: SAFEWAY #17-1841
12320 N 83RD AVENUE
PEORIA
AZ 85381
0326264
Hibben,
Crystal

| Date | Rx# | Tx# | Drug Name | | Drug NDC | DispQty | DaysSupply | |
|------|-----|-----|-----------|--|----------|---------|------------|--|
| RR/RN | | | | Prescriber ID | U & C Price | | Final Patient Copay | |
| /2018 | 6184267 | 1544385 | Jardiance 25 Mg | Tab Boeh | 00597015330 | 30.0 | 30 | |
| /6 /5 | | | | | $ | | $ 0.00 | |
| PINO GIROLAMO J | | | | FA1459191 | | | | |
| /2018 | 6187192 | 1544996 | Atorvastatin Calcium 10 Mg | Tab Apot | 60505257809 | 30.0 | 30 | |
| 2 /3 | | | | | $ | | $ 0.00 | |
| PINO GIROLAMO J | | | | FA1459191 | | | | |
| /2018 | 4029153 | 1545818 | Tramadol Hcl 50 Mg | Tab Nort | 16714048101 | 240.0 | 30 | |
| 0 /0 | | | | | $ | | $ 17.59 | |
| GAN TRICK W | | | | FH0182333 | | | | |
| /2018 | 2019968 | 1546078 | Morphine Sulfate Er 15 Mg | Tab Endo | 60951065270 | 30.0 | 30 | |
| 0 /0 | | | | | $ | | $ 0.00 | |
| GAN TRICK W | | | | FH0182333 | | | | |
| /2018 | 2019969 | 1546079 | Oxycodone Hcl 30 Mg | Tab Mall | 00406853001 | 120.0 | 30 | |
| 0 /0 | | | | | $ | | $ 0.00 | |
| GAN TRICK W | | | | FH0182333 | | | | |
| 4/2018 | 6193835 | 1546592 | Cyclobenzaprine Hcl 10 Mg | Tab Solc | 43547040011 | 90.0 | 30 | |
| 0 /0 | | | | | $ | | $ 0.00 | |
| GAN TRICK W | | | | FH0182333 | | | | |
| 5/2018 | 6192268 | 1546699 | Januvia 100 Mg | Tab Merc | 00006027731 | 30.0 | 30 | |
| /10 /1 | | | | | $ | | $ 0.00 | |
| PINO, GIROLAMO J | | | | FA1459191 | | | | |

PROTECTED HEALTH INFORMATION       TASC000258

| ate | Rx# | Tx# | Drug Name | Drug NDC | DispQty | DaysSupply |
|------|------|------|-----------|----------|---------|------------|
| R/RN | | | | U & C Price | | Final Patient Copay |
| criber | | | Prescriber ID | | | |
| 2018 | 6192267 | 1546700 | Pantoprazole Sodium Ec 40 Mg    Tab Auro | 65862056090 | 60.0 | 30 |
| / 1 | | | | $ | $ | $ 0.00 |

NO, GIROLAMO J                                    FA1459191

Total Patient Pay:   $17.59

Attested By:

Registered Pharmacist

PROTECTED HEALTH  NFORMATION        TASC000259

**Medical Expenses**

Dates: 05/30/2017 to 10/30/2017

ent: Pascale
Mark
13051 N 75th Dr
Peoria, AZ 85381-4005

DOB: 58 Redacted

Pharmacy: SAFEWAY #17-1841
12320 N 83RD AVENUE
PEORIA
AZ 85381
0326264

NCPDP:
Pharmacist: Hibben,
Crystal

| Date | Rx# | Tx# | Drug Name | Drug NDC | DispQty | DaysSupply |
|------|-----|-----|-----------|----------|---------|------------|
| RR/RN | | | Prescriber ID | U & C Price | | Final Patient Copay |
| scriber | | | | | | |
| 2017 | 6169750 | 1503777 | Ibuprofen 800 Mg   Tab Majo | 00904585540 | 90.0 | 30 |
| /2 | | | FH0182333 | $ | | $ 0.00 |
| 3ANATRICK W | | | | | | |
| 2017 | 6174179 | 1508060 | Januvia 100 Mg   Tab Merc | 00006027731 | 30.0 | 30 |
| /6 | | | FA1459191 | $ | | $ 0.00 |
| 'INO, GIROLAMO J | | | | | | |
| 2017 | 6175719 | 1508058 | Pioglitazone Hcl 30 Mg   Tab Acco | 16729002110 | 30.0 | 30 |
| /5 | | | FA1459191 | $ | | $ 0.00 |
| 'INO, GIROLAMO J | | | | | | |
| 2017 | 6179897 | 1508061 | Atorvastatin Calcium 20 Mg   Tab Apot | 60505257909 | 30.0 | 30 |
| /2 | | | FA1459191 | $ | | $ 0.00 |
| 'INO, GIROLAMO J | | | | | | |
| 2017 | 6179899 | 1508059 | Montelukast Sodium 10 Mg   Tab Krem | 62175021032 | 30.0 | 30 |
| 5/2 | | | FA1459191 | $ | | $ 0.00 |
| 'INO, GIROLAMO J | | | | | | |
| 2017 | 6181348 | 1508170 | Lisinopril 30 Mg   Tab Sand | 00185063001 | 30.0 | 30 |
| 5/1 | | | FA1459191 | $ | | $ 0.00 |
| 'INO, GIROLAMO J | | | | | | |
| 2017 | 6179901 | 1508411 | Pantoprazole Sodium Ec 40 Mg   Tab Auro | 65862056090 | 60.0 | 30 |
| /1 | | | FA1459191 | $ | | $ 0.00 |
| INO, GIROLAMO J | | | | | | |

PROTECTED HEALTH NFORMATION

TASC000260

| Date / DR/RN Prescriber | Rx# | Tx# | Drug Name | Prescriber ID | Drug NDC / U & C Price | DispQty | DaysSupply / Final Patient Copay |
|---|---|---|---|---|---|---|---|
| , Stephen E | 6180378 | 1508412 | Hydroxyzine Hcl 50 Mg    Tab Nort | MP1704421 | 16714008310 $ | 90.0 | 30  $ 0.00 |
| 017 / 1 | 6175364 | 1508540 | Invokana 300 Mg    Tab Jans | FA1459191 | 50458014130 $ | 30.0 | 30  $ 0.00 |
| INO, GIROLAMO J | 4028114 | 1508990 | Clonazepam 1 Mg    Tab Nort | BR7655701 | 16714047001 $ | 60.0 | 30  $ 0.00 |
| NHART JASON C | 2018515 | 1509070 | Oxycodone Hcl 30 Mg    Tab Mayn | MJ1864203 | 68308011201 $ | 120.0 | 30  $ 0.00 |
| KSON, ROBIN E | 2018516 | 1509071 | Morphine Sulfate Er 15 Mg    Tab Endo | MJ1864203 | 60951065270 $ | 30.0 | 30  $ 0.00 |
| KSON, ROBIN E | 6182940 | 1509072 | Cyclobenzaprine Hcl 10 Mg    Tab Myla | MJ1864203 | 00378075110 $ | 90.0 | 30  $ 0.00 |
| KSON, ROBIN E | 6182941 | 1509073 | Gabapentin 300 Mg    Cap Nort | MJ1864203 | 16714050402 $ | 60.0 | 30  $ 0.00 |
| KSON, ROBIN E | 4027781 | 1509558 | Testosterone Cypionate 200 Mg/Ml    Inj Perr | AG2282945 | 00574082001 $ | 4.0 | 28  $ 0.00 |
| DMAN, IAN L |  |  |  |  |  |  |  |

PROTECTED HEALTH INFORMATION     TASC000261

| Date PR/RN scriber | Rx# | Tx# | Drug Name / Prescriber ID | Drug NDC / U & C Price | DispQty | DaysSupply / Final Patient Copay |
|---|---|---|---|---|---|---|
| 2017 NR / 0 KSON, ROBIN E | 4028316 | 1511512 | Tramadol Hcl 50 Mg     Tab Nort | 16714048103  $ | 240.0 | 30  $ 17.59 |
| 2017 0 ESEN MARK T | 6183388 | 1511521 | Trazodone Hcl 150 Mg     Tab Sunp | 53489051701  $ | 30.0 | 30  $ 0.00 |
| | | | MJ1864203 | | | |
| | | | BC1013729 | | | |
| 2017 3178642 2 SON, ROBIN E | | 1508200 | Ibuprofen 800 Mg     Tab Asce | 67877032105  $ | 90.0 | 30  $ 0.00 |
| | | | MJ1864203 | | | |
| 017 5174179 7 NO, GIROLAMO J | | 1513023 | Januvia 100 Mg     Tab Merc | 00006027731  $ | 30.0 | 30  $ 0.00 |
| | | | FA1459191 | | | |
| 017 6180378 2 Stephen E | | 1513018 | Hydroxyzine Hcl 50 Mg     Tab Nort | 16714008310  $ | 90.0 | 30  $ 0.00 |
| | | | MP1704421 | | | |
| 17 4181348 / 2 NO, GIROLAMO J | | 1513020 | Lisinopril 30 Mg     Tab Sand | 00185063001  $ | 30.0 | 30  $ 0.00 |
| | | | FA1459191 | | | |
| 17 4179997 3 NO, GIROLAMO J | | 1513022 | Atorvastatin Calcium 20 Mg     Tab Apot | 60505257909  $ | 30.0 | 30  $ 0.00 |
| | | | FA1459191 | | | |
| 17 5179901 2 NO, GIROLAMO J | | 1513019 | Pantoprazole Sodium Ec 40 Mg     Tab Auro | 65862056090  $ | 60.0 | 30  $ 0.00 |
| | | | FA1459191 | | | |

PROTECTED HEALTH INFORMATION          TASC000262

| Date | Rx# | RR/RN Prescriber | Tx# | Drug Name | Prescriber ID | Drug NDC / U & C Price | DispQty | DaysSupply / Final Patient Copay |
|---|---|---|---|---|---|---|---|---|
| /2017 /5/3 | 6179899 | | 1513031 | Montelukast Sodium 10 Mg   Tab Krem | | 62175021032 $ | 30.0 | 30 $ 0.00 |
| PINO, GIROLAMO J | | | | | FA1459191 | | | |
| /2017 0/2 | 4028114 | | 1513069 | Clonazepam 1 Mg   Tab Nort | | 16714047001 $ | 60.0 | 30 $ 0.00 |
| INHA , JASON C | | | | | BR7655701 | | | |
| /2017 3/1 | 6180539 | | 1513070 | Glipizide 5 Mg   Tab Sand | | 00781145210 $ | 30.0 | 30 $ 0.00 |
| PINO GIROLAMO J | | | | | FA1459191 | | | |
| /2017 1/0 | 6181450 | | 1513072 | Gabapentin 300 Mg   Cap Nort | | 16714050402 $ | 60.0 | 30 $ 0.00 |
| GAN ATRICK W | | | | | FH0182333 | | | |
| /2017 0/0 | 6184082 | | 1513465 | Cyclobenzaprine Hcl 10 Mg   Tab Myla | | 00378075110 $ | 90.0 | 30 $ 0.00 |
| CKSO ROBIN E | | | | | MJ1864203 | | | |
| /201 / NR | 2018728 | | 1513466 | Oxycodone Hcl 30 Mg   Tab Sunp | | 57664022488 $ | 120.0 | 30 $ 0.00 |
| CKSON, ROBIN E | | | | | MJ1864203 | | | |
| /2017 / NR | 2018729 | | 1513467 | Morphine Sulfate Er 15 Mg   Tab Endo | | 60951065270 $ | 30.0 | 30 $ 0.00 |
| CKSO ROBIN E | | | | | MJ1864203 | | | |
| 1/201 0/5 | 4027781 | | 1514039 | Testosterone Cypionate 200 Mg/Ml   Inj Perr | | 00574082001 $ | 4.0 | 28 $ 0.00 |
| OLDMAN, IAN L | | | | | AG2282945 | | | |

PROTECTED HEALTH INFORMATION   TASC090263

| Date | Rx# | Tx# | Drug Name | | Drug NDC | DispQty | DaysSupply |
| --- | --- | --- | --- | --- | --- | --- | --- |
| RR/RN | | | | Prescriber ID | U & C Price | | Final Patient Copay |
| scriber | | | | | | | |
| 1/2017 | 6170589 | 1514040 | Metformin Hcl 1,000 Mg | Tab Heri | 23155010401 | 60.0 | 30 |
| 3 / 1 | | | | | $ | | $ 0.00 |
| PINO, GIROLAMO J | | | | FA1459191 | | | |
| 1/2017 | 6184270 | 1514088 | Pioglitazone Hcl 30 Mg | Tab Macl | 33342005507 | 30.0 | 30 |
| 9 / 0 | | | | | $ | | $ 0.00 |
| PINO, GIROLAMO J | | | | FA1459191 | | | |
| 1/20 | 6184272 | 1514090 | Prochlorperazine Maleate 10 Mg | Tab Cadi | 59746011506 | 90.0 | 30 |
| 10 / | | | | | $ | | $ 0.00 |
| PINO, GIROLAMO J | | | | FA1459191 | | | |
| 3/20 | 6184267 | 1514461 | Jardiance 25 Mg | Tab Boeh | 00597015330 | 30.0 | 30 |
| 9 / | | | | | $ | | $ 0.00 |
| PINO, GIROLAMO J | | | | FA1459191 | | | |
| 8/20 | 6184271 | 1514091 | Glipizide 5 Mg | Tab Sand | 00781145210 | 60.0 | 30 |
| 11 / | | | | | $ | | $ 0.00 |
| PINO, GIROLAMO J | | | | FA1459191 | | | |
| 5/20 | 6174393 | 1513030 | Ibuprofen 800 Mg | Tab Amne | 53746046605 | 90.0 | 30 |
| 2 / 0 | | | | | $ | | $ 0.00 |
| GAN PATRICK W | | | | FH0182333 | | | |
| /201 | 6180379 | 1517760 | Trazodone Hcl 150 Mg | Tab Sunp | 53489051701 | 30.0 | 30 |
| 1 / 1 | | | | | $ | | $ 0.00 |
| y, Schen E | | | | MP1704421 | | | |
| /201 | 6183390 | 1517759 | Hydroxyzine Hcl 50 Mg | Tab Nort | 16714008310 | 90.0 | 30 |
| 0 / 0 | | | | | $ | | $ 0.00 |
| LLESEN, MARK T | | | | BC1013729 | | | |

PROTECTED HEALTH INFORMATION    TASC000264

| Fill Date | Rx# | Tx# | Drug Name | Prescriber ID | Drug NDC | DispQty | DaysSupply | U & C Price | Final Patient Copay |
|---|---|---|---|---|---|---|---|---|---|
| RPh/RPN / Prescriber | | | | | | | | | |
| 5/2017 / 0 / 0 | 6185182 | 1517371 | Cyclobenzaprine Hcl 10 Mg  Tab Myla | | 00378075110 | 42.0 | 14 | $ | $ 0.00 |
| OGAN PATRICK W | | | | FH0182333 | | | | | |
| 5/2017 / 0 / 0 | 2018928 | 1518045 | Morphine Sulfate Er 15 Mg  Tab Endo | | 60951065270 | 10.0 | 10 | $ | $ 0.00 |
| OWE, AUGHN T | | | | MH0881967 | | | | | |
| 5/201 / 0 / 4 | 2018927 | 1518048 | Oxycodone Hcl 30 Mg  Tab Mayn | | 68308011201 | 40.0 | 10 | $ | $ 0.00 |
| OWE, AUGHN T | | | | MH0881967 | | | | | |
| 5/201 / 0 / 0 | 4028508 | 1518049 | Tramadol Hcl 50 Mg  Tab Nort | | 16714048103 | 240.0 | 30 | $ | $ 17.59 |
| CKSON, ROBIN E | | | | MJ1864203 | | | | | |
| 5/201 / 0 / 2 | 6170590 | 1518162 | Sucralfate 1 Gm  Tab Gree | | 00591389205 | 120.0 | 30 | $ | $ 0.00 |
| RPINO, GIROLAMO J | | | | FA1459191 | | | | | |
| 5/201 / 0 / 4 | 6179897 | 1518161 | Atorvastatin Calcium 20 Mg  Tab Apot | | 60505257909 | 30.0 | 30 | $ | $ 0.00 |
| RPINO, GIROLAMO J | | | | FA1459191 | | | | | |
| 5/201 / 5 / 2 | 6181348 | 1518163 | Lisinopril 30 Mg  Tab Sand | | 00185063001 | 30.0 | 30 | $ | $ 0.00 |
| RPINO, GIROLAMO J | | | | FA1459191 | | | | | |
| 5/201 / 0 / 0 | 4028511 | 1518196 | Clonazepam 1 Mg  Tab Nort | | 16714047001 | 60.0 | 30 | $ | $ 0.00 |
| EINHART, JASON C | | | | BR7655701 | | | | | |

PROTECTED HEALTH INFORMATION       TASC000265

| Fill Date | Rx# | Tx# | Drug Name | Prescriber ID | Drug NDC | DispQty | DaysSupply |
|---|---|---|---|---|---|---|---|
| RA/RR/RN | | | | | | U & C Price | Final Patient Copay |
| Prescriber | | | | | | | |
| 3/6/2017 | 6185395 | 1518212 | Fluarix Quadrivalent 0.5 Ml | Inj Glax | 58160090752 | 0.5 | 1 |
| 0 / 0 / 0 | | | | | $ | | $ 0.00 |
| HIBBEN, CRYSTAL R | | | | | | | |
| 3/6/2017 | 6185396 | 1518213 | Pneumovax 23 25 Mcg/0.5ml | Inj Merc | 00006483703 | 0.5 | 1 |
| 0 / 0 / 0 | | | | | $ | | $ 0.00 |
| HIBBEN, CRYSTAL R | | | | | | | |
| 3/7/20 | 6185390 | 1518198 | Gabapentin 300 Mg | Cap Nort | 16714050402 | 90.0 | 30 |
| 0 / 0 / | | | | | $ | | $ 0.00 |
| JACKSON, ROBIN E | | | MJ1864203 | | | | |
| 3/11/2017 | 4028539 | 1519331 | Testosterone Cypionate 200 Mg/Ml | Inj Perr | 00574082001 | 4.0 | 28 |
| 0 / 1 / | | | AG2228945 | | $ | | $ 0.00 |
| GOLDMAN, IAN L | | | | | | | |
| 3/13/20 | 6180539 | 1519501 | Glipizide 5 Mg | Tab Sand | 00781145210 | 30.0 | 30 |
| 0 / 3 / | | | FA1459191 | | $ | | $ 0.00 |
| ARPINO, GIROLAMO J | | | | | | | |
| 3/13/20 | 6179901 | 1519502 | Pantoprazole Sodium Ec 40 Mg | Tab Auro | 65862056090 | 60.0 | 30 |
| 0 / 0 / 3 | | | FA1459191 | | $ | | $ 0.00 |
| ARPINO, GIROLAMO J | | | | | | | |
| 3/13/20 | 6179899 | 1519500 | Montelukast Sodium 10 Mg | Tab Krem | 62175021032 | 30.0 | 30 |
| 1 / 5 / | | | FA1459191 | | $ | | $ 0.00 |
| ARPINO, GIROLAMO J | | | | | | | |
| 3/14/20 | 6185908 | 1519667 | Rozerem 8 Mg | Tab Take | 64764080530 | 30.0 | 30 |
| 1 / 2 / 0 | | | MT0682927 | | $ | | $ 0.00 |
| ROBIN, CYNTHIA K | | | | | | | |

PROTECTED HEALTH INFORMATION     TASC000266

| Fill Date | Rx# | Tx# | Drug Name | Drug NDC | DispQty | DaysSupply |
|---|---|---|---|---|---|---|
| DEA/RR/RN prescriber | | | Prescriber ID | U & C Price | | Final Patient Copay |
| /14/2017 /0/0 | 6185919 | 1519696 | Hydroxyzine Hcl 50 Mg        Tab Nort | 16714008310 $ | 90.0 | 30 $ 0.00 |
| TOBIN, CYNTHIA K | | | MT0662927 | | | |
| /14/2017 /R / 0 | 2018979 | 1519720 | Oxycodone Hcl 30 Mg        Tab Sunp | 57664022488 $ | 120.0 | 30 $ 0.00 |
| HOGAN PATRICK W | | | FH0182333 | | | |
| /14/20  /0/ | 2018978 | 1519719 | Morphine Sulfate Er 15 Mg        Tab Endo | 60951065270 $ | 30.0 | 30 $ 0.00 |
| HOGAN PATRICK W | | | FH0182333 | | | |
| /17/20  7 /0/ | 6185925 | 1519736 | Cyclobenzaprine Hcl 10 Mg        Tab Myla | 00378075110 $ | 90.0 | 30 $ 0.00 |
| HOGAN PATRICK W | | | FH0182333 | | | |
| /1/20 11 / 9 | 6184270 | 1522862 | Pioglitazone Hcl 30 Mg        Tab Macl | 33342005507 $ | 30.0 | 30 $ 0.00 |
| ARPINO, GIROLAMO J | | | FA1459191 | | | |
| /3/20 /0/ | 4028605 | 1522350 | Clonazepam 1 Mg        Tab Nort | 16714047001 $ | 60.0 | 30 $ 0.00 |
| REINHART, JASON C | | | BR7655701 | | | |
| /5/20 5 / 0 / | 6179897 | 1523244 | Atorvastatin Calcium 20 Mg        Tab Apot | 60505257909 $ | 30.0 | 30 $ 0.00 |
| ARPINO GIROLAMO J | | | FA1459191 | | | |
| /5/20 11 / 9 | 6184267 | 1523287 | Jardiance 25 Mg        Tab Boeh | 00597015330 $ | 30.0 | 30 $ 0.00 |
| ARPINO, GIROLAMO J | | | FA1459191 | | | |

PROTECTED HEALTH INFORMATION          TASC000267

| I Date / RRR/RN / escriber | Rx# | Tx# | Drug Name / Prescriber ID | Drug NDC / U & C Price | DispQty | DaysSupply / Final Patient Copay |
|---|---|---|---|---|---|---|
| 5/2017 0/0 ...GAN PATRICK W | 4028625 | 1523313 | Tramadol Hcl 50 Mg  Tab Nort — FH0182333 | 16714048103  $ | 80.0 | 10  $ 7.80 |
| 5/2017 0/0 WE, PUGHN T | 4028626 | 1523314 | Tramadol Hcl 50 Mg  Tab Nort — MH0881967 | 16714048103  $ | 80.0 | 10  $ 7.80 |
| 1/201 4/0 PINO, GIROLAMO J | 6187191 | 1524247 | Pioglitazone Hcl 45 Mg  Tab Macl — FA1459191 | 33342005607  $ | 30.0 | 30  $ 0.00 |
| 1/20 4/0 PINO, GIROLAMO J | 6187192 | 1524248 | Atorvastatin Calcium 10 Mg  Tab Apot — FA1459191 | 60505257809  $ | 30.0 | 30  $ 0.00 |
| 1/201 4/0 PINO, GIROLAMO J | 6187195 | 1524251 | Creon Dr 36,000 Unit  Cap Abbv — FA1459191 | 00032301628  $ | 240.0 | 30  $ 0.00 |
| 2/201 0/1 BIN, CYNTHIA K | 6185919 | 1524348 | Hydroxyzine Hcl 50 Mg  Tab Nort — MT0682927 | 16714008310  $ | 90.0 | 30  $ 0.00 |
| 2/201 0/4 PINO, GIROLAMO J | 6179901 | 1524350 | Pantoprazole Sodium Ec 40 Mg  Tab Auro — FA1459191 | 65862056090  $ | 60.0 | 30  $ 0.00 |
| 2/201 /5/5 PINO, GIROLAMO J | 6179899 | 1524349 | Montelukast Sodium 10 Mg  Tab Parp — FA1459191 | 00603465528  $ | 30.0 | 30  $ 0.00 |

PROTECTED HEALTH INFORMATION          TASC000268

| Fill Date | Rx# | Tx# | Drug Name | Prescriber ID | Drug NDC | DispQty | DaysSupply | Final Patient Copay |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | U & C Price |
| RA/RR/RN Prescriber | | | | | | | | |
| 9/12/2017 | 6181348 | 1524351 | Lisinopril 30 Mg | Tab Sand | 00185063001 | 30.0 | 30 | $ 0.00 |
| 10 / 5 / 4 | | | | | | | | $ |
| ARPINO, GIROLAMO J | | | | FA1459191 | | | | |
| 9/13/2017 | 6187337 | 1524642 | Cyclobenzaprine Hcl 10 Mg | Tab Myla | 00378075110 | 90.0 | 30 | $ 0.00 |
| 0 / 00 | | | | | | | | $ |
| HOGAN PATRICK W | | | | FH0182333 | | | | |
| 9/13/2017 | 6187338 | 1524643 | Gabapentin 300 Mg | Cap Nort | 16714050402 | 60.0 | 30 | $ 0.00 |
| 2 / 00 | | | | | | | | $ |
| HOGAN PATRICK W | | | | FH0182333 | | | | |
| 9/13/2017 | 6187339 | 1524644 | Ibuprofen 800 Mg | Tab Amne | 53746046605 | 90.0 | 30 | $ 0.00 |
| 2 / 0 | | | | | | | | $ |
| HOGAN PATRICK W | | | | FH0182333 | | | | |
| 9/13/2017 | 2019166 | 1524645 | Morphine Sulfate Er 15 Mg | Tab Endo | 60951065270 | 30.0 | 30 | $ 0.00 |
| 0 / 00 | | | | | | | | $ |
| HOGAN PATRICK W | | | | FH0182333 | | | | |
| 9/13/2017 | 2019167 | 1524646 | Oxycodone Hcl 30 Mg | Tab Sunp | 57664022488 | 120.0 | 30 | $ 0.00 |
| 0 / 00 | | | | | | | | $ |
| HOGAN PATRICK W | | | | FH0182333 | | | | |
| 9/15/2017 | 6174179 | 1525210 | Januvia 100 Mg | Tab Merc | 00006027731 | 30.0 | 30 | $ 0.00 |
| 2 / 03 | | | | | | | | $ |
| ARPINO, GIROLAMO J | | | | FA1459191 | | | | |
| 9/2/2017 | 6188810 | 1522931 | Pioglitazone Hcl 30 Mg | Tab Macl | 33342005507 | 30.0 | 30 | $ 0.00 |
| 6 / 6 0 | | | | | | | | $ |
| ARPINO, GIROLAMO J | | | | FA1459191 | | | | |

PROTECTED HEALTH INFORMATION

TASC000269

| Fill Date | Rx# | Tx# | Drug Name | Prescriber ID | Drug NDC | DispQty | DaysSupply | U & C Price | Final Patient Copay |
|---|---|---|---|---|---|---|---|---|---|
| 27/2017 | 6170589 | 1527204 | Metformin Hcl 1,000 Mg | Tab Heri | 23155010401 | 60.0 | 30 | $ | $ 0.00 |
| 3 / 2 | | | | FA1459191 | | | | | |
| 2/2017 | 4028740 | 1527858 | Tramadol Hcl 50 Mg | Tab Nort | 16714048101 | 240.0 | 30 | $ | $ 17.59 |
| 0 / | | | | FH0182333 | | | | | |
| 3/2017 | 4028749 | 1528028 | Clonazepam 1 Mg | Tab Nort | 16714047001 | 60.0 | 30 | $ | $ 0.00 |
| 0 / | | | | BR7655701 | | | | | |
| 5/20 | 6184267 | 1528433 | Jardiance 25 Mg | Tab Boeh | 00597015330 | 30.0 | 30 | $ | $ 0.00 |
| 9 / | | | | FA1459191 | | | | | |
| 9/20 | 6181450 | 1528459 | Gabapentin 300 Mg | Cap Nort | 16714050402 | 60.0 | 30 | $ | $ 0.00 |
| 1 / 1 | | | | FH0182333 | | | | | |
| 10/20 | 6185919 | 1529294 | Hydroxyzine Hcl 50 Mg | Tab Nort | 16714008310 | 90.0 | 30 | $ | $ 0.00 |
| 0 / 2 | | | | MT0682927 | | | | | |
| 10/20 | 6187192 | 1529295 | Atorvastatin Calcium 10 Mg | Tab Apot | 60505257809 | 30.0 | 30 | $ | $ 0.00 |
| 4 / 1 | | | | FA1459191 | | | | | |
| 10/20 | 6187191 | 1529296 | Pioglitazone Hcl 45 Mg | Tab Macl | 33342005607 | 30.0 | 30 | $ | $ 0.00 |
| 4 / 1 | | | | FA1459191 | | | | | |

VRR/RN

Prescriber

RPINO, GIROLAMO J

OGAN PATRICK W

EINHART, JASON C

RPINO, GIROLAMO J

OGAN PATRICK W

BIN, CYNTHIA K

RPINO GIROLAMO J

RPINO, GIROLAMO J

PROTECTED HEALTH INFORMATION   TASC000270

| Date RR/RN scriber | Rx# | Tx# | Drug Name | Prescriber ID | Drug NDC / U & C Price | DispQty | DaysSupply / Final Patient Copay |
|---|---|---|---|---|---|---|---|
| 10/2017 /1/1 | 6187195 | 1529293 | Creon Dr 36,000 Unit  Cap Abbv | PINO, GIROLAMO J  FA1459191 | 00032301628  $ | 240.0 | 30  $ 0.00 |
| 11/20 /1/1 | 6187339 | 1529437 | Ibuprofen 800 Mg  Tab Asce | GAN TRICK W  FH0182333 | 67877032105  $ | 90.0 | 30  $ 0.00 |
| 12/20 /0/0 | 6188916 | 1529714 | Cyclobenzaprine Hcl 10 Mg  Tab Myla | GAN TRICK W  FH0182333 | 003780075110  $ | 90.0 | 30  $ 0.00 |
| 12/20 2019355 /0/0 | 2019355 | 1529721 | Oxycodone Hcl 30 Mg  Tab Mall | WE, UGHN T  MH0881967 | 00406853001  $ | 120.0 | 30  $ 0.00 |
| 12/20 2019354 /0/0 | 2019354 | 1529720 | Morphine Sulfate Er 15 Mg  Tab Endo | WE, UGHN T  MH0881967 | 60951065270  $ | 30.0 | 30  $ 0.00 |
| 13/2( /10/1 | 6184272 | 1529867 | Prochlorperazine Maleate 10 Mg  Tab Cadi | PINO, GIROLAMO J  FA1459191 | 59746011506  $ | 90.0 | 30  $ 0.00 |
| 13/2 /0/5 | 6179901 | 1529866 | Pantoprazole Sodium Ec 40 Mg  Tab Auro | PINO, GIROLAMO J  FA1459191 | 65862056090  $ | 60.0 | 30  $ 0.00 |
| 19/2 /5/6 | 6179899 | 1530908 | Montelukast Sodium 10 Mg  Tab Unic | PINO, GIROLAMO J  FA1459191 | 29300022010  $ | 30.0 | 30  $ 0.00 |

PROTECTED HEALTH INFORMATION

TASC000271

| Il Date | Rx# | Tx# | Drug Name | Drug NDC | DispQty | DaysSupply |
| --- | --- | --- | --- | --- | --- | --- |
| 4/RR/RN | | | | U & C Price | | Final Patient Copay |
| escriber | | | Prescriber ID | | | |
| /23/2017 | 6184270 | 1527590 | Pioglitazone Hcl 30 Mg   Tab Macl | 33342005507 | 30.0 | 30 |
| / 9 / 2 | | | | $ | | $ 0.00 |
| RPINO, GIROLAMO J | | | FA1459191 | | | |
| /28/2017 | 6181348 | 1532707 | Lisinopril 30 Mg   Tab Sand | 00185063001 | 30.0 | 30 |
| / 5 / 5 | | | | $ | | $ 0.00 |
| RPINO, GIROLAMO J | | | FA1459191 | | | |
| /30/2017 | 4028749 | 1533080 | Clonazepam 1 Mg   Tab Nort . | 16714075001 | 60.0 | 30 |
| 0 / 1 | | | | $ | | $ 0.00 |
| INHART, JASON C | | | BR7655701 | | | |

**Total Patient Pay: $68.37**

Attested By:

Registered Pharmacist

port Date: 10/30/2017

PROTECTED HEALTH NFORMATION          TASC000272

7/5/18                                    TASC Diversion Program Payment History

| POM/B | Donor Id <sup>Redacted</sup>808 | PASCALE, MARK | | POM - MARIJUANA |

### 10002 Admission Fee                           BALANCE:   $0.00

| | TRANDATE | Receipt No. | AMOUNT |
|---|---|---|---|
| 10002 | 11/21/17 | 171121-005452548 | $75.00 |
| 10002 | 2/2/18 | 180202-005534446 | $20.00 |
| 10002 | 2/27/18 | 180227-005562396 | $30.00 |
| 10002 | 3/30/18 | 180330-005597875 | $25.00 |
| | | Total Payments: | $150.00 |

### 10015 POM CA Fund                             BALANCE:   $0.00

| | TRANDATE | Receipt No. | AMOUNT |
|---|---|---|---|
| 10015 | 3/30/18 | 180330-005597875 | $90.00 |
| 10015 | 4/28/18 | 180428-005631405 | $200.00 |
| 10015 | 5/30/18 | 180530-005664539 | $60.00 |
| 10015 | 6/29/18 | 180629-005697835 | $300.00 |
| | | Total Payments: | $650.00 |

### 10016 POM MCSO Fund                           BALANCE:   $0.00

### 10017 POM TASC Fee                            BALANCE:   $0.00

| | TRANDATE | Receipt No. | AMOUNT |
|---|---|---|---|
| 10017 | 3/30/18 | 180330-005597875 | $150.00 |
| | | Total Payments: | $150.00 |

### 10080 SEMINAR RESCHEDULE FEE                  BALANCE:   $0.00

| | TRANDATE | Receipt No. | AMOUNT |
|---|---|---|---|
| 10080 | 3/30/18 | 180330-005597875 | $75.00 |
| | | Total Payments: | $75.00 |

PROTECTED HEALTH  NFORMATION     TASC000273



## TASC Individual Payment History

| POM/B | Donor ID: Redacted 9808 | PASCALE, MARK |
|---|---|---|

Transaction History as of: 8/24/2018  1:30:06PM

| Date | Receipt No. | Location | Transaction | Amount |
|---|---|---|---|---|
| 7/2/2018 | 180702-005699518 | HQCOLLECT1 | 10012 GCMS Confirmation | $15.00 |
| 6/29/2018 | 180629-005697835 | HQCOLLECT3 | 10015 POM CA Fund | $300.00 |
| 6/29/2018 | 180629-005697835 | HQCOLLECT3 | 10019 Urine Analysis | $15.00 |
| 6/21/2018 | 180621-005688889 | HQCOLLECT3 | 10019 Urine Analysis | $15.00 |
| 6/13/2018 | 180613-005679766 | HQCOLLECT1 | 10019 Urine Analysis | $15.00 |
| 6/8/2018 | 180608-005675149 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 6/5/2018 | 180605-005670705 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 5/30/2018 | 180530-005664539 | GLEN1 | 10015 POM CA Fund | $60.00 |
| 5/30/2018 | 180530-005664539 | GLEN1 | 10019 Urine Analysis | $15.00 |
| 5/24/2018 | 180524-005660711 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 5/15/2018 | 180515-005649447 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 5/10/2018 | 180510-005644357 | GLEN2 | 10012 GCMS Confirmation | $15.00 |
| 5/10/2018 | 180510-005644357 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 5/1/2018 | 180501-005633707 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 4/30/2018 | 180430-005632390 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 4/28/2018 | 180428-005631405 | GLEN2 | 10015 POM CA Fund | $200.00 |
| 4/28/2018 | 180428-005631405 | GLEN2 | 10019 Urine Analysis | $0.00 |
| 4/19/2018 | 180419-005621351 | GLEN1 | 10019 Urine Analysis | $15.00 |
| 4/16/2018 | 180416-005616382 | GLEN2 | 10012 GCMS Confirmation | $15.00 |
| 4/13/2018 | 180413-005614372 | GLEN2 | 10019 Urine Analysis | $16.00 |
| 4/12/2018 | 180412-005612855 | GLEN1 | 10019 Urine Analysis | $15.00 |
| 4/11/2018 | 180411-005612045 | GLEN1 | 10019 Urine Analysis | $15.00 |
| 3/30/2018 | 180330-005597875 | GLEN2 | 10002 Admission Fee | $25.00 |
| 3/30/2018 | 180330-005597875 | GLEN2 | 10015 POM CA Fund | $90.00 |
| 3/30/2018 | 180330-005597875 | GLEN2 | 10017 POM TASC Fee | $150.00 |
| 3/30/2018 | 180330-005597875 | GLEN2 | 10019 Urine Analysis | $0.00 |
| 3/30/2018 | 180330-005597875 | GLEN2 | 10080 SEMINAR RESCHEDULE FEE | $75.00 |
| 3/20/2018 | 180320-005587194 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 3/16/2018 | 180316-005582897 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 3/15/2018 | 180315-005581378 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 3/14/2018 | 180314-005579732 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 3/9/2018 | 180309-005575348 | GLEN1 | 10019 Urine Analysis | $15.00 |
| 2/27/2018 | 180227-005562396 | GLEN2 | 10002 Admission Fee | $30.00 |
| 2/27/2018 | 180227-005562396 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 2/13/2018 | 180213-005547038 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 2/12/2018 | 180212-005545837 | GLEN1 | 10012 GCMS Confirmation | $15.00 |
| 2/8/2018 | 180208-005541102 | GLEN1 | 10019 Urine Analysis | $15.00 |
| 2/7/2018 | 180207-005540573 | GLEN1 | 10019 Urine Analysis | $15.00 |
| 2/2/2018 | 180202-005534446 | GLEN2 | 10002 Admission Fee | $20.00 |
| 2/2/2018 | 180202-005534446 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 1/29/2018 | 180129-005528443 | GLEN1 | 10019 Urine Analysis | $15.00 |
| 1/23/2018 | 180123-005522440 | GLEN2 | 10012 GCMS Confirmation | $15.00 |
| 1/22/2018 | 180122-005521756 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 1/11/2018 | 180111-005511737 | GLEN2 | 10019 Urine Analysis | $15.00 |
| 12/27/2017 | 171227-005495642 | GLEN2 | 10019 Urine Analysis | $14.00 |
| 12/20/2017 | 171220-005487754 | GLEN2 | 10019 Urine Analysis | $14.00 |
| 12/16/2017 | 171216-005483720 | GLEN1 | 10019 Urine Analysis | $14.00 |
| 12/8/2017 | 171208-005473231 | GLEN1 | 10019 Urine Analysis | $14.00 |
| 12/1/2017 | 171201-005464737 | GLEN2 | 10019 Urine Analysis | $14.00 |
| 11/30/2017 | 171130-005462412 | GLEN2 | 10019 Urine Analysis | $14.00 |
| 11/22/2017 | 171122-005455017 | GLEN2 | 10019 Urine Analysis | $14.00 |
| 11/21/2017 | 171121-005452548 | DIV18 | 10002 Admission Fee | $75.00 |
| 11/21/2017 | 171121-005452548 | DIV18 | 10019 Urine Analysis | $0.00 |

|  |  |  |  | $1,618.00 |



## TASC Financial Information Form-Award Letters-Waived Fees
### Please write legibly

Client Name: **Mark Pascale**   Donor ID ___15___   Date: 1/23/18

Employment: ☐ Full Time   ☐ Part Time   ☐ Unemployed   ☒ Disabled

If employed, how many hours a week do you work? ___∅___

What is your monthly income? SSI / Des Food $750.00 / $180.00

What is your monthly household income? $930.00

Please list ALL monthly expenses for household (i.e. rent/mortgage):

| | |
|---|---|
| House    own | $ 688.00 |
| SRP | $ 130.00 |
| WAter | $ 45.00 |
| INC. | $ 56.00 |
| PHone & Internet | $ 120.00 |
| Gas | $ 90.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| **TOTAL** | $ 1,129.00 |

What do you think you are able to pay per month towards your program fees?
I don't Know exact amount. But I will Be pay Something

Do you have any additional income, if so what are your plans?
my son is moving iN to Help me out. He will Help me
With the Utilities. He works part time and gos to School

If monthly fees are reduced, how do you intend on paying off all fees by the end of the program?
I Find thing At yARd sAles / And Sell on eBay.
Every thing I made on eBay is going to go towards my Bill with you guys.

Client signature: *Mark Pascale*    Date: 1/23/18

PROTECTED HEALTH NFORMATION    TASC000275

Comprehensive Solutions. Proven Results.

SOCIAL SECURITY
5907 W KINGS AVE
GLENDALE AZ 85306

**Social Security Administration**
**Supplemental Security Income**
Notice of Change in Payment

Date: November 26, 2017
Claim Number: 1 Redacted

\# 000003296  I=000000  1119 4 COL
||l||l|l|III|||l||l|l||l|||l|l||l||l||l|II|l||ll|||l|l||l||l|l|l|l||l|l|
3294 1 AB 9.400



914 17S1697A99467
MARK ANTHONY PASCALE
13051 N 75TH DR
PEORIA AZ 85381-4005

We plan to increase your monthly Supplemental Security Income (SSI) payment from $735.00 to $750.00 beginning January 2018. The amount will change because the cost of living increased during the past year. You will continue to get the new amount each month unless there is a change in the information we use to figure your payment.

The rest of this letter explains more about your SSI payments. It also tells you how to find affordable health care.

We explain how we figured the monthly payment amount on the worksheet at the end of this letter. The explanation shows how your income, other than any SSI payments, affects your SSI payment. We include explanations only for months where payment amounts change.

## When You Will Receive Your Payments

Your bank or other financial institution will receive your monthly payment of $750.00 around January 1, 2018, and on the first of each month after that.

## If You Work Or Want To Return To Work

We have a program called Ticket to Work that helps people receiving disability benefits go to work. The Ticket to Work program is voluntary and won't cost you anything. If you participate in the program, employment networks or your State vocational rehabilitation agency can help you find, prepare for, and keep a job. You can find a list of service providers, benefits and work incentives counselors, and get your questions answered by contacting the Ticket to Work helpline at 1-866-968-7842 (TTY 1-866-833-2967). You also can visit www.choosework.net and select "Find Help."

See Next Page

SSA-L8151



PROTECTED HEALTH  NFORMATION      TASC000276

# CHASE

Mortgage


chase.com
**Chase Mobile**
Make a Payment, view activity, set up alerts or paperless



| **Customer Service** | **1-800-848-9380** |
|---|---|
| Includes 24/7 Automated Response | |
| Monday - Thursday | 8 a.m. - midnight (ET) |
| Friday | 8 a.m. - 10 p.m. (ET) |
| Saturday | 8 a.m. - 5 p.m. (ET) |
| **Hearing Impaired Service (TTY)** | **1-800-582-0542** |

ԿՈՒ||Ոկ||Կկ|Ոկ|Ուկ||Ոկ|Ոկ|Ոկ|||Ոկ||Ոկ||Ուկ||Ոկ||Ււկ|
4844 WND TOBSON PRESENT
MARK A PASCALE
13051 N 75TH DR
PEORIA AZ 85381-4005

## Mortgage Loan Statement

| | |
|---|---|
| Loan Number | Redacted 3771 |
| Statement Date | 01/08/2018 |
| Property Address | 13051 N 75th Dr Peoria, AZ 85361 |

| Total Amount | **$688.34** |
|---|---|

### Explanation of Payment Amount

| Principal | $167.51 |
|---|---|
| Interest | $272.08 |
| Escrow Payment (Taxes and/or Insurance) | $248.75 |
| **Monthly Payment** | **$688.34** |

## Loan Overview (as of 01/08/2018)

| | |
|---|---|
| Original Principal Balance | $232,000.00 |
| Unpaid Principal Balance | $105,833.10 |
| Deferred Principal Balance | $16,800.00 |
| Capitalized Interest Balance | $23,117.64 |
| Interest Rate | 3.00000% |
| Next Interest Rate Change Date | 01/2019 |
| Escrow Balance | $1,149.51 |

Your Unpaid Principal Balance is not a payoff quote. Learn more about the payoff process by visiting chase.com/Payoff or obtain a payoff quote by calling our 24/7 automated service at 1-877-505-3884

## Past Payments Breakdown

| | Paid Since Last Statement | Paid Year-to-Date |
|---|---|---|
| Principal | $167.09 | $167.09 |
| Interest | $272.50 | $272.50 |
| Escrow Payment (Taxes and or Insurance) | $248.75 | $248.75 |
| **Total** | **$688.34** | **$688.34** |

## Transaction Activity Since Your Last Statement (Includes Fees/Charges)

| Transaction Date | Description | Total Received | Principal | Interest | Escrow | Fees | Unapplied Funds |
|---|---|---|---|---|---|---|---|
| 01 08 2018 | PAYMENT | $688.34 | $167.09 | $272.50 | $248.75 | | |

PROTECTED HEALTH INFORMATION          TASC000277

**City of Peoria**
Customer Service
8401 W Monroe St.
Peoria, AZ 85345

*Water*

*Customer Service Office:  (623) 773-7160
*Office Hours:  7 am - 6 pm, Monday - Thursday

SIGN UP FOR PAPERLESS BILLING AT:
MYACCOUNT.PEORIAAZ.GOV

MARK PASCALE
13051 N 75TH DR
PEORIA, AZ 85381-4005

## YOUR MONTHLY WATER USAGE



Trash collection changes during the holidays. For a schedule, visit
www.peoriaaz.gov/solidwaste.

## Account Statement

### ACCOUNT INFORMATION

| | |
|---|---|
| Account Number: | Redacted 15-03 |
| Service Address: | 13051 N 75TH DR |
| Service Period: | 12/06/2017 - 01/04/2018 |
| Bill Date: | 01/11/2018 |

### WATER METER INFORMATION (thousands of gallons)

| Meter | Service Period | Previous | Current | Usage |
|---|---|---|---|---|
| 0053789164 | 12/06/2017 - 01/04/2018 | 0025 | 0027 | 2 |

| Last Month's Usage | 2 | Last Year's Usage | 2 |
|---|---|---|---|

### ACCOUNT ACTIVITY

| | |
|---|---|
| **PREVIOUS BALANCE** | 47.99 |
| Late PaymentPenalty 01/11/2018 | 2.00 |
| **Date the previous balance was due : 01/03/2018**  *Paid* | 49.99 |

This statement reflects payments posted thru Jan 10-2018

### NEW CHARGES

| | |
|---|---|
| Water Charges | 18.14 |
| Sewer Charges | 13.60 |
| EPA Charges | 0.90 |
| Residential Garbage | 9.69 |
| Residential Recycling | 3.91 |
| Storm Water Charge | 1.00 |
| Sales Tax on Water | 1.74 |
| State Water Quality Tax | 0.01 |
| **New Charges Due By** | **02/01/2018** | 48.99 |

### ACCOUNT BALANCE

| | |
|---|---|
| **TOTAL AMOUNT DUE** | **98.98** |

---

**City of Peoria**

Return bottom portion with your payment - Please fold on perforation before tearing
Make checks payable to City of Peoria

### ACCOUNT INFORMATION

| | |
|---|---|
| Account Number: | Redacted 15-03 |
| Service Address: | 13051 N 75TH DR |
| Cycle-Route: | 005-0085 |
| Service Period: | 12/06/2017 - 01/04/2018 |
| Bill Date: | 01/11/2018 |

**DUE DATE:**                02/01/2018

### AMOUNT DUE

| TOTAL AMOUNT DUE | $ | 98.98 |
|---|---|---|

### AMOUNT ENCLOSED

☐ Address Changed?  Please check this box and fill in your new address
on the back of this payment stub. Thank you!

Account Overdue.  Balance forward must be paid by 02/05/2018 to avoid
disconnection and/or additional fees.



MARK PASCALE
13051 N 75TH DR
PEORIA, AZ 85381-4005

PROTECTED HEALTH  NFORMATION       TASC000278

0201180098980048990049990000000000422150031099012



® SRP

srpnet.com  602-236-8888

Please Pay by
**Feb 6, 2018**

Account# Redacted 005
**$137.00**

SERVICE FROM 12/14/2017 - 1/13/2018 (31 Days)

MARK PASCALE
3051 N 75TH DR    PEORIA
Time-of-Use Plan

## ENERGY HISTORY (kWh)



| | 2016 | 2017 | 2018 |

## YOUR ACCOUNT SUMMARY AS OF 1/16/2018

| | |
|---|---|
| Previous Balance | -$75.58 |
| 1/4 Payment - Thank you | -$137.00 |
| **Balance Before Charges** | **-$212.58** |
| Monthly Service Charge | $20.00 |
| On Peak Energy Charge | $13.96 |
| Off Peak Energy Charge | $35.77 |
| Economy Price Plan Discount | -$20.00 |
| Peoria City Tax | $1.64 |
| County and State Tax | $3.13 |
| **This Month's Charges** | **$54.50** |
| **NEW ACCOUNT BALANCE** | **-$158.08** |

## Your Budget Billing Summary

| | |
|---|---|
| New Account Balance | -$158.08 |
| Please Pay | $137.00 |
| Account Balance After Payment | -$295.08 |

## COMPARISON (Daily Averages)

| | Days | kWh | Cost | Temp |
|---|---|---|---|---|
| Jan 2018 | 31 | 21 | $1.76 | 58.8° |
| Dec 2017 | 31 | 23 | $1.96 | 66.9° |
| Jan 2017 | 31 | 20 | $1.69 | 57.5° |

## MESSAGES FOR YOU

✓ You saved $1.83 this month on the Time-of-Use Plan.
Losses for the last 12 months are $33.71. See savings tips
at srpnet.com.

| Meter # | Type | Current Read | Prior Read | Energy |
|---|---|---|---|---|
| 5900656 | On Pk kWh | 50877 | 50740 | 137 |
| | Off Pk kWh | 36265 | 35762 | 503 |
| | Total kWh | | | 640 |



*PLEASE RETURN THIS PORTION WHEN MAILING YOUR PAYMENT*



R
Account# Redacted 005

Please Pay by
**Feb 6, 2018**          **$137.00**

To donate to SHARE, please add $1 or $2 to your payment

**Make Check Payable To**

 ®

PO BOX 80062
PRESCOTT AZ 86304-8062



0077048
MARK PASCALE
13051 N 75TH DR
PEORIA AZ 85381-4005

PROTECTED HEALTH  NFORMATION     TASC000279

180116001     44648200500000000000000000000000137001

State Farm Payment Plan
PO Box 44110
Jacksonville FL 32231-4110

*INC.*

AT1   009441   0006   **Redacted**

PASCALE, MARK
13051 N 75TH DR
PEORIA AZ 85381-4005

| Notice of Automated Payment | |
|---|---|
| State Farm Payment Plan: | Redacted |
| Accountholder Name: | PASCALE, MARK |
| **Total Amount:** | **$59.47** |
| **To Be Paid On:** | **January 21, 2018** |
| See Important Information | |

Agent Brandon Mueller Ins Agcy Inc
6149 N Scottsdale Rd Ste 106
Scottsdale AZ  85250-5433
Phone: 480-991-0119

## Important Information

- NOTE: Recurring payment of $59.47 will be entered JAN 21, 2018 through your financial institution.

- Future notices will only be mailed if your amount due changes. Please continue to account for this amount in your financial records each month.

- State Farm cares about the security of your information. We have recently enhanced how customers are verified. You may be asked new questions to verify your identify when you access your account online or call into our contact center.

- Changes and payments made after January 4, 2018 will be reflected on a subsequent billing notice.

- If you have any questions or would like to discuss other State Farm products, your agent is ready to assist you.

*Thanks for letting us serve you!*



## Things change at the **speed of life.**

Let's make sure your insurance is keeping up with all the important events in your life. Your State Farm® agent is *here to help life go right.*™

Talk to your State Farm agent today.

009924   SFPP Account  1265-6668-24

PROTECTED HEALTH NFORMATION        TASC000280        January 4, 2018

Page: 1 Document Name: untitled

```
NOTI                        NOTICE                          013018 13:41
                                                   Redacted SUSANA W
CASE NAME: PASCALE, MARK            CASE NUMBER:            NOTICE: F101
MAILING ADDRESS:
APT-UNIT-ETC    :
STREET ADDRESS : 13051 N 75TH DR      PEORIA        AZ 85381
TITLE    : NA RENEWAL APPROVAL
```

Benefit Amount

Starting 12/2017 you are eligible for $190.00. After that you will
receive $190.00 (your monthly benefit amount that you are eligible for
may be different than what is showing if there was a change in the
number of people in your household, income and/or expenses for the 2nd
month. We will send you a separate notice if this is the case).

You are approved through 08/2018.

SCREEN 03 OF 19

                                                    MAIL? (Y):

Phone & Internet



Wireless   Residential   Business          Peoria, AZ   Español   Contact Us   Store Locator   🛒 Cart   Sign Out

# verizon√

**Shop**     **Support**     **My Verizon**          I am looking for

My Verizon Home     My Billing     My Usage     My Devices     My Plan & Services     My Profile

We've made your bill easier to understand. Here's a rundown of all the changes.

**Get to know your new bill**

**Pay your bill in a tap.**
My Verizon app gives you a simple breakdown of your bill and lets you pay right on your phone.
**Download the My Verizon app  >**

## Your current balance is due Feb. 17th.          $123.59
Last payment: **$119.52** on **01/15**



**My Bill**          January (12.26.17 - 1.25.18)

**Summary**

**Get the details**

🔺   What's Changed

$0.00          Data, talk and text activity

$3.46          View Bill Details

Plan and account          $50.00

**Recent bill history**

| Mark Pascale | 480-404-3216 | $31.00 |
| Mark Pascale | 602-619-5970 | $31.00 |

| 119.52 Nov. | 119.52 Dec. | 123.59 Jan. |

PROTECTED HEALTH  NFORMATION          TASC000282

SOCIAL SECURITY
5907 W KINGS AVE
GLENDALE AZ 85306

Social Security Administration
**Supplemental Security Income**
Notice of Change in Payment

Date: November 30, 2014
Claim Number:   Redacted DI

063758  1 AB 0.406 0237 LR TM425 1123 05
914 14S1485D99604
MARK A PASCALE
13051 N 75TH DR
PEORIA AZ 85381-4005

We are writing to tell you about changes in your Supplemental Security Income (SSI) payments. The rest of this letter will tell you more about this change. This letter also includes how to find information about affordable health care.

We explain how we figured the monthly payment amount on the worksheet at the end of this letter. The explanation shows how your income, other than any SSI payments, affects your SSI payment. We include explanations only for months where payment amounts change.

## Information About Your SSI Payments

- The amount due you beginning January 2015 will be $733.00.

- The amount due you is being raised because the law provides for an increase in Supplemental Security Income payments in January 2015 if there was an increase in the cost-of-living during the past year.

## If You Work or Want to Return to Work

There are special rules that help people with disabilities return to work without losing their SSI benefits and Medicaid. You must follow these rules and report your earnings, or you may have to repay a large part of your benefits. When you report your earnings, we will give you a receipt to verify your report. Keep this receipt with your other important papers from us.



See Next Page

SSA-L8151

PROTECTED HEALTH  NFORMATION     TASC000283

SOCIAL SECURITY
5907 W KINGS AVE
GLENDALE AZ 85306

**Social Security Administration**
**Supplemental Security Income**
Notice of Change in Payment

Date:  November 30, 2014
Claim Number:  Redacted)I

063758  1 AB 0.406 0237 LR TM425 1 123 05
914 14S1485D99604
MARK A PASCALE
13051 N 75TH DR
PEORIA AZ 85381-4005

We are writing to tell you about changes in your Supplemental Security Income (SSI) payments. The rest of this letter will tell you more about this change. This letter also includes how to find information about affordable health care.

We explain how we figured the monthly payment amount on the worksheet at the end of this letter. The explanation shows how your income, other than any SSI payments, affects your SSI payment. We include explanations only for months where payment amounts change.

## Information About Your SSI Payments

- The amount due you beginning January 2015 will be $733.00.

- The amount due you is being raised because the law provides for an increase in Supplemental Security Income payments in January 2015 if there was an increase in the cost-of-living during the past year.

## If You Work or Want to Return to Work

There are special rules that help people with disabilities return to work without losing their SSI benefits and Medicaid. You must follow these rules and report your earnings, or you may have to repay a large part of your benefits. When you report your earnings, we will give you a receipt to verify your report. Keep this receipt with your other important papers from us.



See Next Page

SSA-L8151

ge: 1 Document Name: untitled

INFO *      MORE PAGES EXIST

SBH                                FS BENEFIT HISTORY                         110817 13:30

ASE NAME: **PASCALE, MARK**                              CASE NUMBER: Redacted

| | HOUSEHOLD | | | GROSS | STD | ---- ALLOWABLE DEDUCTIONS ---- | | | | | BEN | | | NET | ISS |
| | | | | | | | EXCESS | DEP | CHLD | SHELT | | | | | | |
| MON | SIZ | TYP | SR | CTB INC | DED | %DED | MED | CARE | SUPP | COST | TYPE | AMT | RCP | BEN | IND |
|------|-----|-----|----|---------|-----|------|-----|------|------|-------|------|-----|-----|-----|-----|
| 1217 | 01 | SBC | | 735 | 160 | 0 | 0 | 0 | 0 | 571 | RE | 190 | 0 | 190 | MO |
| 1117 | 01 | SBC | | 735 | 160 | 0 | 0 | 0 | 0 | 571 | RE | 190 | 0 | 190 | PM |
| 1017 | 01 | SBC | | 735 | 160 | 0 | 0 | 0 | 0 | 571 | RE | 190 | 0 | 190 | PM |
| 0917 | 01 | SPE | | 735 | 157 | 0 | 0 | 0 | 0 | 561 | RE | 188 | 0 | 188 | PM |
| 0817 | 01 | SPE | | 735 | 157 | 0 | 0 | 0 | 0 | 561 | RE | 188 | 0 | 188 | PM |
| 0717 | 01 | SPE | | 735 | 157 | 0 | 0 | 0 | 0 | 561 | RE | 188 | 0 | 188 | PM |
| 0617 | 01 | SPE | | 735 | 157 | 0 | 0 | 0 | 0 | 561 | RE | 188 | 0 | 188 | PM |
| 0517 | 01 | SPE | | 735 | 157 | 0 | 0 | 0 | 0 | 561 | RE | 188 | 0 | 188 | PM |
| 0417 | 01 | SPE | | 735 | 157 | 0 | 0 | 0 | 0 | 561 | RE | 188 | 0 | 188 | PM |
| 0317 | 01 | SPE | | 735 | 157 | 0 | 0 | 0 | 0 | 561 | RE | 188 | 0 | 188 | PM |
| 0217 | 01 | SPE | | 735 | 157 | 0 | 0 | 0 | 0 | 561 | RE | 188 | 0 | 188 | PM |
| 0117 | 01 | SPE | | 733 | 157 | 0 | 0 | 0 | 0 | 562 | RE | 189 | 0 | 189 | PM |
| 1216 | 01 | SPE | | 733 | 157 | 0 | 0 | 0 | 0 | 562 | RE | 189 | 0 | 189 | PM |
| 1116 | 01 | SPE | | 733 | 157 | 0 | 0 | 0 | 0 | 562 | RE | 189 | 0 | 189 | PM |

* = DEAUTHORIZED MONTH                                    NEXT-->

PROTECTED HEALTH NFORMATION      TASC000285



January 26, 2018

Mark Pascale
13051 N. 75TH DR
Peoria AZ 85381
RE 1st Program Violation Notice

Dear Mark:

Our records indicate that your program requirements are not being met as follows:

__X__ Urine test schedule not met – You are required to call the IVR Mon.- Sun. Your
last test was submitted on **1/22/18,** you missed tests on **1/25/18.**

_____ Urine test(s) **Diluted** on          . As a reminder, please test in the morning and
avoid drinking more than 32 ounces of fluid within one hour of urine testing.

_____ Urine test(s) positive for **OPIATES** on **1/11/18.**

_____ Failure to attend counseling/seminar –

_____ Failure to make payments as agreed – The last payment made on your account
was $        on          . If you are experiencing a hardship, you must provide two
current pay stubs and complete a financial statement for consideration.
**Payments of $        are due by the 3rd Friday each month**

_____ Other –        .

Please contact me **NO LATER THAN 2/6/18** to discuss these matters.  Failure to do so may result in
your case being returned to the County Attorney's Office for prosecution.

Viviana Garcia
POM Case Manager
602-254-7328 Ext. 220-Phone
623-842-1233-Fax

PROTECTED HEALTH  NFORMATION      TASC000286



January 12, 2018

VOID

Mark Pascale
13051 N. 75TH DR
Peoria AZ 85381
RE 1st Program Violation Notice

Dear Mark:

Our records indicate that your program requirements are not being met as follows:

_____ Urine test schedule not met – You are required to call the IVR Mon.- Sun. Your
last test was submitted on         , you missed tests on         .

_____ Urine test(s) **Diluted** on        . As a reminder, please test in the morning and
avoid drinking more than 32 ounces of fluid within one hour of urine testing.

___X___ Urine test(s) positive for **OPIATES** on **1/11/18**.

_____ Failure to attend counseling/seminar –

_____ Failure to make payments as agreed – The last payment made on your account
was $        on        . If you are experiencing a hardship, you must provide two
current pay stubs and complete a financial statement for consideration.
**Payments of $        are due by the 3rd Friday each month**

_____ Other –        .

Please contact me **NO LATER THAN 1/24/18** to discuss these matters. Failure to do so may result in
your case being returned to the County Attorney's Office for prosecution.

Viviana Garcia
POM Case Manager
602-254-7328 Ext. 220-Phone
623-842-1233-Fax

PROTECTED HEALTH NFORMATION     TASC000287



**Disclosure with Patient's Consent as per Title 42,**
**Chapter 1, Part 2, Federal Register,**
**Tuesday, July 1, 1975, Volume 40 #127, Part IV**

Name of Client: _MARK PASCALE_

Redacted

Date of Birth: _____ SS #: _Redacted_ _3283_

Disclosure of Information Requested of TASC

Disclosure made with: E-Mail Address: _MARK2496@COX. Net_

For the purpose of possible entry to the TASC Program.

Extent or nature of information to be disclosed:     Urinalysis results, drug history information, progress in the TASC program.

Other Information: _____ Communication via e-mail _____

Duration of Content: _____ Until termination of TASC Program _____

It is herein understood that this consent for disclosure is subject to revocation by the client at any time except to the extent that action has already been taken on that consent. Without express revocation, consent will expire when the client terminates continuous treatment in the TASC program. However, for persons on probation or parole, if consent is given for disclosure to the criminal justice system, this consent may not be revoked.

Date Signed: _11/21/17_   Witness: _WMC_

Signature of Client: _____

OR

Authorized Person as per § 2.15 or § 2.16: _____

Guardian

Per Federal Regulations: No disclosure can be made on a form which does not conform to Federal Regulations and contain the above data. Further, if the document appears false, information will not be disclosed until the matter is cleared up.

### IMPORTANT!!!

This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR, Part 2) prohibit you from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulations. A general authorization for release of medical or other information is NOT sufficient consent for this purpose.

TASCSOLUTIONS.ORG            Comprehensive Solutions. Proven Results.            (602) 254-7328

PROTECTED HEALTH NFORMATION  TASC000288



## DISCLOSURE WITH PATIENT'S CONSENT AS PER TITLE 42, CHAPTER 1, PART 2 FEDERAL REGISTER, TUESDAY, JULY 1, 1975 VOLUME 40 #127 PART IV

Name of Client ___MARK  PASCALe___

Date of Birth __Redacted__ /58

Social Security Number __Redacted__ 3283

Disclosure of information requested of TASC

Disclosure made to: County Attorney, Court, Judge, Defense Attorney, Probation, TASC

For the purpose of possible entry to the TASC Program.

Extent or nature of information to be disclosed: urinalysis results, drug history information, progress in the TASC Program.

Other information _____

Duration of Consent: Until termination of the TASC Program.

It is herein understood that this consent for disclosure is subject to revocation by the client at any time except to the extent that action has already been taken on that consent. Without express revocation, consent will expire when the client terminates continuous treatment in the TASC Program. However, for persons on probation or parole, if consent is given for disclosure to the criminal justice system, this consent may not be revoked.

Date signed __11/21/17__      Witness __WhC__

Signature of Client _____

or

Authorized person as per § 2.15 or § 2.16 _____

Per Federal Regulations: No disclosure can be made on a form which does not conform to Federal Regulations and contain the above data. Further, if the document appears false, information will not be disclosed until the matter is cleared up. IMPORTANT! This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR, Part 2) prohibit you from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulations. A general authorization for release of medical or other information is NOT sufficient consent for this purpose.

PROTECTED HEALTH NFORMATION     TASC000289



## MARICOPA COUNTY ATTORNEY / TASC ADULT DEFERRED PROSECUTION PROGRAM
## POSSESSION OF MARIJUANA

### CLIENT CONTRACT

1. I will submit to urine testing as scheduled (including as direct by my case manager).
2. I understand I must submit a minimum of 90 consecutive days of clean urine testing with no missed, positive, or diluted testing before I am eligible for early release.
3. I will pay the required fee for each urine test and show picture I.D. prior to testing.
4. I will verify all prescribed medications by bringing in my prescription(s) before testing.
5. I understand that I may be subjected to additional urinalysis testing which is an additional cost to me as specified in the explanation of fees due to including, but not limited to, positive urinalysis due to prescription medications or urinalysis testing non-compliance.
6. Alcohol use is prohibited while participating in the program.
   ***Including over the counter medications with Alcohol*** (IE: Nyquil)
7. I understand that at NO time am I allowed to use any form of synthetic cannabinoids or Salvia while participating in the program.
8. I agree to attend the assigned Drug Education Seminar. Failure to attend the seminar without 48 hours' notice to my case manager will result in a $75 charge for reassignment.
9. I will adhere to the strict confidentiality of all clients.
10. I agree to report ANY changes in address/telephone number(s), employment status or living conditions. (I must inform my case manager BEFORE I move).
11. I am not permitted to leave the state/relocate out of state without special permission from TASC. I will inform my case manager at least a week in advance if leaving Maricopa County for More than one day.
12. I will report any police contacts or arrests to my case manager. If felony charges are filed, I understand that I may be unsuccessfully terminated from the Diversion Program.
13. I will pay the program costs of ☐ $850.00 ☒ $800.00 and make a minimum payment of ☐ $170.00 ☒ $160.00 per month as stated in the Explanation of Fees. Failure to make payments each month as agreed will result in my case being returned for prosecution.
14. If my fees are reduced and I submit a positive/diluted/altered urine test, full fees may be reinstated as outlined in the Explanation of Fees until completion of the program.
15. Continued positive/diluted/altered urine tests will result in my option to either participate in weekly counseling and urine tests or to have my case returned to the County Attorney's Office for prosecution.
16. If placed in counseling: I will attend the assigned sessions weekly, submit a urine sample prior to each group, and pay additional fees as specified in the Explanation of Fees.

TASCSOLUTIONS.ORG

Comprehensive Solutions. Proven Results.
PROTECTED HEALTH NFORMATION
Headquarters, 4016 N. Black Canyon Hwy, Phoenix, AZ 85017

TASC000290 54-7328



## MARICOPA COUNTY ATTORNEY / TASC ADULT DEFERRED PROSECUTION PROGRAM
## POSSESSION OF MARIJUANA

### CLIENT CONTRACT CONT.

_17. I understand that failure to test as scheduled, continued positive/diluted/altered tests, missed seminar/counseling, and/or failure to make payments as agreed may result in unsuccessful termination from the program.

_18. Unless disability status applies, I must be employed while participating in the program.

The program rules and regulations have been explained to me. I understand these requirements and agree to comply with them. A violation of any of the above provisions can result in program termination. Upon termination a written report of the violation(s) will be submitted to the court.

**I HEREBY CONSENT TO PARTICIPATE IN THE TASC TREATMENT PROGRAM.**

_____          _____
MCAO/ADPP Client                                      11/21/17   Date

_____          _____
MCAO/ADPP Case Manager                              11/21/17   Date

PROTECTED HEALTH INFORMATION    TASC000291



## MARICOPA COUNTY ATTORNEY / TASC ADULT DEFERRED PROSECUTION PROGRAM
## POSSESSION OF MARIJUANA

PROGRAM REQUIREMENTS

1. **Urine testing:**
   In order to test you will need to bring: $14.00 **Money Order or Debit Card**, Picture ID, and your Donor ID number.

➤ You are to begin calling the IVR System tomorrow, **1-480-470-TASC (8272).**

➤ Enter your PIN I.D. _3615_ and Date of Birth to indicate if you are required to test.

2. **Drug Education Seminar:**
   Date: _1 / 11 / 18_
   Time: _5:45_
   Location: _HQ_

   ***If your color is called on the date of your scheduled seminar, you must test prior to attending your seminar. ***

3. **Program fees:**
   6 Months:
       ☐ $850.00 payable in monthly installments of $170/mo.
       ☒ $800.00 payable in monthly installments of $160/mo.

   If approved, balance paid in full $850.00 (if booked)
   If approved, balance paid in full $800.00 (if not booked)

   Your first payment is due _12 / 15 / 17_ in **MONEY ORDER or DEBIT CARD.**

Payments are due the 3rd FRIDAY of each month and <u>you are required to **make a payment each month** until the balance is paid in full.</u> Payments can be made at any of our office locations, M - F, during regular business hours. <u>Always keep your receipts.</u>

# Clients **MUST** be signed in 30 minutes prior to close of business or they will **NOT** be allowed to test.

_____       _11/21/17_
MCA/ADPP Client            Date

_____       _11/21/17_
MCA/ADPP Case Manager     Date

PROTECTED HEALTH INFORMATION

Comprehensive Solutions. Proven Results.
Headquarters, 4016 N. Black Canyon Hwy, Phoenix, AZ 85017

TASC000292
...254-7328



## MARICOPA COUNTY ATTORNEY / TASC ADULT DEFERRED PROSECUTION PROGRAM
## POSSESSION OF MARIJUANA

### EXPLANATION OF FEES

I, _MRK PASCUAL_ do hereby agree to pay a service fee to TASC as follows:

    *Print Name*

I understand that the Application Fee of **$150.00** must be paid prior to beginning the program and is NOT refundable.

I understand that the fees for participating in the Maricopa County Attorney/Adult Deferred Prosecution Program are:

| | | |
|---|---|---|
| TASC Application Fee | $150.00 | $150.00 |
| TASC Program Fee | $150.00 | $150.00 |
| County Attorney Assessment | $650.00 | $650.00 |
| County Jail Booking Fee *(if applicable)* | $50.00 | ------- |
| **Total Costs** *(urinalysis fees not included)* | **$1,000.00** | **$950.00** |

I understand that the fees and fines are nonrefundable and can be paid in full at any time OR can be paid in monthly payments.

I understand that my monthly payment will be:

☒ 6 Months:        ☐ $170.00/mo *(if booked)*        ☒ $160.00/mo *(if not booked)*

### ***IF APPROVED......***
Clients that have completed ALL program requirements may be eligible for early termination.
**TASC will contact clients if they are eligible for early termination**

## (PAYMENTS MUST BE MADE IN MONEY ORDER OR DEBIT CARD ONLY!)

I understand that I will pay **$14.00** for each urine test.

I understand that failure to make monthly payments as agreed may result in mandatory payments each time I test. (Payments will be added to current testing costs. Failure to make payment will result in program violation).

I understand that I can be charged additional fees as follows:
· unexcused absence from the Drug Education Seminar        $75.00
· counseling *(if required, due to continued positive urine tests)*        $25.00 per group/$100.00 assessment
· additional testing (prescription, program non-compliance and/or legal charge)  Market Price/per test

*Service fees (urinalysis, program costs, etc) are subject to change.  Notice will be provided prior to any fee changes.*

_____        11/21/17
MCA/ADPP Client                                /Date

_____        11/21/17
MCA/ADPP Case Manager                       /Date

PROTECTED HEALTH INFORMATION   TASC000293

# IN THE SUPERIOR COURT OF MARICOPA COUNTY, ARIZONA

**ARIZONA DRUG ENFORCEMENT FUND,**
**Plaintiff**

v.

_MARK PASCALE_
**Defendant**

NO. _____
**CONSENT JUDGMENT**

Defendant, _MARK PASCALE_ , hereby consents to the entry of judgment against
him/her in the amount of $650.00. This consent is freely and voluntarily given. The amount owed is a just debt based
on consideration given to the defendant by the Maricopa County Attorney's Office.

*Client Name*

DONE this ___21___ day of ___NOV___, 20_17_.

_____
Defendant Signature

PROTECTED HEALTH  NFORMATION     TASC000294



## MARICOPA COUNTY ATTORNEY / TASC ADULT DEFERRED PROSECUTION PROGRAM
## POSSESSION OF MARIJUANA

### ARIZONA DRUG ENFORCEMENT ACCOUNT AGREEMENT

It is agreed between the Maricopa County Attorney's Office and _MARK PASCALE_

Client Name

that monies in the amount of $650.00 will be paid to the Arizona Drug Enforcement Account by the

MCA/ADPP client as a condition of the client's participation in the Maricopa County Attorney/TASC

Drug Diversion Program. Payment is to be made in full prior to client's completion of the Diversion

program. Failure to make payment as agreed (unless modified in writing) will result in the client

being unsuccessfully terminated from the diversion program and criminal charges will be filed by the

Maricopa County Attorney's Office.


_____          _____
MCA/ADPP Client                                              Date   NOV 21/17

_____          _____
MCA/ADPP Case Manager                                  Date   11/21/17

Comprehensive Solutions. Proven Results.
Headquarters, 4016 N. Black Canyon Hwy, Phoenix, AZ 85017

(602) 254-7328

PROTECTED HEALTH INFORMATION          TASC000295

Pom

# TASC ADULT DEFERRED PROSECUTION PROGRAM
ALL INFORMATION IS KEPT CONFIDENTIAL PER TITLE 42, CHAPTER 1, PART 2,
FEDERAL REGISTER, TUESDAY JULY 11, 1975 , VOLUME 40 #127, PART IV

**DIVERSION/POM**   ☐ Re-Entry   ☐ 2nd Offer   ☐ OOS   ☐ OOA

Appointment Date: 11-21-17   ☐ Monday   ☐ Tuesday   ☐ Wednesday   ☐ Other:

Case Manager: Vivian a   Donor ID: Redacted 1808   ✖ DIN# 3615

Def Attorney: marc Bivens   ☐ PD  ☐ LD  ☐ Priv (Phone):

## PLEASE PRINT CLEARLY

Today's Date: 10-30-17   SSN: Redacted -3283   Amount Paying Today: $ 75

Name: mark anthony pascale   Date of Birth Redacted -58   Age: 59

Current address: 13051   N. 75th Dn   City: Peoria

State: AZ   ZIP Code: 85381   Cell/HM #: 602-619-5970   Contact Method: ☐ Call  ☒ Text  ☐ Email

Email Address: mark 2496@cox.net   Other Names Used:

Preferred Testing Location: ☒ GLENDALE   ☐ MESA   ☐ PHOENIX   ☐ NORTH PHOENIX   ☐ OTHER

Are you bilingual:  ☐ YES  ☐ NO   If yes, besides English, what other language do you speak?

**EMERGENCY CONTACT**

Name: Sandy pascale   Relationship: Ex-wife

Address:   City:   State:   ZIP:

Daytime Phone: 602-518-8271   Other Phone:

**DEMOGRAPHICS**

MALE ☒   FEMALE ☐   Marital Status:  ☐ Single   ☐ Separated (P)
☒ Divorced   ☐ Married – Spouse Name:

Ethnicity (Check One): ☐ White  ☐ Hispanic  ☐ Black  ☐ Native American  ☐ Asian  ☐ Mixed/Other (Specify):

**CRIMINAL HISTORY**

Charge(s) that brought you to TASC today (check all that apply)
☒ Possession of Marijuana   ☐ Possession of Narcotic Drugs
☐ Possession of Dangerous Drugs   ☐ Obtaining a Prescription Drug by Fraud

☐ Attempted Possession of:   ☐ Other:

Were you booked – photographed and/or fingerprinted for this charge?   ☐ YES   ☒ NO

Not including the above charges, have you ever been arrested before? ☐ YES   ☒ NO

If yes: Arrested for:   Year:   State:

What was the outcome of this incident?  ☐ Fine   ☐ Probation-Felony
☐ Jail/Prison   ☐ Other Diversion Program

Have you ever been to TASC Before:   ☐ YES   ☒ NO

If yes, explain:

**EMPLOYMENT**

Employment Status:  ☐ Full Time   ☐ Part Time   Unemployed From: Disabled   Employer:
☐ Disabled  ☐ Unemployed From:   Employer's Phone:

List the amount you receive each month from:   $ 0 TANF   $ 190 Food Stamps   $ 0 Disability
$ 0 Section 8 Housing   $( ) Unemployment   $ 0 Child Support

Monthly Gross Income: $   $ 730 Social Security (SSI/SSDI)   AHCCCS: ☐ YES  ☒ NO

**TREATMENT COUNSELING / MEDICAL HISTORY (not including 12 Step support groups)**

Have you ever received alcohol or drug counseling? ☐ YES  ☒ NO   When & Where:

Have you or are you now seeing a counselor or therapist? ☐ YES  ☐ NO   Name:

Primary Reason:

PROTECTED HEALTH INFORMATION   TASC000296
Continued on other side   Ver. 2.4  4/25/16

Are there any health problems TASC should be aware of? (For example: Diabetes, Epilepsy, history of seizures, heart disease, etc.)

Back pain & neck pain

Please list any medications you are currently being prescribed (Over-the-counter medications not needed)

| Medication | Strength | Prescribing Doctor |
|---|---|---|
| Oxycodone | 30mg | Dr. Hogan |
| Morphine | 15mg | |
| Clanopen | 1mg | |

Do you have a Medical Marijuana card? ☐ Yes ( ☐ Arizona   ☐ Other____ )   ☐ No  ☐ Applied

**DRUG HISTORY**

Check those drugs that you have ever tried, experimented, or used:

☐ Alcohol   ☐ Amphetamine (Crystal, Ice)   ☐ Cocaine/Crack   ☐ Marijuana (T)   ☐ Heroin (O)   ☐ PCP   ☒ Denies

Date Last Drug Use:   ☐ THC  ☐ Coc  ☐ Meth  ☐ Opiate  ☐ Other:

☐ Prescription (specify)   ☐ Other (specify)

Which of the above do you use most often?   Your age when first used drugs:

Have you ever injected drugs?  ☐ YES  ☐ NO   Last time you injected and what drug?

**DO NOT WRITE BELOW THIS LINE — FOR TASC USE ONLY**

Current Offense: ☐ Pre-File  ☒ Post-File  ☒ EDC  ☐ SEF  ☐ RCC  ☐ Trial Group

| | |
|---|---|
| Pre-File: CA# | DR# |
| Post-File: CR# 2017-141973-001 | DR# **Redacted** 8796 |
| 2nd Charge CA# | DR# |
| 2nd Charge CR# | DR# |

☒ POM

| | | | | | |
|---|---|---|---|---|---|
| ☐ POND | ☐ APOND | ☐ Crack | ☐ Cocaine | ☐ Heroin/Other | ☐ POM |
| ☐ PODD | ☐ APODD | ☐ Meth | ☐ LSD | ☐ Other | ☐ POM |
| ☐ AONDF | ☐ AODDF | ☐ ODDF | ☐ ONDF | ☐ Rx | |

FEES:  ☐ Full (F)   ☐ Sliding (S)   ☐ Co-Pay (C)

| Intake Fee | TASC Fee | CA Fund | Booking Fee | UA Fees |
|---|---|---|---|---|
| $150 | $150 | $650 | $50/$0 | $14 POM |
| $150 | $1285 | $750 | $50/$0 | $14 DIV |
| $175 | $1285 | $1500 | $50/$0 | DIVRX  $19  $24  $29 |

Verification: ☐ AHCCCS Card   ☐ SSI/SSDI Award Letter   ☐ Other

Amt to Pay Now: $ ____   Amt Paid: $ 75   Employee Initials: AC

| | | |
|---|---|---|
| Office: Glendale | Contact Case Manager: | Seminar Date: 1/11/18 |
| | | 1st Payment Due: 2/15/17 |

Comments:  Ct Bringing in $75.00





*Marc*

### MARICOPA COUNTY ATTORNEY / TASC DRUG DIVERSION PROGRAM

### STATEMENT OF FACTS

DATE: 10 - 30 - 17

APPLICANT'S NAME: Mark Anthony Pascall   DATE OF BIRTH: Redacted -58

APPLICANT'S ADDRESS: 13051 N -75th Dn Peoria az 8381

DR #: Redacted 8796   SUBMITTAL # CR 2017- 141973 -001

You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to the presence of an attorney to assist you prior to questioning and to be with you during questioning if you so desire. If you cannot afford an attorney, you have the right to have an attorney appointed for you prior to questioning. **Do you understand these rights:** MP yes

1) Offense under investigation? _____ POSSESSION OF MARIJUANA

2) Date of offense? 5 - 1 - 17

3) Location and County Peoria _____ ARIZONA, MARICOPA COUNTY

4) What substance did you possess or use? _____ MARIJUANA

5) Did you knowingly possess or use the substance? yes

6) Was it a usable amount? yes

7) Did you have a valid doctor's prescription for the substance? NO

8) What are the facts of the offense? Found in car in my posession maritowne

I HAVE MADE THIS STATEMENT WITHOUT COERCION AND OF MY OWN FREE WILL. I FULLY UNDERSTAND THAT WHAT I HAVE WRITTEN HERE MAY BE USED AGAINST ME IN A COURT OF LAW SHOULD I FAIL TO SATISFACTORILY COMPLETE THE TASC PROGRAM. **Do you have a full understanding of this statement?** MP yes

Applicant's Signature: _____

Attorney's Signature: _____   Date: 10/30/17

I HAVE WAIVED MY RIGHT TO AN ATTORNEY AND HAVE ANSWERED ALL QUESTIONS:

_____   _____
Applicant's Signature        Date

TASC Signature: Stella Garcia   Date: 10 30 17

PROTECTED HEALTH INFORMATION   TASC000298

Comprehensive Solutions. Proven Results.

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA   *BIVENS/OUT*
IN AND FOR THE COUNTY OF MARICOPA

STATE OF ARIZONA,

Case No. _2017-141973-001_

vs.

_MARK_   _PASCALE_
                                    Defendant

WAIVER OF PRELIMINARY HEARING AND
CONSENT TO PARTICIPATE IN DEFERRED
PROSECUTION PROGRAM

*Instructions: You are entitled to a preliminary hearing on the charge(s) against you unless charged by grand jury indictment. The purpose of this form is to notify you of your rights and of the ways in which the hearing could benefit you, and to allow you to give up your rights if you choose. Read the entire for before signing it.*

### RIGHT TO A PRELIMINARY HEARING

I understand that I am charged with the crime(s) of: _Poss. of Marijuana   F6   5/1/17_

which is a felony under the law of Arizona and that if I am found guilty I can be given severe punishment, including imprisonment in the Arizona State Prison, in the Maricopa County Jail, by fine or other penalty.

I understand that under the Arizona constitution I have a right to a Preliminary Hearing at which a magistrate, without making any determination of my guilt or innocence, will decide whether there is sufficient evidence against me to establish probable cause to try me on these charges. I understand that I have a right to a lawyer at the Preliminary Hearing, and that if I am unable to obtain the services of a lawyer without incurring substantial hardship to myself or to my family, one will be furnished for me free of charge.

I understand that the prosecutor would be required to present witnesses and evidence against me at such a hearing to demonstrate that there is probable cause to try me on the charges and that I would have the right to cross-examine such witnesses and to present evidence of my own innocence. I understand that if the prosecutor failed to show probable cause to try me, the charges against me would be dismissed.

I understand that giving up my right to a preliminary hearing gives the state the right to try me for the offenses charged without any determination of probable cause by a magistrate.

### CONSENT TO PARTICIPATE IN DEFERRED PROSECUTION PROGRAM

I agree to participate in the deferred prosecution program, and I give my consent to the Maricopa County Attorney's Office to apply to the Court for suspension of prosecution of the matter. I understand that my participation in the program is contingent upon my acceptance. If accepted, I will adhere to the regulations of the program and the directives of my case manager. By agreeing to participate in the deferred prosecution program, I acknowledge that:

1. I must report to TASC at the location and on the date assigned. Prior to signing this Consent, I have received my assigned location and date to report in writing from the TASC representative.
2. This consent will, by necessity, cause a delay in the prosecution of this case, and I waive my right to a speedy trial as guaranteed by the Constitution and Rule 8 of the Arizona Rules of Criminal Procedure. Prosecution will be suspended for up to two years.
3. The Court is releasing me in this case on my own recognizance-my promise to appear at all future court dates. If the prosecutor seeks to resume prosecution against me, I will be notified of my next court date by mail. The Court is ordering that I notify TASC of my current address and that I promptly notify TASC of any changes to my address at all times during the next two years, unless earlier than that date the Court dismisses the charges against me in this case. The Court will issue a warrant for my arrest if I fail to appear at future court dates.

### CERTIFICATION AND WAIVER

After reading and understanding all of the above, I hereby give up my right to a Preliminary Hearing in this case and consent to participation in the deferred prosecution program.

DO NOT SIGN THIS FORM IN YOU WANT A PRELIMINARY HEARING

_10/30/17_
Date

_[signature]_
Defendant

I have explained the significance of the preliminary hearing to the defendant, the Consent to Participate in Deferred Prosecution Program, and consent to waiver of a preliminary hearing in this case.

_10/30/17_
Date

_[signature]_
Defense Counsel

032858
Bar Number

PROTECTED HEALTH NFORMATION   TASC000299

I consent to a waiver of a preliminary hearing in this case.

WILLIAM G MONTGOMERY
MARICOPA COUNTY ATTORNEY
Bar ID #: 021246
301 West Jefferson, 8th Floor
Phoenix, AZ 85003
Telephone: (602) 506-1260
mcaoptd@mcao.maricopa.gov
MCAO Firm #: 00032000
Attorney for Plaintiff

DR 201700028796 - Peoria Police Department
0131671718

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

COUNTY OF MARICOPA

| | |
|---|---|
| THE STATE OF ARIZONA,<br><br>        Plaintiff,<br><br>vs.<br><br>MARK PASCALE,<br>aka MARK ANTHONY PASCALE<br><br>        Defendant. | CR2017-141973-001<br><br>INFORMATION<br><br>**COUNT 1:** POSSESSION OR USE OF MARIJUANA, A CLASS 6 FELONY (MARK PASCALE) |

THE MARICOPA COUNTY ATTORNEY accuses MARK PASCALE, on this date,

charging that in Maricopa County, Arizona:

**COUNT 1:**

MARK PASCALE, on or about May 1, 2017, knowingly did possess or use an amount of

marijuana having a weight of less than two pounds, in violation of A.R.S. §§ 13-3401, 13-3405,

13-3418, 13-701, 13-702, and 13-801.

Dated October _____30_____, 2017.

WILLIAM G MONTGOMERY
MARICOPA COUNTY ATTORNEY

BY: _____
/s/ Azadeh Hamilton

PROTECTED HEALTH NFORMATION      TASC000300

Deputy County Attorney

ah

**EDC PLEA OFFER**

**Defendant:** Mark Pascale     **Date:** ~~October 10, 2017~~October 30, 2017

**CR#:** CR2017-141973-001

**PRIORS:** 0/_____     **STRIKES:** 1     **PROB/PAROLE:**

**OFFER:** POM; C1M     ☐ **A**   ☒ **F**   ☐ **H**   ☐ **B**   ☐ **H4**

**STIPULATIONS:**     ☒ PROB     ☐ SUPERV PROB     ☐ N/A     ☐ DOC

JAIL _____ months   ☐ FLAT   ☐ NO CREDIT   ☐ RELEASE W/ALPHA
                    ☐ NO WORK FURLOUGH

☐ This offer is contingent on entry/acceptance of

**Unless otherwise stated, the State shall oppose work release.
**Unless otherwise indicated above, work furlough or 2-for-1 credit is not prohibited.
**Unless otherwise indicated, all F6 open offers include "earned misdemeanor" language.

**FINE +** ___83___ **% surcharge**     ☒ $750   ☐ $1000   ☐ $1200   ☐ $2000

**TASC ELIGIBLE:** ☒ YES     ☐ NO

*THE OFFER IS WITHDRAWN IF THE PRELIMINARY HEARING IS SET OR WAIVED. THE OFFER
MAY BE CHANGED OR REVOKED AT ANY TIME BEFORE THE COURT ACCEPTS THE PLEA.
*NOTE: COUNTY ATTORNEY POLICY DICTATES THAT IF THE DEFENDANT REJECTS THIS
OFFER, ANY SUBSEQUENT OFFER TENDERED WILL BE SUBSTANTIALLY HARSHER.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

If you are requesting the plea, please fill out the bottom portion of this form and place the entire form in
the plea request slot. Pleas will be written in the order in which they have been received unless an
interpreter or in-custody matter. Completed pleas will be placed in the completed plea slot when they
are finished.

DATE/TIME REQUESTED: _____

INTERPRETER MATTER: ☐ YES   ☐ NO     IN CUSTODY: ☐ YES   ☐ NO

Special requests (i.e. solicitation, or SSI language – please include SSI document):

_____

Defense attorney: _____
(please write legibly)

PROTECTED HEALTH NFORMATION     TASC000302

# EXHIBIT 21

**Release Questionnaire**

IN THE **SUPERIOR** **COURT**
STATE OF ARIZONA, COUNTY OF MARICOPA

## RELEASE QUESTIONNAIRE

Information to be supplied by a prosecutor or law enforcement officer

STATE OF ARIZONA vs. **DESHAWN LAMONTE BRIGGS**   DOB ▮▮▮▮   CASE / BK. NO. **2015-44228**

**A.   GENERAL INFORMATION**

1. Charge and class:
   POSSESSION OF MARIJUANA ARS 13-3405A1 (C6F)

2. Offense Location: ▮▮▮▮▮
   AVONDALE, AZ 85323
   Date:   12-19-2015   Time:   0127

3. Arrest Location: ▮▮▮▮▮
   AVONDALE, AZ 85323
   Date:   12-19-2015   Time:   0148

**B.   CIRCUMSTANCES OF THE OFFENSE**

1. Was a firearm or other weapon used?
   ☐ Yes   ☒ No
   Type of weapon:

   Was anyone injured by the defendant?
   ☐ Yes   ☒ No

   Was medical attention necessary?
   ☐ Yes   ☒ No
   Nature of Injuries: [ ]

2. Was anyone threatened by the defendant?
   ☐ Yes   ☒ No
   Nature & extent of threats:

3. If property offense, value of property taken or damaged:

   Was property recovered?
   ☐ Yes   ☐ No

**C.   CIRCUMSTANCES OF THE ARREST**

1. Did the defendant attempt to:
   Avoid arrest?   ☐ Yes   ☒ No
   Resist arrest?   ☐ Yes   ☒ No
   Explain

2. Was the defendant armed when arrested?
   ☐ Yes   ☒ No
   Type of weapon:

3. Was evidence of the offense found in the defendant's possession?
   ☒ Yes   ☐ No
   Explain:   MARIJUANA FOUND IN VEHICLE IN WHICH
   HE ADMITTED OWNERSHIP OF.

4. Was the defendant under the influence of alcohol or drugs at the time of the offense?
   ☒ Yes   ☐ No   ☐ Unk

**CRIMES OF VIOLENCE**

1. Relationship of defendant to victim:

   Do the victim and defendant reside together?
   ☐ Yes   ☐ No

2. How was the situation brought to the attention of the police?
   ☐ Victim
   ☐ Third party
   ☐ Officer observed

3. Have there been any previous incidents involving these same parties?
   ☐ Yes   ☐ No
   Explain:

4. Is defendant currently the subject of:
   ☐ An order of protection
   ☐ Injunction against harassment
   ☐ Any other court order
   Explain:

**D.   OTHER INFORMATION**

1. Is the defendant presently on probation, parole or any other form of release involving other charges or convictions:
   ☐ Yes   ☒ No
   Explain:

2. List any prior arrests, convictions, and / or F.T.A.'s:
   NONE

3. Is there any indication the defendant is:
   ☐ An alcoholic?   ☐ An addict?
   ☐ Mentally disturbed?   ☐ Physically ill?
   ☐ Any other court order?

4. Is the defendant currently employed?
   ☒ Yes   ☐ No
   With whom   WAL-MART
   How long   1 YEAR
   Nature of employment

5. Where does the defendant currently reside?
   ▮▮▮▮▮▮▮▮
   With whom
   How long   1 YEAR

6. What facts indicate the defendant will flee if released
   Explain:   NONE

7. What facts does the State have to oppose an unsecured release? Explain:
   NONE

3899-031 IV-D-99

Plaintiffs000011

E.  DRUG OFFENSES
  1.  If the defendant is considered a major drug dealer, please state the supporting facts:
      NO
      _____
      _____
      _____
      _____

  2.  What quantities and types of illegal drugs are directly involved in this offense?
      APPROX 4.5 GRAMS OF MARIJUANA
      _____
      _____

      Approximate monetary value:    $40.00
      _____

  3.  Was any money seized?
      ☐ Yes    ☒ No
      Amount:    $ _____

  4.  Were any automatic weapons in the possession of the defendant at the time of the arrest?
      ☐ Yes    ☒ No
      Quantity and type: _____

SECTION III: Probable Cause Statement

  1.  Please summarize and include the information which establishes probable cause for the arrest:

On 12-19-2015 at approximately 0148 hours, I placed Deshawn Lamonte Briggs under arrest for Possession of Marijuana (ARS 13-3405A1) after marijuana was discovered in a vehicle (beside Deshawn's seat), which Deshawn admitted ownership of, during a traffic stop investigation at approximately ▮▮▮▮▮▮ Avondale, AZ 85323.

On 12-19-2015 at approximately 0127 hours, I was traveling northbound at approximately ▮▮▮▮▮ ▮▮▮ when I observed a gray Dodge Magnum (AZ ▮▮▮▮▮▮ traveling northbound ahead of me in the #3 lane. I observed the vehicle was failing to maintain it's lane as it was swerving into the bike lane and into the #2 lane several times. I conducted a traffic stop on the vehicle and approached the passenger side.

The driver rolled down the front driver side and front passenger side windows. As I leaned next to the front passenger side window to contact the occupants inside the vehicle, I immediately smelled a strong odor of burnt marijuana in the vehicle, which I recognized by my training and experience.

I had the subjects exit the vehicle. I advised them of the odor of marijuana in the vehicle and they all denied knowledge of any marijuana in the vehicle or possessing it on their persons. None of the subjects had medical marijuana cards. All of the subjects were searched with negative results.

K-9 Officer M. Miller #1115 arrived on scene and conducted a K-9 sniff of the vehicle. The vehicle was searched and a baggie containing a green, leafy substance (later field tested positive as marijuana) was found in between the center console and front passenger seat. The subject who was sitting in the front passenger seat, Deshawn Briggs, admitted ownership of the marijuana and said that he did not say anything because he was scared. I placed Deshawn under for Possession of Marijuana (ARS 13-3405A1) at approximately 0148 hours.

At approximately 0213 hours, I read Deshawn his Miranda Warnings. Deshawn informed me that he purchased the marijuana earlier today for $40.00. Deshawn said that he smokes marijuana to help with the pain caused by his illness, spinal meningitis.

Nothing further.

** If a fugitive arrest, a form IVA must also be completed **

MARICOPA COUNTY JUSTICE COURT PRECINCTS

3899-031 IV-D-99

Plaintiffs000012

| | | | |
|---|---|---|---|
| 1. | Buckeye | 13. | Northwest Phoenix |
| 2. | Central Phoenix | 14. | Peoria |
| 3. | Chandler | 15. | Scottsdale |
| 4. | East Mesa | 16. | South Mesa / Gilbert |
| 5. | East Phoenix #1 | 17. | South Phoenix |
| 6. | East Phoenix #2 | 18. | Tempe East |
| 7. | Gila Bend | 19. | Tempe West |
| 8. | Glendale | 20. | Tolleson |
| 9. | Maryvale | 21 | West Mesa |
| 10. | North Mesa | 22. | West Phoenix |
| 11. | North Valley | 23. | Wickenburg |
| 12. | Northeast Phoenix | | |

(Please Refer to Precinct Map)

I certify that the information presented is true to the best of my knowledge.

T. ROLLER #1197
ARRESTING OFFICER . SERIAL NUMBER

GOODYEAR POLICE DEPARTMENT (623) 932-1220
AGENCY / DUTY PHONE NUMBER

12-19-2015
DATE

3899-031 IV-D-99

Plaintiffs000013

# EXHIBIT 22

Timothy J. Eckstein, 018321
Joshua D. Bendor, 031908
OSBORN MALEDON, P.A.
2929 N. Central Ave., Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
teckstein@omlaw.com
jbendor@omlaw.com

Katherine Chamblee-Ryan
Olevia Boykin
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 656-5189
katie@civilrightscorps.org
olevia@civilrightscorps.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Deshawn Briggs, *et. al.*,

　　　　　　　　Plaintiffs,

v.

William Montgomery, *et. al.*,

　　　　　　　　Defendants.

No.  CV-18-2684-PHX-EJM

**PLAINTIFF DESHAWN BRIGGS'
THIRD SUPPLEMENTAL[1]
RESPONSES TO DEFENDANT
TASC'S FIRST SET OF
INTERROGATORIES, REQUESTS
FOR PRODUCTION, AND
REQUESTS FOR ADMISSION**

## INTERROGATORIES

**INTERROGATORY NO. 1:**  Explain all actions you have taken to preserve or produce

documents relevant to this litigation.

**RESPONSE TO INTERROGATORY NO. 1**

　　　Since this lawsuit was filed, Plaintiff Briggs has preserved all relevant documents

in accordance with his obligations under the federal rules. Specifically, to the extent such

documents exist, Plaintiff Briggs has maintained all files related to his participation in

---

[1] Supplemental responses are in bold.

1    TASC; any documentation of his income from any source; and any documentation of his

2    fixed expenses[2] during the relevant time-period. The relevant time period is the time that

3    Plaintiff Briggs was enrolled in the diversion program jointly operated by Defendants

4    MCAO and TASC. Plaintiff Briggs has turned over all relevant documents in his

5    possession to his counsel for production. Given that this lawsuit was filed nearly two

6    years after his participation in MDPP, Defendants are likely to have superior access to

7    documents in his participant file.

8

9    **INTERROGATORY NO. 2:** Identify all income you received during the time you

10   participated in the MDPP, including the source and amount of all such income.

11   **RESPONSE TO INTERROGATORY NO. 2**

12        Plaintiff objects that "income" is vague and undefined. For the purposes of

13   responding to this interrogatory, however, Plaintiff Briggs understands "income" to

14   include money he received from any employment or from any benefits program.

15        Plaintiff also objects that this interrogatory is unduly burdensome, and Plaintiff

16   further objects to this interrogatory on the basis that discovery is ongoing and that Plaintiff

17   may adduce further information that may be responsive to this interrogatory. Plaintiff

18   reserves his right to supplement or amend this response. Plaintiff further responds that

19   documents produced in response to Defendant TASC's requests for production may

20   contain additional information responsive to this interrogatory.   Subject to these

21   limitations, Plaintiff Briggs responds as follows:

22        Plaintiff Briggs participated in the MDPP from 2/29/2016 to 8/25/2016. *See*

23   TASC000059. When Plaintiff Briggs completed an entry form for the MDPP on 2/29/16,

24

25

26   [2] With respect to expenses, to the best of his recollection, since joining this lawsuit, Mr. Briggs
     has had no documentation of any bills from the relevant time period in his custody or control,
27   including rent and cell phone, both of which were in the names of Mr. Briggs's family
     members, and not Mr. Briggs. However, if Mr. Briggs remembers or discovers any such
28   documents over the course of litigation, he will promptly turn them over to be produced.

he reported that he received a monthly disability payment from the Social Security Administration of $377 per month and $31 in food stamps per month. *See* TASC000084. Over the six months Plaintiff Briggs participated in TASC, records currently available indicate that he earned approximately $1,223.20 per month[3] pre-tax from his job at Walmart. Plaintiffs have already produced a detailed paystub history for Plaintiff Briggs. *See* Plaintiffs004227.

**INTERROGATORY NO. 3:** Identify all documentation and information regarding your financial situation that you provided to TASC while you participated in the MDPP.

**RESPONSE TO INTERROGATORY NO. 3**

Plaintiff objects that this interrogatory is vague because Defendant TASC did not define "financial situation," "documentation," or what it means for "documentation" to contain "information regarding [the Plaintiff's] financial situation." For the purposes of responding to this interrogatory, however, Plaintiff construes "financial situation" to include information about his income, assets, and/or indigency status; "documentation" to include official documentation originating from some third-party source; and "documentation" to contain "information regarding [the Plaintiff's] financial situation" to mean that the "documentation" directly demonstrated some information about Plaintiff Briggs's income, assets, or indigency status.

Plaintiff further objects that this interrogatory is unduly burdensome and, by its very nature, it seeks information over which Defendants have equal or superior access. Plaintiff objects that discovery is ongoing and that Plaintiff may adduce further information that may be responsive to this interrogatory. Plaintiff reserves his right to supplement or amend this response. Plaintiff further responds that documents produced

---

[3] This number was calculated by taking the total amount of wages that Walmart paid Plaintiff Briggs while he participated in the MDPP and dividing it by 6 months, the approximate amount of time Mr. Briggs participated in MDPP.

1   in response to Defendants' requests for production may contain additional information
2   responsive to this interrogatory. Subject to these limitations, Plaintiff responds as follows:
3          Plaintiff Briggs participated in the MDPP from 2/29/2016 to 8/25/2016. *See*
4   TASC000059. Plaintiff Briggs provided TASC with a nutritional assistance (food stamps)
5   award letter proving his eligibility for nutritional assistance. *See* TASC000065. At the
6   time Plaintiff Briggs completed an entry form for MDPP on 2/29/16, he reported that he
7   received a monthly income from Walmart of $800 per month, a monthly disability
8   payment from the Social Security Administration of $377 per month, and $31 in food
9   stamps per month. *See* TASC000084.
10         Plaintiff Briggs also notes that, as alleged in the Second Amended Complaint, the
11  TASC employee who conducted his orientation did not ask Plaintiff Briggs whether he
12  would be able to afford the fees. *See* Doc. 110 ¶ 206. Moreover, as alleged in the Second
13  Amended Complaint, as a matter of official policy, with respect to the program fees, no
14  fee waivers or reductions were available, regardless of Plaintiff Briggs's income. *See* Doc.
15  110 ¶ 154. Consistent with this policy, no TASC employee stated that any waiver or
16  reduction in program fees might be available for him. Nor did any TASC employee
17  inform Plaintiff Briggs that a fee waiver or reduction might be available for urinalysis
18  fees.
19
20  **INTERROGATORY NO. 4:** Explain in detail the bases for your contention that you
21  could not afford to pay MDPP fees, including any reasons why you could not:
22          • Borrow money;
23          • Work additional hours or an additional job; or
24          • Limit expenses.
25  **RESPONSE TO INTERROGATORY NO. 4**
26         Plaintiff objects that this interrogatory is vague because it could encompass a host
27  of complex reasons why Plaintiff is indigent. Moreover, it is unclear what Defendant
28  TASC meant when it asked why Plaintiffs could not "borrow money" or "limit expenses."

For the purposes of responding to this interrogatory, Plaintiff construes this question to be limited to the direct, practical reasons the Plaintiff could not take these actions rather than structural reasons why, for example, the Plaintiff lacked an affluent social network or the ability to find a job that offered more hours or better pay. Plaintiff construes "borrow money" to mean to take a loan at the time that diversion payments were due in order to make those payments and that the Plaintiff would be expected to repay at some later date, and Plaintiff construes "limit expenses" to mean spending less money without sacrificing basic necessities.

Plaintiff also objects that this interrogatory is unduly burdensome. Plaintiff further objects that discovery is ongoing and that Plaintiff may adduce further information that may be responsive to this interrogatory. Plaintiff reserves his right to supplement or amend this response. Subject to these limitations, Plaintiff Briggs responds:

Prior to enrolling in the MDPP, Plaintiff Briggs struggled to cover his basic expenses. Having moved to the area just two years before enrolling, he lacked a network of people who could help him with money. During his participation in the program, Plaintiff Briggs worked at Wal-Mart as a part-time employee only. He did not believe he could have demanded more shifts than the limited amount he was given. As for his ability to "limit expenses," Plaintiff Briggs had no room in his budget to do so. His income was needed for basic necessities including but not limited to housing, food, laundry, and his cell phone bill. In fact, in some months, his income did not even cover basic necessities. **During Plaintiff's time on TASC, he typically had nearly $0 dollars in his bank account in the days before getting his paycheck from Wal-Mart.**

**INTERROGATORY NO. 5:** Describe all interactions you had with TASC representatives in which you informed the representatives that you could not afford to pay the required fees through the MDPP.

**RESPONSE TO INTERROGATORY NO. 5**

Plaintiff objects because this interrogatory is vague because Defendant TASC did not clarify what it meant by "interactions" in which Plaintiff "informed" TASC representatives that they could not afford payments. For the purposes of this interrogatory, Plaintiff construes "interactions" to include all communications in person or via any other medium, including email, text, and phone. Plaintiff further construes this interrogatory to request information about all information that the Plaintiff shared with TASC representatives that would make them reasonably aware that the Plaintiff could not afford to pay fees.

Plaintiff also objects that this interrogatory is unduly burdensome. Plaintiff objects that this interrogatory, by its very nature, seeks information over which Defendants have equal or superior access. Plaintiff further objects that discovery is ongoing, and that Plaintiff may adduce further information that may be responsive to this interrogatory. Plaintiff further objects that this interrogatory seeks information with a greater specificity than Plaintiff can reasonably remember. Plaintiff reserves his right to supplement or amend this response. Plaintiff further responds that documents produced in response to Defendants' requests for production may contain additional information responsive to this interrogatory.  Subject to these limitations, Plaintiff Briggs responds as follows:

Plaintiff Briggs provided TASC with a nutritional assistance (food stamps) award letter proving his eligibility for nutritional assistance. *See* TASC000065. At the time Plaintiff Briggs completed an entry form for MDPP on 2/29/16, he reported that he received a monthly income from Walmart of $800 per month, a monthly disability payment from the Social Security Administration of $377 per month, and $31 in food stamps per month. *See* TASC000084. In addition, Plaintiff Briggs contacted his case manager, Henry Rojo, on July 14, 2016, and asked for a payment arrangement for the month. *See* TASC000070. This made Defendant TASC aware that he could not afford to pay the fees.

Plaintiff Briggs also notes that, as alleged in the Second Amended Complaint, the TASC employee who conducted his orientation did not ask Plaintiff Briggs whether he

1   would be able to afford the fees. *See* Doc. 110 ¶ 206. Moreover, as alleged in the Second

2   Amended Complaint, as a matter of official policy, with respect to the program fees, no

3   fee waivers or reductions were available, regardless of Plaintiff Briggs's income. *See* Doc.

4   110 ¶ 154. Consistent with this policy, no TASC employee stated that any waiver or

5   reduction in program fees might be available for him. Nor did any TASC employee

6   inform Plaintiff Briggs that a fee waiver or reduction might be available for urinalysis

7   fees.

8

9   **INTERROGATORY NO. 6:** Explain in detail all instances in which you contacted

10   TASC for the purpose of obtaining information to use in this litigation, including

11   instances in which you contacted TASC prior to the institution of this litigation for the

12   purpose of assessing potential claims.

13   **RESPONSE TO INTERROGATORY NO. 6**

14   Plaintiff objects to the extent that this request seeks information protected by

15   attorney-client and/or work product privileges. Such information is not discoverable thus

16   this request will be construed not to seek such privileged documents. Subject to these

17   limitations, Plaintiff Briggs responds that he never contacted TASC prior to the institution

18   of the litigation for the purpose of assessing potential claims.

19

20   **INTERROGATORY NO. 7:** Identify all expenses you had during your time on the

21   MDPP, including both living and discretionary expenses.  For each such expense, identify

22   the amount or approximate amounts owed or paid, the intervals in which such amounts

23   were paid or owed (e.g., monthly, bi-monthly, etc.) and the persons or entities to which

24   such payments were paid or owed.

25   **RESPONSE TO INTERROGATORY NO. 7**

26   Plaintiff objects that this interrogatory is vague because Defendant TASC did not

27   define the term "discretionary." For the purposes of this interrogatory, Plaintiff defines

28

7

"discretionary" expenses to include all regular expenses other than basic necessities such as shelter, food, clothing, and transportation.

Plaintiff also objects that this interrogatory is unduly burdensome. As written, it would require Plaintiff, for example, to identify each and every place he paid money for any meal. Plaintiff further objects that this interrogatory seeks information with a greater specificity than Plaintiff can reasonably remember. Plaintiff further objects that discovery is ongoing and that Plaintiff may adduce further information that may be responsive to this interrogatory. Plaintiff reserves his right to supplement or amend this response. Plaintiff further objects that this request is duplicative of information sought in Defendant TASC's First Set of Requests for Production, and Plaintiff also notes that information responsive to this request may be found in Plaintiffs' MIDP Responses. Subject to these limitations, Plaintiff Briggs responds as follows:

Plaintiff Briggs estimates that, while on the MDPP, he spent $500 per month on rent and struggled to allocate the remainder of his income to afford the basic necessities of life, such as food, clothing, laundry, transportation, cell phone service.

**INTERROGATORY NO. 8:** Identify any person or entity who, in any manner and for any purpose, loaned, gifted, or provided you with any financial assistance in any amount of money over $50 from August 23, 2016 to the present.

**RESPONSE TO INTERROGATORY NO. 8**

Plaintiff objects that this interrogatory as vague because Defendant TASC does not specify what it means by "provided you with any financial assistance." For the purposes of this interrogatory, Plaintiff construes "provided you with any financial assistance" to include monetary gifts (not loans) from private individuals.

Plaintiff also objects that this interrogatory is unduly burdensome, and Plaintiff further objects that this interrogatory seeks irrelevant information; the information sought does not pertain to any claim or defense. Moreover, Plaintiff objects that the time period requested (August 23, 2016 to the present) is overbroad and encompasses irrelevant

8

information. Subject to these limitations, Plaintiff Briggs responds that he does not recall receiving any loan, gift, or other financial assistance in any amount of money over $50.

**INTERROGATORY NO. 9:** Identify all of your social media accounts for which you had a login and password during your time in the MDPP.

**RESPONSE TO INTERROGATORY NO. 9**

Plaintiff objects that this interrogatory seeks irrelevant information. The information sought does not pertain to any claim or defense and there are no allegations regarding TASC conduct relating to Plaintiff's social media accounts. No information will be provided in response to this interrogatory.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Please produce all documents identified in, or used to prepare, the responses to the interrogatories above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1**

With the exception of the discovery documents cited herein which Plaintiffs have already produced, no other documents were used to prepare or identified in the interrogatories above. Accordingly, no additional documents will be produced in response to this request.

**REQUEST FOR PRODUCTION NO. 2:** Please produce all documents supporting your contention that you could not afford to make a payment for the MDPP while you were enrolled in the same, including, but not limited to, documentation reflecting:

a) your income while on the MDPP;

b) any governmental assistance you may have received;

c) your balances and available balances with banks and credit cards;

d) your expenses; and

9

e)  any efforts you made to borrow funds.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2**

Plaintiff objects to this request as unduly burdensome and vague. Plaintiff further objects that this request for production seeks documents over which Defendants have equal or superior access. Plaintiff further objects that this request is duplicative of information sought in Defendant TASC's First Set of Interrogatories. Subject to these limitations, Plaintiffs have produced Plaintiff Briggs's pay history from Wal-Mart, including both his income for the time that he was enrolled in diversion and three months prior (even though Plaintiffs do not agree that Mr. Briggs's income prior to the time he enrolled in diversion is relevant and therefore object to Defendants' request for such information). *See* Plaintiffs004227. Plaintiffs have also produced an official letter showing Plaintiff Briggs's enrollment in AHCCCS, Arizona's Medicaid Program. *See* Plaintiffs004133. **Plaintiff Briggs, through counsel, has produced his bank records from the relevant time period.** To the best of his recollection, there are no other responsive records in Plaintiff Briggs's custody or control. In Plaintiff's Interrogatory responses, above, Plaintiff also noted a number of Defendant TASC's own documents that contain responsive information. *See* TASC000065; TASC000084. Any additional responsive documents that come into Plaintiff's possession or control over the course of discovery will be produced.

**REQUEST FOR PRODUCTION NO. 3:** Please produce all documents supporting the damages you are seeking in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3**

Plaintiff objects to this request as unduly burdensome. Plaintiff further objects that discovery is ongoing and that Plaintiff may adduce further information that may be responsive to this interrogatory. Plaintiff reserves his right to supplement or amend this response. Subject to these limitations and acknowledging Plaintiffs' MIDP responses this information responsive to this request, Plaintiffs have produced Plaintiff Briggs's pay

history from Wal-Mart. *See* Plaintiffs004227. As noted in Plaintiffs' Third Supplemental MIDP Responses, TASC000064 is also relevant to the damages calculation. Any additional responsive documents that come into Plaintiff's possession or control over the course of discovery will be produced.

## **REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:** Admit that you did not provide any financial documentation confirming income or expense amounts to TASC representatives while enrolled in the MDPP.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1**

Plaintiff denies this request for admission. Plaintiff Briggs provided TASC with a nutritional assistance (food stamps) award letter proving his eligibility for nutritional assistance. *See* TASC000065. Plaintiff Briggs also notes that, as alleged in the Second Amended Complaint, the TASC employee who conducted his orientation did not ask Plaintiff Briggs whether he would be able to afford the fees. *See* Doc. 110 ¶ 206. Moreover, as alleged in the Second Amended Complaint, as a matter of official policy, with respect to the program fees, no fee waivers or reductions were available, regardless of Plaintiff Briggs's income. *See* Doc. 110 ¶ 154. Consistent with this policy, no TASC employee requested Plaintiff Briggs's financial information confirming income or expenses or stated that any waiver or reduction in program fees might be available for him. Nor did any TASC employee inform Plaintiff Briggs that a fee waiver or reduction might be available for urinalysis fees. Plaintiff reserves his right to supplement or amend this response.

**REQUEST FOR ADMISSION NO. 2:** Admit that you received documents substantially similar to TASC000047-54 to apply for a fee waiver or reduction with the MDPP.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2**

1   Plaintiff denies this request for admission.

2

3         DATED this 18th day of June, 2020.

4                                         /s/Katherine Chamblee-Ryan
                                          Katherine Chamblee-Ryan
5                                         Olevia Boykin
                                          CIVIL RIGHTS CORPS
6                                         1601 Connecticut Ave. NW, Suite 800
                                          Washington, D.C. 20009
7
                                          Timothy J. Eckstein
8                                         Joshua D. Bendor
                                          OSBORN MALEDON
9                                         2929 N. Central Ave., Suite 2100
                                          Phoenix, Arizona 85012
10

11                                        Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

1

**CERTIFICATE OF SERVICE**

2         I hereby certify that on June 18, 2020, the attached document was served via

3     CM/ECF upon counsel for all Defendants.

4

5                                           /s/Katherine Chamblee-Ryan

6                                           Katherine Chamblee-Ryan

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 23

IN THE _____ **AGUA FRIA JUSTICE** _____ COURT
**STATE OF ARIZONA, COUNTY OF MARICOPA**

### RELEASE QUESTIONNAIRE

Information to be supplied by a prosecutor or law enforcement officer

STATE OF ARIZONA vs.   LUCIA SORIA _____   DOB [redacted]   CASE / BK. NO.   2018-47081

**A.   GENERAL INFORMATION**

1.   Charge and class:
   13-3405A1   F6
   13-3415A   F6

2.   Offense Location:   NORTH DYSART ROAD / W VAN BUREN
   AVONDALE, AZ
   Date:   12/02/18   Time:   0035

3.   Arrest Location:   NO ARREST

   Date: _____   Time: _____

**B.   CIRCUMSTANCES OF THE OFFENSE**

1.   Was a firearm or other weapon used?
   ☐ Yes   ☒ No
   Type of weapon: _____

   Was anyone injured by the defendant?
   ☐ Yes   ☒ No

   Was medical attention necessary?
   ☐ Yes   ☒ No
   Nature of injuries: [ ]

2.   Was anyone threatened by the defendant?
   ☐ Yes   ☒ No
   Nature & extent of threats: _____

3.   If property offense, value of property taken or damaged:
   0

   Was property recovered?
   ☐ Yes   ☒ No

**C.   CIRCUMSTANCES OF THE ARREST**

1.   Did the defendant attempt to:
   Avoid arrest?   ☐ Yes   ☒ No
   Resist arrest?   ☐ Yes   ☒ No
   Explain _____

2.   Was the defendant armed when arrested?
   ☐ Yes   ☒ No
   Type of weapon: _____

3.   Was evidence of the offense found in the defendant's possession?
   ☒ Yes   ☐ No
   Explain:   WITHIN VEHICLE WITH SUBJECT A SMALL
   USABLE AMOUNT OF MARIJUANA WAS LOCATED, AS
   WELL AS TWO GLASS MARIJUANA PIPES

4.   Was the defendant under the influence of alcohol or drugs at the time of the offense?
   ☐ Yes   ☒ No   ☐   Unk

**CRIMES OF VIOLENCE**

1.   Relationship of defendant to victim: _____

   Do the victim and defendant reside together?
   ☐ Yes   ☐ No

2.   How was the situation brought to the attention of the police?
   ☐ Victim
   ☐ Third party
   ☐ Officer observed

3.   Have there been any previous incidents involving these same parties?
   ☐ Yes   ☐ No
   Explain: _____

4.   Is defendant currently the subject of:
   ☐ An order of protection
   ☐ Injunction against harassment
   ☐ Any other court order
   Explain: _____

**D.   OTHER INFORMATION**

1.   Is the defendant presently on probation, parole or any other form of release involving other charges or convictions:
   ☐ Yes   ☒ No
   Explain: _____

2.   List any prior arrests, convictions, and / or F.T.A.'s:
   None

3.   Is there any indication the defendant is:
   ☐ An alcoholic?   ☐ An addict?
   ☐ Mentally disturbed?   ☐ Physically ill?
   ☐ Any other court order?

4.   Is the defendant currently employed?
   ☐ Yes   ☒ No
   With whom _____
   How long _____
   Nature of employment _____

5.   Where does the defendant currently reside? _____
   With whom _____
   How long _____

6.   What facts indicate the defendant will flee if released
   Explain:
   N/A

7.   What facts does the State have to oppose an unsecured release?  Explain:
   N/A

3899-031  IV-D-99

MC-00632

E.  **DRUG OFFENSES**

1.  If the defendant is considered a major drug dealer, please state the supporting facts:

    None

2.  What quantities and types of illegal drugs are directly involved in this offense?

    SMALL AMOUNT OF MARIJUANA FOR PERSONAL USE

    Approximate monetary value:     $15

3.  Was any money seized?

    ☐ Yes    ☒ No
    Amount:     $

4.  Were any automatic weapons in the possession of the defendant at the time of the arrest?

    ☐ Yes    ☒ No
    Quantity and type:

ON 12/02/18 AT APPROXIMATELY 0035 HOURS A TRAFFIC STOP WAS CONDUCTED ON AN ACURA MDX FOR FAILING TO MAINTAIN LANE IN THE AREA OF NORTH DYSART ROAD AND WEST VAN BUREN STREET WITHIN AVONDALE, AZ. THE OCCUPANTS OF THE VEHICLE WERE IDENTIFIED AS LUCIA SORIA, ANTHONY LOPEZ, AND PAUL DIAZ. DURIGN THE STOP A PROBABLE CAUSE SEARCH OF THE VEHICLE WAS CONDUCTED BASED ON THE ODOR OF MARIJUANA. DURING THE SEARCH OFFICERS LOCATED A SMALL USUABLE AMOUNT OF A GREEN LEAFY SUBSTANCE LATER FIELD TESTED TO BE MARIJUANA. ALSO LOCATED WERE TWO GLASS PIPES COMMONLY USED TO SMOKE MARIJAUNA. AN INDIVIDUAL INTERVIEW WAS COMPLETED UNDER MIRANDA WITH ALL OCCUPANTS. ALL THREE SUBJECTS ADMITTED THE MARIJUANA BELONGED TO ALL OF THEM. ALL SUBJECTS PUT FORTH MONEY TO BUY THE MARIJUANA AND SMOKE THE MARIJUANA TOGETHER. NONE OF THE THREE HAVE A VALID MEDICAL MARIJUANA CARD.

**SECTION III: Probable Cause Statement**

1.  Please summarize and include the information which establishes probable cause for the arrest:

** If a fugitive arrest, a form IVA must also be completed **

**MARICOPA COUNTY JUSTICE COURT PRECINCTS**

| | | | |
|---|---|---|---|
| 1. | Buckeye | 13. | Northwest Phoenix |
| 2. | Central Phoenix | 14. | Peoria |
| 3. | Chandler | 15. | Scottsdale |
| 4. | East Mesa | 16. | South Mesa / Gilbert |
| 5. | East Phoenix #1 | 17. | South Phoenix |
| 6. | East Phoenix #2 | 18. | Tempe East |
| 7. | Gila Bend | 19. | Tempe West |
| 8. | Glendale | 20. | Tolleson |
| 9. | Maryvale | 21 | West Mesa |
| 10. | North Mesa | 22. | West Phoenix |
| 11. | North Valley | 23. | Wickenburg |
| 12. | Northeast Phoenix | | |

JUDICIAL OFFICER REVIEW OF PROBABLE CAUSE STATEMENT AND COMPLAINT ON OATH OR AFFIRMATION

(Please Refer to Precinct Map)

☐ Complaint Review
☐ Witness sworn
☐ Reviewed Form IV
☐ Other sources:
☐ PC determined

Judicial Officer

I certify that the information presented is true to the best of my knowledge.

M. PITCHER 1275
ARRESTING OFFICER . SERIAL NUMBER

GOODYEAR POLICE DEPARTMENT (623) 932-1220
AGENCY / DUTY PHONE NUMBER

01/17/19
DATE

MC-00633

3899-031 IV-D-99

# EXHIBIT 24

## **Declaration of Lucia Soria**

I, Lucia Soria, declare and affirm as follows:

1.      I am over the age of eighteen and competent to make this Declaration.

2.      The matters set forth herein are true and correct of my own personal knowledge.

3.      I am a Named Plaintiff in the above-captioned litigation.

4.      At the advice of my doctor, I left my job as an Assistant Manager at Dollar Tree on November 30, 2018. In December 2018, I applied for disability benefits, and expected that it could take up to two years for me to receive any assistance, based on research that I did on the internet about long it usually takes for people to get disability benefits after applying for them.

5.      A few weeks after leaving my job at Dollar Tree, I began helping my mother Esther Lopez with her babysitting job. My mother paid me in cash, but she sometimes didn't pay me directly and just used what she would have paid me to pay the money I owed her for rent and other bills. When I was on TASC, I made approximately $100 to $250 per month, including the amount she kept to pay money I owed her for rent and bills. So I did not actually get the full $100 to $250 per month in cash. I can't remember making more than $250 in a month when I was on TASC. I made no more than $2,000 total for 2019 through this babysitting. Again, that includes the money she kept for what I owed her for rent and bills, so I didn't get all of this directly in cash.

6.      Around September 2019, after I had completed TASC, I applied for and got a seasonal job as a picker for beauty products at a Macy's warehouse. I believe that I had heard about the opportunity through word of mouth. During my deposition, I had forgotten I had this temporary job in 2019.

7.      I applied for the job at Macy's warehouse because I was desperate for income. I had not received an answer on my disability benefits application. My doctor had not told me that it was okay to work either. When I received the job, I knew that it

DocuSign Envelope ID: 2028A796-7820-4C4B-B2BE-E46A5C778552

1   was only temporary employment. Because I needed the income to cover expenses at the

2   time, I did not think that I had any other choice but to take the job.

3         8.      The Macy's job, which required standing for extended periods of time,

4   was hard for me because of my medical issues. I would often get dizzy. Every ten

5   minutes, I would have to sit down for a break because I felt very tired. I had to bring a

6   heart monitor to work because I began having heart palpitations on the job. I believe

7   that these heart palpitations were caused by the work, because I had not experienced

8   them like that before. Because of my health issues, I had to miss about three or four full

9   days of work and also had to leave work early on at least two occasions.

10        9.      Shortly before I started on TASC, my friend Noemy Flores lent me $400.

11  I used most of these funds for paying TASC and for gas, but I am not sure of the exact

12  breakdown. I believe that I may have also used some of this money for food.

13        10.     While I was on TASC, my boyfriend Travis Avilla helped me cover some

14  expenses, including paying for my meals a couple of times a month and also

15  contributing toward car insurance payments. I believe that Travis spent anywhere from

16  a couple hundred of dollars, but no more than $1,000, assisting me with these expenses

17  during all of 2019.

18        11.     In addition to the financial support that I received from Noemy and

19  Travis, I also asked my parents, my daughter Jazlyn Soria, and my cousin Paul Diaz if I

20  could borrow money while I was on TASC. My mother, daughter, and cousin all

21  provided me with financial support. This support was not a gift. I understood that I

22  needed to pay back whatever they lent me and that it would not be right under the

23  circumstances to continue asking my family for more money until I had paid them back.

24  However I believe that I asked my cousin for more money to pay for gas while I was on

25  TASC, even though I still owed him money. And, I kept asking my boyfriend for

26  assistance in the form of meals and insurance payments while I was on TASC even

27

28

                           2

though I still owed him money too. I also kept asking my daughter, and she eventually said she couldn't help me anymore.

12.     I paid off the loans from my friend Noemy Flores little by little, but I am still paying back money that my parents lent to me, including the breaks they gave me on rent and other bills I needed to pay to live with them at their house. I also had debt that I owed while I was on diversion. In credit cards, I had to pay at least $30 a month on one credit card, for Victoria Secret, and at least $25 on the other, from Forever21. Both of those balances were from before I started diversion, and the monthly amount eventually went up because of the fees for not paying them off. I still owe credit card debt.

13.     Since my deposition, I remembered that my mother did have another source of income in 2019, other than babysitting. She took care of my grandmother at home and she got paid for that somehow as a home living assistant. I forgot because she just did this work at home. I don't know the details, but she was somehow getting some kind of money from taking care of my grandmother.

14.     While I was on TASC, I re-used the insulin needles that I needed so I could afford them and also keep up with other expenses. My health insurance did not want to cover the cost of insulin needles. As a result, I re-used them for a couple of months, but I stopped when I heard that it could lead to an infection.

15.     While I was on TASC, I had a hard time paying for my kids' school supplies, which included notebooks, papers, and pencils. My children's father does not help with covering these school-related costs.

16.     In my deposition, I said I thought I had used my daughter's credit card to pay for TASC before, but TASC is saying that all my payments to them were on my card. I must have misremembered, but I did sometimes put cash on my daughter's card and use it at that time. It must have been for other bills.

DocuSign Envelope ID: 2028A796-7820-4C4B-B2BE-E46A5C778552

17.     TASC mentions a charge on my account at Knott's Berry Farm, which is a theme park in California, as evidence that I had enough money to pay for TASC. I went there with my kids, and the expense was for them. Because of my medical issues, especially vertigo, I am not able to go on the rides myself. My children's father does not provide or fund any entertainment or recreation for them, and I feel that I need to give them at least what I can because there's no one else who will. They have always done very well in school and are good kids, so I try to treat them once in a while when it's possible.

18.     While I was on TASC, I paid between $80 to $400 to my parents every month as rent and also to cover other expenses I was supposed to pay. I was supposed to be paying them $500 every month, which was how much I paid them every month when I worked at Dollar Tree, and when I worked overtime, I would pay them about $100 for utilities. But I could not afford to pay $500 a month while I was on TASC because I was not able to work, so they let me pay as much as I could. When I gave them the $80 to $400, they could use it for either rent or utilities, so when I say that money is for rent, I mean it's for both rent and the utilities.

19.     On my bank statements that TASC mentions, the charges from Cox Communications for were for internet service. Also, my bank statements show a lot of the bills I had to pay while I was on diversion. I did not know how to get my bank statements and before I got them, I tried to remember how much my different bills cost while I was on TASC. My lawyers from this case got my bank statements for me, and then I was able to see what I paid for different bills.

20.     TASC also points to a $216.60 withdrawal from PayPal from my bank account on April 26, 2019. I do not remember what that purchase was for, even though I have tried to figure it out. Sometimes, I make purchases for members of my family on my account and then they pay me back in cash or send me a transfer. I am not sure

DocuSign Envelope ID: 2028A796-7820-4C4D-B2BE-646A6C778552

1  whether that purchase was for myself or if someone else paid for that charge and I just

2  used my card for them.

3       21.    TASC mentioned that I made very frequent purchases at gas stations. I

4  made those many purchases because I would not fill up my gas tank fully since I didn't

5  think I could afford to buy that much at one time. I would put in $5 or $10 at a time

6  because I knew I would be able to pay for that. Because I didn't fill up my gas tank, my

7  car ran out of gas while I was driving a couple of times, including while I was on

8  TASC.

9       22.    TASC also mentioned charges from Apple iTunes, Amazon Prime, and

10  Amazon Digital. I believe that those purchases were for entertainment for my kids and

11  that they paid me back for them with cash. I don't buy things from those places for

12  myself. The Hulu and Netflix subscriptions are also for my kids. The Redbox charge

13  and charges at Harkins Estrella were for movies for my kids. I don't know what the

14  charges from Westsidedbe or Morongo Band are or whether I made those for myself.

15       23.    To the best of my knowledge, I only tested positive for alcohol once while

16  I was on TASC in April 2018.

17       24.    I did my best to pay the TASC fees, and I paid as much as I could while I

18  was on the program. No one at TASC asked me if I could afford the fees or offered me

19  any kind of financial assistance. No one asked me for any documents to show my

20  financial situation either. They didn't tell me any kind of assistance was available. That

21  would have been nice if they had, and I definitely would have wanted that help. The

22  first time I heard about any assistance was after my lawyers from this reached out about

23  my situation and then the county said I didn't have to pay the rest of my balance.

24

25       I declare under penalty of perjury that the foregoing is true and correct.

26       Executed this ___ day of April, 2021.  4/26/2021

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: _____

Lucia Soria

# EXHIBIT 25

Timothy J. Eckstein, 018321
Joshua D. Bendor, 031908
OSBORN MALEDON, P.A.
2929 N. Central Ave., Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
teckstein@omlaw.com
jbendor@omlaw.com

Stanley Young
COVINGTON & BURLING LLP
5 Palo Alto Square
Palo Alto, California 94306
(650) 632-4704
syoung@cov.com

Katherine Chamblee-Ryan
Olevia Boykin
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 656-5189
olevia@civilrightscorps.org
katie@civilrightscorps.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deshawn Briggs, *et. al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>Allister Adel, *et. al.*,<br><br>                    Defendants. | No. CV-18-2684-PHX-EJM<br><br>**PLAINTIFFS' FOURTH SUPPLEMENTAL MANDATORY INITIAL DISCOVERY RESPONSES** |

Plaintiffs submit their **Fourth Supplemental** responses to the Mandatory Initial Discovery Requests, pursuant to General Order 17-08 and this Court's Preliminary Order ("Preliminary Order"), *see* Doc. 10. Supplemental information is in **bolded** type.

This matter is in discovery, and further investigation and discovery may bring to light additional information that might alter or add to Plaintiffs' factual disclosure, legal theories, witnesses, and exhibits. These disclosures do not waive the Plaintiffs' right to object to the relevance, materiality or admissibility of the information as evidence in the

litigation. Plaintiffs reserve the right to supplement or amend this disclosure statement in accordance with General Order 17-08 and the Preliminary Order. If any part of these responses is ever read at trial, fairness requires that this Preliminary Statement also be read, indicating that at the time it was filed, Plaintiffs had only acquired limited information.

## I. Persons with Discoverable Information

Plaintiffs believe that the following individuals are likely to have discoverable information relevant to this case. Plaintiffs will continue their investigation regarding which other individuals may have discoverable information relevant to this case and reserve the right to supplement this disclosure as discovery progresses.

1. All (a) current participants in the MCAO-TASC Marijuana Deferred Prosecution Program ("MDPP") and (b) past participants in the MDPP who were subject to the challenged policies, *see* Infra IV.B, **including all individuals who received a pre-file option letter. *See* Plaintiffs00022-000925; Plaintiffs000952-001372; Plaintiffs001373-001383; Plaintiffs001386; Plaintiffs003131.[1]** Their names and addresses are known to Defendants. Current and past participants are likely aware of representations made by MCAO and TASC regarding the policies challenged in this case (both verbally and in writing), and they are aware of how those policies were implemented in their individual cases.

2. Former Maricopa County Attorney William Montgomery and current County Attorney Allister Adel. Their contact information is known to Defendants. Both are likely aware of the challenged policies in this case, including but not limited to: (1) MCAO's specific role in creating and implementing the challenged policies; (2) how employees and/or agents were instructed to implement these policies; (3) how the policies were formed; (4) how the policies were portrayed in both internal and

---

[1] Plaintiffs disclosed the names of all individuals known by Plaintiffs to have received a pre-file option letter in its Mandatory Initial Disclosures. The names and addresses of these persons are known to Defendants. Plaintiffs cite their productions containing these names for completeness.

2

external program documents; (5) what documents exist that might detail the existence, origins, and/or implementation of the policies; (6) whether and how the policies have changed over time; and (7) how the policies were carried out in individual cases.

3. All (a) current employees and/or agents of TASC involved in the administration of the MDPP and (b) past employees and/or agents of TASC involved in the administration of the MDPP. These include, but are not limited to, Josh Moreno,[2] Yolonda Brooks, Henry Rojo, Juanita Davis, Nandi Muhammed, LuAnn Zant, Viviana Garcia, Leticia Nugent, and Arnetia Cardona, all of whom are current or former TASC case managers who routinely handled the administration of the program and issues of payment in individual participants', including Named Plaintiffs', cases. Their names and addresses are known to Defendants. Current and past employees and/or agents of TASC are likely aware of the challenged policies in this case, including but not limited to: (1) TASC's specific role in creating and implementing the challenged policies; (2) how employees and/or agents were instructed to implement these policies; (3) how the policies were formed; (4) how the policies were portrayed in both internal and external program documents; (5) what documents exist that might detail the existence, origins, and/or implementation of the policies; (6) whether and how the policies have changed over time; and (7) how the policies were carried out in individual cases.

4. All (i) current employees and/or agents of MCAO involved in the administration of the MDPP and (ii) past employees and/or agents of MCAO involved in the administration of the MDPP. Their names and addresses are known to Defendants. Current and past employees and/or agents of MCAO are likely aware of the challenged policies in this case, including but not limited to: (1) MCAO's specific role in creating and implementing the challenged policies; (2) how employees

---

[2] Plaintiffs previously disclosed Josh Moreno in an email to Defendants on September 27, 2019.

3

and/or agents were instructed to implement these policies; (3) how the policies were formed; (4) how the policies were portrayed in both internal and external program documents; (5) what documents exist that might detail the existence, origins, and/or implementation of the policies; (6) whether and how the policies have changed over time; and (7) how the policies were carried out in individual cases.

5. All (i) current TASC board members and executives and (ii) individuals who have served as TASC board members or executives. Their names and addresses are known to Defendants. Current and past TASC board members are likely aware of the challenged policies in this case, including but not limited to: (1) TASC's specific role in creating and implementing the challenged policies; (2) how employees and/or agents were instructed to implement these policies; (3) how the policies were formed; (4) how the policies were portrayed in both internal and external program documents; (5) what documents exist that might detail the existence, origins, and/or implementation of the policies; (6) whether and how the policies have changed over time; (7) the salaries and financial compensation received by TASC executives.

6. All criminal defense attorneys and their agents who have represented persons who enrolled in the MDPP. Their names and addresses are known to Defendants. Criminal defense attorneys and their agents who have represented persons who enrolled in the program are likely aware of representations to their clients made by MCAO and TASC that are relevant to the challenged policies and how the challenged policies were implemented in their clients' cases.

7. Deshawn Briggs, **Antonio Pascale, as representative of the estate of** Mark Pascale, and Lucia Soria are Named Plaintiffs in this case and have knowledge regarding the allegations set out in the First Amended Complaint, Doc. 20, and the Second Amended Complaint, Doc. 110, including how the challenged policies

were carried out in their individual cases. C/O **Katherine Chamblee-Ryan**, Civil Rights Corps; 1601 Connecticut Ave. NW, Suite 800; Washington, D.C. 2006.

8. Megan Cassidy and Ray Stern are journalists who have written about the MDPP. *See, e.g.*, Doc. 20 at ¶5 n.4. They are likely to have information relating to the amount of money Defendants have collected from participants in the MDPP and the compensation of TASC executives. Ms. Cassidy is employed at the San Francisco Chronicle, 901 Mission St, San Francisco, CA 94103. Mr. Stern is employed at the Phoenix New Times, 1201 E Jefferson St, Phoenix, AZ 85034.

## II.    Written or Recorded Statements

At this time, Plaintiffs are aware of no written or recorded statements relevant to the claims or defenses in this action.

## III.    Tangible Evidence and Documents

Plaintiffs have produced with their initial responses relevant documents, electronically stored information (ESI)[3] and tangible things required by this mandatory disclosure instead of listing them (Plaintiffs000001 - Plaintiffs004052). *See* Doc. 10-1 at 7. Plaintiffs produced additional documents and ESI with their first supplemental response and will continue collecting emails responsive to the MIDP, which they will produce in a timely manner (Plaintiffs004053 - Plaintiffs004072). With th**eir** second supplemental response, Plaintiffs further **produced** additional documents and ESI (Plaintiffs004073 - Plaintiffs004134) including financial documentation for Plaintiffs Collier, Briggs and Soria. As discussed in Section VI, Plaintiffs have requested and will continue to produce relevant financial information from third parties on a rolling basis. In addition, relevant documents, ESI, and tangible things known by plaintiffs to exist are listed below by category.

- The TASC program files of the Named Plaintiffs, on file with Defendants;

---

[3] Although the timeline for producing ESI is 40 days after serving these initial responses, Doc. 10-1 at 9, Plaintiffs have produced ESI with these responses and will supplement production as the Preliminary Order requires.

- The TASC program files of all participants (current and former) who were subject to the challenged policies, on file with Defendants;

- Correspondences between Named Plaintiffs and agents and employees of TASC and MCAO; and

- Documents and ESI reflecting that Named Plaintiffs could not afford to pay fees associated with the MDPP.

Plaintiffs will continue their investigation into additional relevant tangible evidence, ESI, and documents, and reserve the right to supplement this disclosure as discovery progresses.

## IV.    Statement of Facts Relevant to Plaintiffs' Claims

The following facts are relevant to Plaintiffs' claims. These facts and additional factual detail are alleged in Plaintiffs' First and Second Amended Complaint, which Plaintiffs incorporate here. *See* Doc. 20. The facts provided in the First and Second Amended Complaint regarding Individual Plaintiffs Deshawn Briggs, **Antonio Pascale, as representative of the estate of** Marc Pascale, **and** Lucia Soria, whose contact information is provided in Section I, are also relevant to their claims and are summarized briefly below.

### A.    Background

For most people who are arrested in Maricopa County, Arizona for simple possession of marijuana or marijuana paraphernalia, the only way to avoid felony criminal prosecution is to complete a diversion program offered by MCAO—Marijuana Deferred Prosecution Program ("MDPP"). MCAO's final policymaker is Defendant Bill Montgomery, in his official capacity. To operate the possession of marijuana diversion program, MCAO partners with Defendant TASC, a private, non-profit company. Between 2011 and 2017, more than 15,000 people participated in the MDPP.

People arrested for simple possession of marijuana or marijuana paraphernalia can enter the program before or after criminal charges are filed. Those who enter the program post-filing have charges filed against them before they enter the program. Once the person

6

1    enters the program, those charges are suspended. If the person successfully completes the

2    program, MCAO dismisses the case.

3         Individuals who enter the program before criminal charges are filed are sent a letter

4    from MCAO inviting them to participate. The letter informs them that they are facing

5    class 6 felony charges and offers them two options: criminal prosecution or diversion.

6    The letter also falsely threatens that criminal conviction could result in up to two years in

7    prison and a fine of up to $150,000 plus an 80% surcharge. If the person who receives the

8    letter completes the diversion program, MCAO will not file charges against her. Failing

9    the program results in felony criminal prosecution.

10        In order to enroll in diversion, both pre- and post-file participants must sign a

11   statement of facts admitting their guilt. A TASC employee tells participants exactly what

12   to write in the statement of facts. The signed statement can be used against a person if she

13   is unable to complete the marijuana diversion program and is criminally prosecuted.

14        Once enrolled in the marijuana diversion program, the requirements for pre- and

15   post-file participants are the same. To complete the program, participants must (1) pay all

16   required program fees, which amount to $950 or $1000; (2) pay for and pass random

17   urine-tests for drugs and alcohol for 90 days; and (3) complete a three-hour drug

18   education seminar.

19        Participants must also comply with any other requirements and restrictions

20   imposed by Defendants. Many of these requirements and restrictions are detailed in a

21   document called the "Client Contract." According to the Client Contract, individuals on

22   diversion supervision are barred from drinking alcohol, taking certain medications (like

23   NyQuil) that might include alcohol, and leaving the county for more than one day or the

24   state for any period of time without permission from Defendant TASC. They are also

25   barred from taking any prescription medication without reporting it to a TASC case

26   manager and bringing the prescription to TASC for verification. And unless disability

27   status applies, they must remain employed. In addition, participants must pay the required

28

1    program fees at a fixed minimum monthly rate of $160 or $170 per month. Violation of

2    any of these requirements can result in termination from the program.

3          Defendants MCAO and TASC advertise the diversion program as "user-funded,"

4    which means that the program's participants bear the costs of the program. Defendant

5    TASC is responsible for collecting fees from the people enrolled in the diversion program,

6    and it keeps a portion of the money it collects. Out of the program fees that Defendant

7    TASC collects, $650 is deposited to MCAO. Between 2006 and 2016, MCAO made

8    nearly $15 million in fees from participants in the marijuana diversion program.

9    Defendant TASC has also benefited from operating it; its net assets were approximately

10   $18 million in 2016, and since 2014, it has paid its CEOs and former CEOs between

11   $281,165 and $963,358.

12                    **B.    The Challenged Policies**

13         Defendants' diversion program discriminates against people who are too poor to

14   pay fees. Under Defendants' wealth-based termination policy, individuals who cannot

15   pay certain fees are terminated from diversion and face felony criminal prosecution.

16   Wealth-based terminated can happen in at least two ways. First, pursuant to Defendants'

17   written policy, failure to pay program fees at the monthly rate set by Defendant TASC

18   will result in termination from the program. The Client Contract, to which all participants

19   are subject, states that the minimum monthly rate is $160 or $170. The Client Contract

20   states: "Failure to make payments [toward the program fees] each month as agreed will

21   result in [the] case being returned for prosecution." Another paragraph of the Client

22   Contract states that "failure to make payments as agreed may result in unsuccessful

23   termination from the program." Defendants policy does not include any exception for

24   participants who did not make their monthly payment solely because they could not afford

25   it. Nor do Defendants inquire into a participant's ability to pay before setting the

26   minimum monthly fee.

27         Second, Defendants do not allow diversion participants to take the program's

28   mandatory urinalysis tests unless they can pay for them at the time of the test. The Client

                                            8

Contract states that "failure to test as scheduled . . . may result in unsuccessful termination from the program. Missed urinalysis tests are counted as "violations," even when a person only missed the test because she could not afford to pay for it. A person who accrues too many of these violations will be failed by TASC and referred to MCAO for prosecution. TASC does not have a policy of assessing a person's ability to pay before referring her for prosecution because she did not pay for drug-and-alcohol tests. Moreover, according to Defendants' written policy, even in the rare cases where fee reductions are granted, full fees can be reinstated for a dirty or diluted urine test. Defendants' Client Contract warns, "If [a participant's] fees are reduced and [the participant] submit[s] a positive/diluted/altered urine test, full fees may be reinstated … from that point forward until completion of the program."

Under Defendants' wealth-based extended supervision policy, people who cannot afford to pay the program fees—which are $950 or $1000—in full within 90 days are not released from diversion supervision, even if they have completed all of the non-monetary program requirements. Instead, these individuals must remain on the program for at least six months. If, at the end of six months, they have still not paid the program fees in full, they must remain on the program until they do so. Defendants do not assess participants' ability to pay before refusing to consider them for program completion after 90 days solely based on non-payment. Nor do Defendants assess participants' ability to pay before requiring them to remain on diversion beyond six months and until all fees are paid. Defendants do not waive or reduce program fees under any circumstances. In addition to payment of program fees, Participants can also be required to remain on diversion supervision if they miss mandatory urinalysis solely because they cannot afford to pay for it.

People forced to remain on diversion supervision solely because they cannot afford to pay fees remain subject to criminal prosecution until they complete the program. These pay-only participants are also subject to the same requirements as apply during the first

1    90 days of supervision, including all of the requirements and restrictions set forth in the

2    Client Contract (and any others imposed by Defendants).

3    In addition, pay-only participants must continue to submit to random urinalysis.

4    To fulfill this requirement, participants must call TASC or check an application every

5    day, seven days a week, to determine whether they are required to report to a TASC

6    location during a certain time period that day so that TASC can collect and test their urine.

7    When a test is required, participants must pay $15 or $17 for each urinalysis test at the

8    time of the test. As a result, pay-only participants may ultimately have to pay hundreds

9    of dollars more than people wealth enough to pay the program fees and complete

10   diversion within 90 days. Testing is required at least once, and potentially multiple, times

11   per week. Records obtained as part of the preliminary investigation for this lawsuit

12   revealed that participants may be required to test as often as nine times per month.

13   The urinalysis tests are invasive. At a TASC location, TASC employees watch

14   participants through glass panels while they submit urine for drug and alcohol testing. In

15   at least one TASC location, the bathroom where participants submit urine for testing

16   includes multiple mirrors so that a TASC employee can watch the participant urinate from

17   multiple angles.

18   ### C.   Individual Plaintiffs' and Class Representatives' Experiences

19   Each Individual Plaintiff and Class Representative's experience participating in

20   the MDPP includes relevant facts that provide a basis for Plaintiffs' claims. These are

21   described in detail in Plaintiffs' First Amended Complaint, *see* Doc. 20, and Second

22   Amended Complaint, *see* Doc. 110, and summarized below.

23   Plaintiff Deshawn Briggs is a representative of the damages class in this lawsuit.

24   Despite completing all the non-financial requirements of the MDPP in 90 days, Mr.

25   Briggs was forced to remain in the program for additional months, and subject to

26   numerous urinalysis tests as well as the possibility of felony criminal prosecution, solely

27   because he could not afford to pay program fees.

28

10

1    Plaintiff **Antonio Pascale, as representative of the estate of** Mark Pascale, is a

2  representative of the damages class in this lawsuit. Despite completing all the non-

3  financial requirements of the MDPP in 90 days, Mr. Pascale was forced to remain in the

4  program for additional months, and subject to numerous urinalysis tests as well as the

5  possibility of felony criminal prosecution, solely because he could not afford to pay

6  program fees.

7    Plaintiff Lucia Soria is a representative of the damages and injunctive classes in

8  this lawsuit. At the time of filing the Second Amended Complaint, Ms. Soria faced an

9  ongoing threat of extension on or termination from the program solely because of her

10  inability to pay program fees. Despite completing all the non-financial requirements of

11  the MDPP in 90 days, Ms. Soria was forced to remain on the program for additional time,

12  and subject to numerous urinalysis tests as well as the possibility of felony criminal

13  prosecution, because she could not afford to pay program fees.

14    As detailed below, each Plaintiff had or is at risk of having their Fourth and

15  Fourteenth Amendment Rights violated.

16  **V.    Legal Basis for Claims**

17    Plaintiffs allege that Defendants' policies violate (1) their rights to equal protection

18  and due process under the Fourteenth Amendment to the U.S. Constitution, and (2) their

19  Fourth Amendment rights under the U.S. Constitution.

20    **A.    Equal Protection-Due Process Claims**

21    Counts I, II, and III of Plaintiffs' First and Second Amended Complaint allege

22  violations of equal protection and due process under the Fourteenth Amendment. In

23  *Bearden v. Georgia*, 461 U.S. 660 (1983), the U.S. Supreme Court explained that equal

24  protection and due process principles apply when individuals are subject to certain

25  restrictions and sanctions in the criminal system solely because of their poverty, and it

26  prescribed a balancing test that applies in that context. Each of the policies challenged in

27  this case fail that balancing test and are therefore unconstitutional.

28

### B.    Fourth Amendment Claims

Counts IV and V of Plaintiffs' First and Second Amended Complaint allege that Defendants' wealth-based extended urinalysis policy violates the Fourth Amendment. Urinalysis constitutes a search under the Fourth Amendment. *See Skinner v. Railway Lab. Execs. Ass'n*, 489 U.S. 602, 617 (1989). For a search to pass muster under the Fourth Amendment, it must be reasonable. *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). A more demanding reasonableness test applies to suspicionless searches like those at issue in this case. *See B.C. v. Plumas Unified School Dist. 47J*, 192 F.3d 1260, 1267 (9th Cir. 1999). Defendants' policy of imposing random searches on individuals for a longer period of time solely because those individuals could not afford a sum of money is unreasonable under any standard and is therefore unconstitutional.

### VI.   Legal and Factual Basis for Class Certification

The named Plaintiffs bring this case as a class action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure. The Classes are defined as follows:

a. Damages Class: All people who, **at any time** since August 23, 2016, and until the trial of this case, (1) were enrolled in the marijuana diversion program operated by Defendants TASC and MCAO; (2) **while so enrolled**, satisfied all program requirements in the first 90 days of the program other than payment of program fees; and (3) **while so enrolled,** were not considered for successful completion after 90 days solely because they were unable to pay the required fees. Named Plaintiffs Deshawn Briggs, Lucia Soria, **and Antonio Pascale in his role as Personal Representative of Mark Pascale's estate** seek certification of this class.

b. Injunctive Class: All people who (1) have not yet been formally charged with possession of marijuana; and (**2**) are unable to pay the required fees within 90 days**, at the time,** and/or at the rate required by Defendant TASC. Named Plaintiff Lucia Soria seek**s** certification of this class.

12

1   The class members are readily ascertainable: the names and relevant records of the class

2   members are in Defendants' possession.

3   Numerosity: Fed. R. Civ. P. 23(a)(1)

4   On information and belief, both Classes include at least several hundred members.

5   During the 2017 fiscal year (July 1, 2016 through July 30, 2017), there were 2687

6   admittances to the possession of marijuana diversion program. The marijuana diversion

7   program has maintained similar numbers of admittances in its last several years of

8   operation. Therefore, there were likely at least 2500 admittances in the 2018 fiscal year.

9   Thus, if even a small percentage of the people admitted to TASC since August 23, 2016

10  meet the requirements for the Classes, the Classes would number in the hundreds.

11  Moreover, on information and belief, a large majority of those arrested and prosecuted

12  for marijuana possession in Maricopa County are deemed indigent for the purposes of

13  appointment of counsel.

14  Commonality: Fed. R. Civ. P. 23(a)(2)

15  The Class members' claims raise common issues of fact and law. With respect to

16  the Damages Class, those common questions include, but are not limited to:

17       a.  Whether Defendants have a policy, practice, and custom of refusing to consider

18          diversion participants for program completion after 90 days and beyond solely

19          because they cannot afford to pay the required fees, without inquiring into those

20          participants' ability to pay;

21       b.  Whether Defendants have a policy, practice, and custom of requiring diversion

22          participants who have not paid the required fees to remain on diversion supervision

23          until they have done so, without inquiring into those participants' ability to pay;

24       c.  Whether Defendants' diversion extension policies (in subparagraphs (a) and (b))

25          violate the Due Process and Equal Protection Clauses of the Fourteenth

26          Amendment to the U.S. Constitution;

27

28

13

d.  Whether Defendants have a policy, practice, and custom of requiring diversion participants who remain on diversion solely due to inability to pay to continue to submit to and pay for random drug and alcohol tests; and

e.  Whether Defendants' policy of continuing this mandatory drug and alcohol testing for participants who remain on the diversion program solely due to inability to pay violates the Fourth Amendment to the U.S. Constitution.

With respect to the Injunctive Class, those common questions include, but are not limited to:

a.  Whether Defendants have a policy, practice, and custom of refusing to consider diversion participants for program completion after 90 days and beyond solely because they cannot afford to pay the required fees, without inquiring into those participants' ability to pay;

b.  Whether Defendants have a policy, practice, and custom of requiring diversion participants who have not paid the required fees to remain on diversion supervision until they have done so, without inquiring into those participants' ability to pay;

c.  Whether Defendants' diversion extension policies (in subparagraphs (a) and (b)) violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution;

d.  Whether Defendants have a policy, practice, and custom of requiring diversion participants who remain on diversion solely due to inability to pay to continue to submit to and pay for random drug and alcohol tests;

e.  Whether Defendants' policy of continuing this mandatory drug and alcohol testing for participants who remain on the diversion program solely due to inability to pay violates the Fourth Amendment to the U.S. Constitution;

f.  Whether Defendants have a policy, practice, and custom of requiring diversion participants to make a minimum monthly payment and terminating those who fail to do so, without inquiring into those participants' ability to pay; and

14

g.  Whether Defendants' policy of terminating participants who cannot afford to make a minimum monthly payment violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution.

<u>Typicality: Fed. R. Civ. P. 23(a)(3)</u>

The Named Plaintiffs' claims are typical of the claims of the members of the Class, and they have the same interests in this case as all other members of the Class that they represent. The determination whether the Defendants' scheme of policies, practices, and customs is unlawful in the ways alleged will determine the claims of the named Plaintiffs and every other class member.

<u>Adequacy: Fed. R. Civ. P. 23(a)(4)</u>

Named Plaintiffs are capable of fairly and adequately protecting the interests of the Class because Named Plaintiffs do not have any interests antagonistic to the Class. There are no known conflicts of interest among class members, all of whom have a similar interest in vindicating the constitutional rights to which they are entitled. Plaintiffs' counsel are experienced in civil rights litigation and have successfully litigated a number of civil rights class action cases. Many of those cases, like this one, involve unconstitutional penalties based solely on wealth status.

<u>Predomination, Injunctive Class: Fed. R. Civ. P. 23(b)(2)</u>

Class treatment under Rule 23(b)(2) is appropriate because the common questions of law and fact predominate in this case. For Named Plaintiffs McKenna Stephens and Lucia Soria, as well as for the members of the Class, this case turns on what the Defendants' policies and practices are and on whether those policies are lawful. The common questions of law and fact listed above are dispositive questions in the case for every member of the Class.  Because the putative Class challenges the Defendants' scheme as unconstitutional through injunctive relief that would apply to every member of the Class, Rule 23(b)(2) certification is proper.

1      <u>Predomination, Damages Class: Fed. R. Civ. P. 23(b)(3)</u>

2          Class treatment under Rule 23(b)(3) is appropriate because the common questions

3   of law and fact overwhelmingly predominate in this case. For every Named Plaintiff, as

4   well as for the members of the Class, this case turns on what the Defendants' policies and

5   practices are and on whether those policies are lawful.

6          The common questions of law and fact listed above are dispositive questions in the

7   case of every member of the Class. Moreover, the question of liability can therefore be

8   determined on a class-wide basis. To the extent that individual damages will vary, they

9   will vary depending in large part on the amount of time that a person was subjected to the

10  unlawful scheme and the amount of money coerced from them.

11         Determining damages for individual class members can thus typically be handled

12  in a ministerial fashion based on easily verifiable records in the Defendants' possession.

13  If need be, individual hearings on class members' specific damages based on special

14  circumstances and particular hardships caused by Defendants' scheme can be held after

15  class-wide liability is determined.

16  **VII.   Damages**

17         Plaintiffs and the putative class members they represent **sought** compensatory

18  damages from both **Defendants Maricopa County and Allister Adel, in his official**

19  **capacity [the "County Defendants"]** and TASC. **However, Plaintiffs have reached a**

20  **settlement in principle with the County Defendants that will resolve their claims**

21  **against them, with the exception of the portion of Plaintiffs' attorneys' fees**

22  **attributable to the County Defendants, which will be negotiated separately.**

23  **Therefore, Plaintiffs and putative class members now seek damages exclusively**

24  **against Defendant TASC.**

25         Plaintiffs and putative class members also seek punitive damages against

26  Defendant TASC only. **Plaintiffs previously planned to calculate class damages upon**

27  **receipt of critical, discoverable information from Defendant TASC, including, in**

28  **particular, MDPP participants' program files. However, Defendant TASC has**

16

1   refused to produce the documents that would allow Plaintiffs to do a precise

2   calculation of damages. In light of the Court's recent order granting Plaintiffs'

3   motion to compel MDPP participants' program files, Doc. 173, Plaintiffs expect to

4   receive a representative sample of those files shortly.

5         However, given the delays in receiving this production, Plaintiffs have chosen

6   to calculate an estimate of Defendant TASC's liability for damages based on the

7   information currently available to them. Although Plaintiffs had hoped to be able to

8   provide a precise damages calculation, Plaintiffs believe that the calculation below

9   is an accurate estimate of Defendant TASC's liability. Wherever possible, Plaintiffs

10  have made assumptions that would tend to <u>underestimate</u> TASC's total damages.

11  Given this, and based on Plaintiffs' investigation, Plaintiffs believe that <u>it is highly</u>

12  <u>likely that Plaintiff's calculation of Defendant TASC's liability will increase when</u>

13  <u>Plaintiffs receive the sample of program files.</u> Plaintiffs will update this disclosure

14  within thirty dates of calculating a precise liability amount after receiving the

15  sample of program files, in keeping with the requirements of the MIDP.[4]

16        In addition to damages, Plaintiffs and putative class members **will** seek attorneys'

17  fees and costs **attributable to their litigation against Defendant TASC** pursuant to 42

18  U.S.C. § 1988.

19        Plaintiffs reserve the right to supplement or amend this disclosure, including

20  with additional categories of damages, upon receipt of additional information,

21  including outstanding discoverable information Plaintiffs expect to receive from

22  Defendant TASC.

23   **A. <u>Class Damages</u>**

24

25  _____

26  [4] **The Court has not yet decided on the size of the sample of program files that**

27  **Plaintiffs will receive, and the parties dispute the appropriate size. However, based on the prevailing law, Plaintiffs expect to receive a sample that is both randomly selected and sufficiently large to allow Plaintiffs to make reliable extrapolations**

28  **about TASC's total damages liability in this case.**

1

2

3

4

5

6

7

8

9

10

Defendant TASC is exposed to significant damages and other monetary costs. As described in detail below, Plaintiffs estimate that TASC faces at least $10.49 million in monetary damages, plus Plaintiffs' attorneys' fees and expenses, and punitive damages. Indeed, in a similar case litigated by attorneys at Civil Rights Corps, *Rodriguez v. Providence Community Corrections, Inc.*, No. 3:15-cv-1048 (M.D. Tenn.), Plaintiffs settled a lawsuit against Rutherford County and a private probation company for $14,300,000, as well as substantial injunctive relief. *See* Settlement and Agreement to Release, *Rodriguez v. Providence Community Corrections, Inc.*, No. 3:15-cv-1048 (M.D. Tenn. Oct. 18, 2017).[5]

11

12

13

14

15

16

17

Defendant TASC faces damages liability for three primary harms: (1) drug-testing of diversion participants who were extended because of their inability to pay fees during the pay-only period[6] of supervision, in violation of the Fourth Amendment; (2) extension of diversion participants solely due to their inability to pay fees, in violation of the Fourteenth Amendment; and (3) termination of diversion participants solely due to their inability to pay fees, in violation of the Fourteenth Amendment.

18

19

20

21

22

23

Plaintiffs first set forth TASC's liability per violation, and then, based on these figures, the estimated liability for damages per class member. Plaintiffs then explain their estimate for TASC's total damages liability for all putative class members, for Named Plaintiffs, and the total damages for which Plaintiffs estimate that TASC is liable.

24

25

26

27

28

---

[5] As a courtesy, Plaintiffs will provide a copy of this document to Defendant TASC with service of this supplement.

[6] Plaintiffs use the term "pay-only period" to refer to the period following a participant's first 90 days of participation wherein TASC's sole basis for continuing to subject the person to program requirements was failure to pay all program fees in the first 90 days.

18

1.   **Liability for damages per harm imposed**

Based on the harms at issue and settlements in similar cases, Plaintiffs estimate that those harms should be valued as follows:

a.   *Wealth-based extended drug testing.* For class members who were subject to drug tests during the pay-only period:

    i.   **120% restitution for each unlawful drug test**

    ii.   **Damages in the amount of $120 per unlawful test**

These damages numbers are in line with a recent settlement in a highly analogous case, *Luse v. Sentinel Offender Services, LLC*, No. 2:16-cv-00030-WCO (N.D. Ga).[7] There, Plaintiffs sued to enjoin a private probation company from requiring people on probation for minor traffic offenses to submit to and pay for drug tests that were not ordered by the court. *See* Order Granting Final Approval of Class Settlement, *Luse v. Sentinel Offender Services, LLC*, at 1-3 (Aug. 21, 2017). In Plaintiffs' settlement with the County and the private probation company, each of the 276 class members received (1) restitution of any fees paid for drug screening, plus 7 percent per annum interest; and (2) damages of up to $90 per unauthorized drug test. *Id.* at 4-5.[8]

For the sake of administrability, Plaintiffs do not include interest on restitution as the *Luse* plaintiffs did. However, restitution at 120% is in line with the interest payments in *Luse*. For example, if Plaintiffs applied the percent interest per annum from *Luse*, assuming 18 unauthorized tests at $15

---

[7] As a courtesy, Plaintiffs will provide a copy of this document to Defendant TASC with service of this supplement.

[8] The harm in *Luse* only involved one portion of the harms involved in this case: unlawful drug testing. Based on these damages, the settlement fund in *Luse*—for 276 class members who submitted to an average of 3.5 unlawful tests—was $80,000. *Luse* Settlement at 4.

per test,[9] a class member who was subject to these tests at the start of the relevant period (which began approximately four years ago) would receive $270 restitution plus $75.60 in interest ($345.60 total). A class members subject to unauthorized tests three years ago would receive $56.7 ($326.70 total). Using Plaintiffs' calculation of $120 restitution, the same individual would receive $324 total.

As for the damages payment for test, Plaintiffs are likely entitled to a higher damages payment because the tests demanded by Defendant TASC were more invasive than those in *Luse*.[10]

As described below, based on the information currently available, Plaintiffs estimate that there are at least 2009 class members who were unlawfully drug-tested.

b. *Wealth-based extension*. For class members who were required to remain on TASC supervision solely because of their inability to afford fees:

    i. Damages in the amount of $200 for each month (prorated) that a pre-file[11] diversion participant was on pay-only diversion supervision

---

[9] Plaintiffs' basis for these assumptions is described below.

[10] Defendant TASC's employees "watch[ed] participants through glass panels while they submit[ted] urine for drug and alcohol testing," and "[i]n at least one TASC location, the bathroom where participants submit urine for testing includes multiple mirrors so that a TASC employee can watch the participant urinate from multiple angles." Sec. Am. Comp. (Doc. 110) ¶¶ 108-109. The degree of intrusion is relevant to the Fourth Amendment violation at issue, including the intrusiveness of the particular method of drug testing. *See Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 658 (1995) ("[T]he degree of intrusion depends on the manner in which production of the urine sample is monitored.").

[11] "Pre-file" class members include diversion participants who enrolled in MDPP before criminal charges were actually filed against them, whereas "post-file" class

  **ii.** **Damages in the amount of $400 for each month (prorated) that a post-file diversion participant was on pay-only diversion supervision[12]**

  **These numbers are less substantial than those in *Rodriguez v. Providence Community Corrections, Inc.*, No. 3:15-cv-1048 (M.D. Tenn.), where, as here, Plaintiffs challenged extensions of supervision terms based on their inability to pay fees. Plaintiffs, represented by Civil Rights Corps, reached a class settlement with the defendant county government and private probation company that entitled each class member to receive (1) a cash award of 125% of fees paid to the private probation company (which ranged from several hundred to several thousand dollars); and (2) $50 for each month of "supervised probation." *See Rodriguez* Settlement at 18. In total, the settlement fund was set at $14,300,000. Of that amount, the county government was responsible for paying less than 2% of those damages ($300,000), and the private company was responsible for the rest. *See* Mot. for Prelim. Approval for Settlement (Doc. 191) at 4, *Rodriguez v. Providence Community Corrections, Inc.*, No. 3:15-cv-1048 (M.D. Tenn. Sept. 18, 2017).[13]**

---

**members include diversion participants who enrolled in MDPP after charges had been filed.**

**[12] The damages amount has higher value for post-file class members because criminal charges had actually been filed against them in court; increased time with a pending drug charge could affect their employment and access to myriad other resources and opportunities.**

**[13] Ultimately, the private company paid the county's share of the settlement as well pursuant to its settlement of a cross-claim with the county. *See* Mot. for Prelim. Approval for Settlement (Doc. 191) at 4, *Rodriguez v. Providence Community Corrections, Inc.*, No. 3:15-cv-1048 (M.D. Tenn. Sept. 18, 2017) (stating that the private company would pay the county $350,000, and that the county would then deposit $300,000 of that amount into the Settlement Fund.)**

As another point of reference, state statutes that compensate individuals for wrongful convictions set compensation for probation, parole, and post-release supervision at between $25,000 and $50,000 per year, which amounts to a monthly sum of roughly $2100 to $4200.[14] Although the wealth-based extensions in this case do not involve wrongful conviction, they do involve enhanced penalties that were wrongfully imposed, and for post-file participants, they include increased time with a pending criminal drug charge on one's record. These statutes are a useful guide to the monetary value that state legislatures have assigned to time unjustly spent on criminal supervision. Plaintiffs' assigned values for post-file participants are less than a fifth of the lowest of these monthly rates.

As described below, based on the information currently available, Plaintiffs estimate that there are approximately 482 class members who were unlawfully extended and 1527 post-file class members who were unlawfully extended.

c. **Wealth-based termination.** For individuals who were terminated from diversion solely due to their inability to pay fees:

  i. 100% restitution of all fees paid to TASC before termination;

  ii. For individuals who were terminated and not convicted, damages in the amount of $1500;

  iii. For individuals who were terminated and convicted, damages in the amount of $5500.

---

[14] *See, e.g.*, C.R.S.A. § 13-65-101, *et seq.* (Colorado, providing for $25,000 per year); DC ST § 2-421, *et seq.* (Washington, D.C., providing for $40,000 per year); H.B. 2579 (Kansas, providing for $25,000 per year); M.S.A. § 590.11 & § 611.362, *et seq.* (Minnesota, providing a minimum of $25,000 and maximum of $50,000 per year); RCWA §4.100.010, *et seq.* (Washington, providing $25,000 per year).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

These values are conservative in light of the harms at issue. Because these class members paid for diversion in order to avoid prosecution—but were then terminated because of their poverty—restitution plus penalties is appropriate. As for class members who were not convicted subsequent to their terminations, Plaintiffs estimate based on available evidence that the vast majority of this group will include pre-file participants who were terminated, had charges filed against them, and were then re-enrolled in MDPP as post-file participants. Thus, the termination resulted in the filing of criminal drug charges against them, which has significant collateral consequences. Even where this was not the case, these participants were referred for prosecution in circumstances where, but for their poverty, they would instead have had their charges dismissed.

For post-file participants who were terminated and convicted, this amount exceedingly low, particularly for those who were convicted of felony offenses.[15] Felony convictions in Arizona carry severe consequences, including but not limited to termination of voting rights, prohibitions on public housing and other public benefits, restrictions on employment and licensing, and reputational harm. Since Arizona does not allow expungement of criminal convictions, the class members who were convicted of drug offenses (in circumstances where they would not have been prosecuted if they

---

[15] In Arizona, possession of any amount of marijuana—even trace amounts—can be prosecuted as a felony. *See* Ariz. Rev. Stat. § 13-3405(B)(1) (providing that possession of "an amount of marijuana not possessed for sale having a weight of less than two pounds is guilty of a class 6 felony").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

were wealthy) must now live with those convictions on their records and suffer the consequences of them indefinitely, if not permanently.[16]

As described below, based on the information currently available, Plaintiffs estimate that there are approximately 121 class members who were unlawfully terminated and not convicted and 382 class members who were unlawfully terminated and convicted.

**2. Liability exposure for damages per class member**

Based on Plaintiffs' review of program files so far, individuals who were extended because of their poverty spent an average of approximately 4 additional months on pay-only supervision, during which time they submitted to approximately 18 additional drug tests.[17] For the purposes of this calculation, Plaintiffs assume that each test cost $15.[18]

---

[16] Although Arizona does not offer expungement, it does allow individuals to apply to "set aside" a conviction, but this does not actually remove the conviction from one's record. *See* Ariz. Rev. Stat. § 13-907. Thus, for example, an employer would still see the conviction, but would also see the set aside order.

[17] This comports with Plaintiffs' experiences, which are typical of the putative class. For example, Plaintiff Deshawn Briggs submitted to 15 drug tests during his three-month pay-only period, *see* TASC000064; Mark Pascale submitted to 23 tests during his nearly four-and-a-half month pay only-period, *see* TASC000274. Plaintiffs are also aware of cases in which participants were subject to longer of extended supervision and as many as four tests per week.

[18] This estimate is very conservative. TASC charged a baseline rate of $15 for drug and alcohol tests, but TASC imposed a surcharge for certain common payment methods, and the available evidence suggests that (for unknown reasons) some participants were likely charged more per test. Once Plaintiffs receive a representative sample of the program files, Plaintiffs plan to use them to extrapolate the proportion of drug and alcohol tests that cost each different amount and re-calculate the estimate liability for restitution of class members' payments for these tests during the pay-only period accordingly. Based on the information currently available, Plaintiffs strongly anticipate that the restitution amount per class member will rise, which could significantly increase the amount of class damages overall.

24

Based on these approximations, Plaintiffs estimate damages per class member as follows:

- **Pre-file class member unlawfully extended: $3,284**

- **Post-file class member unlawfully extended: $4,084**

- **Class members who were unlawfully terminated, but not convicted: $1,750[19]**

- **Class members who were unlawfully terminated and convicted: $5,750**

3. <u>Liability exposure for class damages</u>

Plaintiffs estimate Defendant TASC's liability for class damages based on the information that Plaintiffs have reviewed in discovery so far.[20] Based on Defendant TASC's representations, Plaintiffs estimate that approximately 7000 individuals participated in MDPP during the relevant period. *See* TASC Rep. (Doc. 178) at 5.

---

[19] For the purposes of this calculation, Plaintiffs conservatively estimate that terminated participants have paid an average of $250 to TASC, including drug and alcohol testing fees. However, based on the information currently available to Plaintiffs, this is likely an under-estimate. Plaintiffs assume that no pre-file participant who was terminated was subsequently convicted (which is unlikely, based on the information available to Plaintiffs), and that all post-file participants who were terminated were convicted (which is appropriate since all participants are required to submit statements confessing to the underlying facts of the alleged offense in order to enroll in MDPP, and these statements are admissible against them in criminal proceedings). Once plaintiffs receive a representative sample of TASC's program files, Plaintiffs will make a more precise calculation.

[20] Plaintiffs expect that, once they receive a sample of the program files, Plaintiffs will be able to make these estimates with greater accuracy. Therefore, for the present purposes, Plaintiffs have made conservative estimates. However, Plaintiffs will revise these estimates for future offers once Plaintiffs have received and reviewed the program files and can extrapolate the necessary information from them. As noted with respect to several of Plaintiffs' current estimates, because Plaintiffs have chosen to make conservative estimates for the time being, Plaintiffs expect the total class liability exposure calculated for Defendant TASC to rise, potentially significantly.

1
2
3
4
5
6
7
8
9
10

Of those participants, Plaintiffs estimate—conservatively—that <u>at least</u> 35 percent were too poor to afford TASC's fees.[21] Plaintiffs then reduced that number by 18%, which is the portion of positive drug tests collected by TASC-run diversion programs, to account for individuals who would not have successfully completed diversion even if they were able to pay. *See* MC-00531.[22] Thus, Plaintiffs expect that there are at least 2009 class members eligible for damages.

Plaintiffs also estimate, based on the available evidence, that approximately 76% of MDPP participants are post-file, and 24% are pre-file. *See* MC-00546. As a

11
12
13
14
15
16
17
18
19
20
21

[21] This estimate is almost certainly low. Although Defendant TASC has stated that it has not tracked the number of indigent participants in this program and Plaintiffs have not yet been able to review an appropriate sample of program files to make an estimate, certain documents provided by Maricopa County in discovery are useful in estimating the potential number of class members. For example, in the first quarter of 2019, TASC reported that 31.41 percent of participants paid a "sliding scale" fee amount rather than the full fee amount. *See* MC-00571. These documents suggest that, at approximately this time period, participants became eligible for the sliding scale at 175-199% of the federal poverty level, which, for a single adult, means an annual income of $21,858-24,980. *See* MC-00242-243. A living wage in Maricopa County for a single adult is $25,563. *See* Mass. Inst. Tech., Living Wage Calculator, https://livingwage.mit.edu/counties/04013 (last visited Aug. 25, 2020). Therefore, the sliding scale is under-inclusive of individuals who cannot afford basic expenses, much less pay $950 or $1000 within three months. In addition, TASC reported that, of MDPP participants between March 1, 1989 to March 31, 2018, 29.4% of participants were unemployed, 1.7% were disabled, and 25.2% worked only part time. *See* MC-00547.

22
23
24
25
26
27
28

[22] This is almost certainly an overestimate. The 18% figure comes from data about *all* TASC-run diversion programs and not just the MDPP, so it includes individuals who were referred for using more addictive narcotics. Moreover, TASC does not penalize all individuals who test positive one time; thus, the rate of positive tests does not neatly equate to the rate of valid terminations or extensions. However, Plaintiffs have used this over-inclusive number to account for other reasons unrelated to payment for which participants who cannot afford to pay fees might be terminated or extended. When Plaintiffs receive a representative sample of program files, Plaintiffs intend to re-calculate this figure based on that more precise information. Plaintiffs anticipate that doing so will increase their estimate of the number of class members eligible for recovery and thus, TASC's liability for damages overall.

result, Plaintiff expect approximately 482 pre-file class members and 1527 post-file class members who were extended or terminated.

With respect to termination, TASC reports that approximately 25% of MDPP participants have been terminated. MC-00576. Using this figure, Plaintiffs estimate that approximately 121 pre-file class members and 382 post-file class members were unlawfully terminated.[23]

Accordingly, Plaintiffs estimate total liability for class damages at $10,224,806.

### 4. Compensation for Named Plaintiffs

Based on the valuations above, Plaintiffs can now calculate Named Plaintiffs' particular damages.

Plaintiffs previously anticipated seeking restitution of all MDPP-associated fees submitted for all class members. However, as described above, Plaintiffs now plan to do so only for class members who were terminated. This appears more appropriate to the harms at issue because Plaintiffs do not challenge Defendants' right to impose fees, but rather their imposition of penalties and exclusion of participants from opportunities based on their inability to pay those fees. With respect to unlawful termination, it remains appropriate for terminated class members to receive full reimbursement of fees paid because those fees were paid in

---

[23] Plaintiffs' calculation assumes that class members who were terminated were extended as well, since this is consistent with the evidence currently available to Plaintiffs. While this was likely not true in every case, Plaintiffs compensate for any overestimate that might result by excluding the possibility of multiple violations against the same individual (which is also consistent with the available evidence). For example, a pre-file participant may be extended, then terminated, then re-enrolled in MDPP as a post-file participant, then extended again, then terminated and convicted. Therefore, the estimate is likely to be conservative overall. Plaintiffs plan to adjust this number upon review of a representative sample of program files.

order to receive a benefit—avoidance of prosecution—which, due to their poverty, they did not receive.

In addition, Plaintiffs previously included lost wages and transportation costs in earlier damages calculations, but Plaintiffs now plan to refrain from doing so in order to increase the administrability of calculating damages for each class member. Accordingly, Plaintiffs calculate each Named Plaintiffs' damages based on the specific violations that each suffered as follows:

a. *Deshawn Briggs*

| Violation | Extent of violation | Value |
|---|---|---|
| **Months extended on post-file diversion ($400/month, prorated)** | 3 months. | $1200 |
| **Total paid for drug tests during pay-only period (120% restitution)** | $174 | $209 |
| **Total number of drug tests** | 14[24] | $1680 |
| **Damages** | | $3,089 |

b. *Antonio Pascale, as representative of Mark Pascale*

| Violation | Extent of violation | Value |
|---|---|---|

---

[24] Plaintiffs previously understood Plaintiff Briggs' records to show that he was required to submit to 15 drug and alcohol tests during the pay-only period. Based on this, and assuming Defendant TASC's $15 testing rate, which appears to have been standard during the relevant period, Plaintiffs previously estimated that Mr. Briggs had paid approximately $195 for those tests. However, it appears that Mr. Briggs' case manager made at least one error in Mr. Briggs' billing and/or testing records. *See* TASC000064, TASC000068, TASC000086. Based on closer analysis, it appears that Mr. Briggs was required to submit to 14 drug and alcohol tests, for which he paid $174. Further discovery on this error may help to clarify this issue, and Plaintiffs may seek information from Defendant TASC and/or Henry Rojo, Mr. Briggs' case manager, for this purpose.

| Months extended on post-file diversion ($400/month, prorated) | 4.47 months | $1788 |
|---|---|---|
| Total paid for drug tests during pay-only period (120% restitution) | $360 | $432 |
| Total number of drug tests ($120 damages per test) | 25 | $3000 |
| Damages | | $5220 |

*c.  Lucia Soria*

| Violation | Extent of violation | Value |
|---|---|---|
| Months extended on prw-file diversion ($200/month, prorated) | 1.87 months[25] | $374 |
| Total paid for drug tests during pay-only period (120% restitution) | $120 | $144 |
| Total number of drug tests ($120 damages per test) | 8 | $3000 |
| Damages | | $1478 |

As is typical in class actions, in addition to these damages, Defendant TASC will also be liable for compensation to Named Plaintiffs for their roles. For example, in *Luse v. Sentinel Offender Services, LLC*, No. 2:16-cv-00030-WCO (N.D. Ga), Named Plaintiffs were awarded approximately 23 times the amount awarded to the average

---

[25] Plaintiffs moved for leave to file a Second Amended Complaint, adding Plaintiff Soria as a Named Plaintiff to represent the putative Injunctive Class, on August 28, 2019. *See* Doc. 99. At that point, Ms. Soria was on pay-only diversion supervision and had been extended for over one month and a half. On September 4, 2020, Defendant TASC informed Ms. Soria that she had successfully completed the program and released her.

29

class member, plus their individual damages.[26] A court in this district has approved an incentive payments of 72 times the settlement amount for the average class member. *Ritchie v. Van Ru Credit Corp*., No. 2:12-CV-01714-PHX-SM, 2014 WL 3955268, at *3 (D. Ariz. Aug. 13, 2014) (approving an incentive payment of $12,000 where class members would receive, on average, $167).

As described above, class members stand to be awarded, on average between approximately $3200 to $5700 each. Accordingly, Plaintiffs estimate at present that an incentive payment of $85,000 to Named Plaintiffs would be appropriate, as this sum is slightly less than twenty times the value at the middle of the class members' recovery range.

Including both Named Plaintiffs' Incentive Payments and individual damages, Defendant TASC would be liable for $264,787.

### 5.   Total Damages Liability Exposure

Based on the calculations above, Defendant TASC's total damages exposure is estimated at $10,489,593.

### B.   Liability for Plaintiffs' Reasonable Attorneys' Fees and Expenses Pursuant to 42 U.S.C. § 1988

In civil rights cases like this one, counsel for prevailing plaintiffs request an award for reasonable attorneys' fees and non-taxable expenses. 42 U.S.C. § 1988. "[A] court's discretion to deny fees under § 1988 is very narrow and ... fee awards should be the rule rather than the exception." *Arizona Dream Act Coal. v. Brewer*,

---

[26] The average class member in *Luse* was compensated $15 in restitution and $90 in damages for an average of 3.5 unlawful drug tests. *See* Attachment B at 4-5. Thus, the average class member's award amount was $315. The Named Plaintiffs were awarded $7500 for their roles in the case, and one also was awarded $10,000 in damages. *Id.* at 9.

**No. CV 12-02546-PHX-DGC, 2018 WL 6448395, at \*1 (D. Ariz. Dec. 10, 2018) (quotations omitted).**

**Pursuant to Plaintiffs' settlement with Maricopa County and Defendant Allister Adel, in his official capacity ["the County Defendants"], the County Defendants will pay attorneys' fees attributable to Plaintiffs' efforts on matters that exclusively involve them, and they will pay no more than 50% of attorneys' fees attributable to litigation involving both MCAO and TASC.**

**However, the parties' agreement provides that MCAO is not liable for any fees starting on the date that settlement negotiations began: May 8, 2020. TASC faces sole responsibility for reasonable fees and costs incurred after that date.**

**Plaintiffs' counsel are currently in the process of calculating their fees and expenses for the purposes of settlement with the County Defendants, and Plaintiffs will update this disclosure within 30-days once that initial calculation has been prepared.**

**Ultimately, however, Plaintiff's counsel do not know the precise amount of fees that will accrue over the course of the litigation if this case does not settle. However, it would likely be a significant sum. For example, a federal district court recently concluded that, after approximately four years of litigation, a claim for $4,428,466.25 in fees and $300,721.99 in costs under § 1988 for attorneys on a team led by Civil Rights Corps, where several of Plaintiff' counsel are employed, was reasonable. *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at \*23 (S.D. Tex. Sept. 5, 2019). In *Arizona Dream Act Coal. v. Brewer*, a court in this district awarded $1,890,567.30 in attorneys' fees and $81,609.53 in non-taxable costs. No. CV 12-02546-PHX-DGC, 2018 WL 6448395, at \*12.**

**Liability for Punitive Damages**

**At the motion to dismiss stage, the district court rejected Defendant TASC's argument that Plaintiffs may not seek punitive damages against it. *See* Doc. 89 at 16. Therefore, Defendant TASC also faces liability exposure for punitive damages.**

**VIII.  Relevant Insurance Agreements**

At this time, Plaintiffs are unaware of any insurance policies maintained by Defendants that may provide coverage for some or all of the claims asserted in this matter. **Plaintiffs are also presently unaware of whether Defendant TASC has an insurance policy that covers all or part of its legal representation in this case.**

***

The undersigned hereby certifies that the responses provided herein are complete and correct as of the time made, based on the undersigned's knowledge, information, and belief formed after a reasonable inquiry, and signed under Rule 26(g) of the Federal Rules of Civil Procedure.

DATED this 28th day of August, 2020.

By /s/Katherine Chamblee-Ryan
Katherine Chamblee-Ryan
Olevia Boykin
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009

Timothy J. Eckstein
Joshua D. Bendor
OSBORN MALEDON
2929 N. Central Ave., Suite 2100
Phoenix, Arizona  85012-2793

COVINGTON & BURLING LLP
Stanley Young
5 Palo Alto Sq.
Palo Alto, CA 94306
(650) 632-4704
syoung@cov.com

Sarah Mac Dougall
620 8th Avenue

32

New York, New York, 10018
(212) 841-1215
smacdougall@cov.com

Virginia Williamson
850 10th St. NW
Washington, D.C. 20001
(202) 662-5983
vwilliamson@cov.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2020, the attached document was served via electronic mail upon counsel for all Defendants.

/s/Katherine Chamblee-Ryan
Katherine Chamblee-Ryan