**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deshawn Briggs, et al., | No. CV-18-02684-PHX-EJM |
| Plaintiffs, | **ORDER** |
| v. | |
| County of Maricopa, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' Second Motion to Compel (Doc. 254). Defendant TASC filed a Response (Doc. 268) and Plaintiffs filed a Reply (Doc. 271).

Plaintiffs request that the Court order TASC to search the emails of certain employees most likely to have information critical to Plaintiffs' case for class certification and produce the relevant electronic files. Plaintiffs specifically request that TASC perform keyword searches of emails of managers in four different roles[1] and six case managers. Plaintiffs aver that after meeting and conferring with TASC, Plaintiffs developed this narrowed list of employees to focus on the employees most likely to have critical discovery. Plaintiffs contend that the TASC employees they are seeking emails

---

[1] TASC has already performed a keyword search for Cheyenne Watson, diversion program manager/diversion program director. In their motion to compel, Plaintiffs note that the email production for Ms. Watson does not include any emails from prior to 2018. (Doc. 254 at 5 n.4). Plaintiffs therefore request that to the extent any other person held the position of program manager/program director (or, if those positions did not previously exist, a substantially similar position), during the relevant time period, that TASC be required to search those emails as well. *Id.* TASC avers that Ms. Watson was the only person to hold the position of diversion program manager/diversion program director from August 23, 2016 until TASC discontinued operations in August 2020. (Doc. 268 at 4 n.3).

from are highly likely to have communications responsive to Plaintiffs' request because the case managers were responsible for implementing the written and/or unwritten policies and practices of wealth-based discrimination that Plaintiffs seek to prove. Plaintiffs note that case managers answered participants' questions about fees and financial waivers, collected financial hardship information, and made decisions as to whether a participant would be extended or terminated from the program due to non-payment of fees. Plaintiffs further allege that the emails will show how the case managers were instructed and what they understood TASC's policies to be. Plaintiffs also allege that their discovery and investigation thus far demonstrate that managerial employees were closely involved in decisions about how TASC treated indigent participants. Plaintiffs request that TASC perform the email searches using the parties' already negotiated list of search terms[2] because when TASC previously searched managers' emails by topic, the search was inadequate to identify relevant documents.[3]

TASC alleges that Plaintiffs' discovery request is largely duplicative and not proportional to the needs of the case. TASC contends that Plaintiffs already have much of the information they are seeking because the 910 MDPP participant program files produced as part of the 15% sample ordered by the Court already contain emails between those participants and TASC case managers. Thus, the search would only yield emails between case managers and participants whose files were not already produced as part of the sample. In response to this argument, Plaintiffs explain that any emails included in the sample files are emails specific to that particular participant. What Plaintiffs are now seeking are emails between case managers and managerial staff regarding TASC's broader financial policies and practices affecting multiple program participants, as well as emails between case managers showing what their understanding of TASC's policies was and how to implement those policies. TASC also states that it has already searched the

---

[2] *See* Doc. 254 Ex. C
[3] TASC first searched the emails of Cheyenne Watson, diversion program manager/diversion program director, by topic. When TASC searched her emails again using terms, it produced over 400 pages of relevant emails, most of which the "topic" search had not identified. (Doc. 254 at 10).

- 2 -

emails of the four managerial employees and produced internal emails among those individuals, as well as emails between those individuals and MCAO regarding the MDPP. As noted above, Plaintiffs contend that the production of these emails was inadequate because TASC did not use keyword searches.

TASC further argues that Plaintiffs' request is overbroad because case managers did not have authority to create policies and TASC cannot be held liable for individual case manager actions that managers did not know about. Thus, searching the emails of non-managerial employees is irrelevant and unnecessary and a waste of time and resources because case managers could not make policy and their unreviewed actions cannot support a claim against TASC for any allegedly unconstitutional practices. Discovery is ongoing in this matter and the Court declines to evaluate the merits of a legal argument that is more properly addressed in a dispositive motion.

Finally, TASC alleges that Plaintiffs' motion is burdensome to TASC because it is winding down operations and has limited staff, TASC will have to hire an independent contractor, and conducting the search and production of relevant emails will require significant time and money.

Pursuant to Federal Rule of Civil Procedure 26(b)(1),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

After making an initial discovery request, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The burden is on the party seeking to compel discovery to demonstrate the relevance of the discovery request. *Sansone v. Charter Commc'ns, Inc.*, 2019 WL 460728, at *3 (S.D. Cal. Feb. 6, 2019). However, it is the "heavy burden" of the party opposing discovery to show why discovery should be denied. *Roehrs v. Minnesota Life Ins. Co.*, 228 F.R.D. 642, 644 (D. Ariz. 2005) (quoting

*Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). Courts have broad discretion to permit or limit discovery, *Andrich v. Arpaio*, 2017 WL 3283386, at *4 (D. Ariz. Aug. 2, 2017), and broadly construe a challenged request's relevance to a party's claim or defense, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

To prove their case for class certification, Plaintiffs must show that TASC had a common policy or practice affecting all class members, and that the injuries suffered by the named Plaintiffs are typical of the injuries suffered by putative class members. The Court finds that Plaintiffs' discovery request is relevant to their case for class certification because the emails Plaintiffs seek may contain information that will allow Plaintiffs to prove that TASC had an unconstitutional policy or practice so persistent and widespread that it constitutes a well-settled policy of wealth-based discrimination. For example, there will be emails between TASC case managers and managerial staff (or among case managers or managerial staff) discussing TASC's financial policies and how those policies applied to the MDPP generally, or to a group of MDPP participants. Communications may also reveal discussions about unofficial policies or practices and how MDPP participants experiencing financial hardship were actually treated.

The Court further finds that performing the email searches using terms, rather than topics, is more likely to produce a larger number of responsive documents, as evidenced by the search of Cheyenne Watson's emails. The Court declines TASC's request that the parties be ordered to meet and confer to negotiate search terms. The parties already spent a substantial amount of time negotiating the terms to be used in searching Ms. Watson's emails,[4] and the Court finds that it would contravene the interests of justice and judicial economy to further delay this action by allowing the parties to negotiate new search terms when the parties previously agreed to a list of terms. *See* Fed. R. Civ. P. 1 (This Court has an obligation to ensure "the just, speedy, and inexpensive determination of every

---

[4] Plaintiffs explain that they first proposed a list of terms in March 2020. (Doc. 271 at 3 n.3). After negotiating the terms with TASC, in July 2020 TASC agreed to perform a test search, and in November 2020 TASC agreed to use the terms to search Ms. Watson's emails. TASC began producing responsive emails from Ms. Watson's account on February 16, 2021. (Doc. 254 at 4).

action."); *see also Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("a district court possesses the inherent power to control its docket and promote efficient use of judicial resources"); *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 964–65 (9th Cir. 2004) ("All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders . . . ." (internal quotations and citation omitted)).

While the Court appreciates the burden that Plaintiffs' request will impose on TASC, as the Court has previously noted, such a burden exists in every civil matter involving discovery, and Plaintiffs have no other means to obtain the documents that they seek in their motion to compel. Though duplication of some documents that have previously been disclosed is likely inevitable, TASC may utilize de-duplication techniques to reduce its burden. *See* Doc. 271 at 6 n.6.[5] The Court notes that Plaintiffs identified 24 case managers who worked at TASC during the relevant time period but narrowed their discovery request to the six case managers Plaintiffs believe are most likely to have responsive information. The Court also notes that TASC has not disclosed whether its litigation costs are covered by an insurance policy, or how Averhealth's acquisition of TASC in August 2020 has affected TASC's financial or legal resources in defending this action. *See* Doc. 254 at 15–16.

Accordingly, for the reasons explained above,

**IT IS HEREBY ORDERED** granting Plaintiffs' Motion to Compel (Doc. 254) as follows:

1. TASC shall utilize the parties' previously negotiated list of search terms to conduct keyword searches of the email inboxes for the following individuals:

---

[5] To reduce TASC's burden, Plaintiffs offer that TASC does not need to produce communications that occur solely between case managers and individual program participants because these types of communications have already been produced as part of the sample files. However, Plaintiffs do request that, if a case manager forwarded such a communication to another TASC employee or supervisor, then that email would not be excluded from production. The Court agrees.

The Court further notes that, if it would ease TASC's burden to *not* identify communications that have already been produced in the sample files, TASC may simply produce all relevant communications from the case manager emails and place the onus on Plaintiffs to identify any duplicates.

      A. Case managers: (1) Viviana Garcia; (2) Henry Rojo; (3) Leticia Nugent; (4) Yolanda Brooks; (5) Arnetia Cardona; and (6) Josue Moreno.

      B. Managerial employees: (1) Chief Executive Officer Douglas Kramer; (2) Chief Operating Officer Marrya Briggs; and (3) Chief Program Officer Latrice Hickman.

2. TASC shall produce all relevant and non-privileged emails and attachments for the abovenamed individuals from August 23, 2016 through the present, with the exception of communications occurring solely between case managers and individual MDPP participants.

3. In compliance with Federal Rule of Civil Procedure 34(b)(2)(E), TASC shall produce the search results in native format.

4. To the extent that they are able to, Plaintiffs and TASC shall endeavor to work together to identify ways to reduce the number of duplicate or non-responsive results to lessen TASC's burden of production.

5. The Court declines to set a deadline for production at this time. However, in light of the approaching discovery deadlines for the class certification phase of this action, the parties shall work together to facilitate production of the emails as expeditiously as possible.

IT IS SO ORDERED.

Dated this 30th day of April, 2021.

Eric J. Markovich
United States Magistrate Judge