**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deshawn Briggs, et al., | No. CV-18-02684-PHX-EJM |
| Plaintiffs, | **ORDER** |
| v. | |
| Treatment Assessment Screening Center Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant Treatment Assessment Screening Center, Inc.'s ("TASC") Motion for Summary Judgment. (Doc. 246). All appropriate responses and replies have been filed, and the Court heard oral arguments from the parties on December 2, 2021. For the reasons explained below, the Court will deny the motion.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Named Plaintiffs Antonio Pascale,[1] Deshawn Briggs, and Lucia Soria filed this class action lawsuit on behalf of themselves and other similarly situated individuals against Defendants Maricopa County, Allister Adel in her official capacity as Maricopa County Attorney,[2] and TASC.[3] On joint motion by the parties, the County Defendants were dismissed with prejudice (Doc. 287) and Plaintiffs are now proceeding against

---

[1] The original named plaintiff, Mark Pascale, is now deceased. Upon motion by Plaintiffs, the Court ordered the substitution of Mark Pascale's son, Antonio Pascale, as the named party and personal representative of Mark Pascale's estate. (Doc. 171).

[2] Allister Adel was substituted as successor for former Maricopa County Attorney William Montgomery. (Doc. 115).

[3] This action also originally included as named plaintiffs Taja Collier and McKenna Stephens. (Doc. 110 ¶¶ 320–457). Upon stipulation by the parties, Collier and McKenna were dismissed with prejudice, and Count Three was dismissed. (Docs. 137, 138).

TASC as the sole defendant in this action.

Plaintiffs filed their second amended complaint ("SAC") on September 23, 2019. (Doc. 110). Plaintiffs allege claims under § 1983 on behalf of themselves and other similarly situated individuals for wealth-based discrimination in violation of Plaintiffs' Fourteenth Amendment rights (Count One) and unreasonable search and seizure in violation of Plaintiffs' Fourth and Fourteenth Amendment rights (Count Four) and seek compensatory and punitive damages. *Id.* at 51, 54. The SAC also alleges wealth-based discrimination and unreasonable search and seizure claims for injunctive relief. (Counts Two and Five). *Id.* at 52, 55. TASC conducted the Marijuana Deferred Prosecution Program ("MDPP") Plaintiffs were enrolled in. *Id.* ¶ 1. Plaintiffs allege that TASC subjected them to "longer terms of diversion supervision while under the threat of felony prosecution . . . solely because of their inability to pay fees associated with the program." *Id.* ¶ 347. Plaintiffs further allege that TASC required urinalysis testing for individuals who remained on the diversion program "solely because they were unable to pay the required fees." *Id.* ¶ 512.

On March 10, 2021 TASC filed its motion for summary judgment on Plaintiffs' remaining claims. (Doc. 246). TASC contends that summary judgment is appropriate because the named Plaintiffs cannot establish that they were unable to pay the MDPP fees. *Id.* at 2. TASC further argues that because the individually named Plaintiffs' claims fail, Plaintiffs lack standing to represent a class. Finally, because TASC has ceased operations, TASC asserts that Plaintiffs lack standing to seek claims for injunctive relief.

Plaintiffs contend that TASC has improperly limited the issue before the Court as to whether the named Plaintiffs could afford to pay TASC's fees. (Doc. 277 at 3). However, Plaintiffs argue that the real issue is whether TASC imposed consequences for non-payment without assessing whether Plaintiffs' non-payment was willful. Plaintiffs further assert that evaluating credibility and assessing efforts to pay or borrow money are questions of fact for the jury that cannot be resolved on summary judgment. Plaintiffs concede that their claims for injunctive relief are moot. *Id.* at 19. Accordingly, the Court

will dismiss counts two and five of the second amended complaint.[4]

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In addition, a "genuine" issue means that a reasonable jury could find in favor of the nonmoving party. *Id*. Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. The nonmoving party may not rest upon mere allegations or denials of the moving party's pleadings but must set forth "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In evaluating a motion for summary judgment, the Court must make all inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990) (court may not make credibility determinations or weigh conflicting evidence).

## III. DISCUSSION

TASC focuses its motion primarily on arguing that none of the named Plaintiffs can establish that they were unable to pay the MDPP fees. There is no dispute that the named Plaintiffs were poor. How poor, and their resultant ability to pay TASC's fees, is a material dispute of fact that is up to the jury to resolve. While the parties argue extensively in the pleadings as to what assets and resources the named Plaintiffs had and

---

[4] Plaintiffs' response included a request to complete discovery before the Court issued a decision on the merits of TASC's motion. (Doc. 277 at 17). Because discovery has since closed, this issue is now moot.

whether their expenditures were reasonable, this only serves to reinforce how highly disputed this issue is. TASC's emphasis on Plaintiffs' alleged ability to pay skirts the real issue before the Court—whether TASC wrongly extended individuals on diversion for non-payment without first making a sufficient inquiry into their ability to pay, determining whether Plaintiffs made bona fide efforts to pay, and offering financial assistance or fee waiver information when appropriate.

In denying TASC's prior motion to dismiss, this Court found that "Plaintiffs have sufficiently pled a prima facie case of wealth discrimination based on the policies that subject participants who are unable to pay the program fee to a longer period of time in the MDPP and all of the conditions that come along with it, including the urine screenings and the required fees for those screenings, and the ultimate possibility of being failed from the program and referred for felony prosecution solely because they are unable to pay the fees within 90 days." (Doc. 89 at 21). The undersigned considered the Supreme Court's decision in *Bearden v. Georgia*, 461 U.S. 660, 662 (1983), holding that that the trial court erred in automatically revoking probation where a petitioner could not pay his fine without first determining that the petitioner had not made sufficient bona fide efforts to pay or that there were no adequate alternate forms of punishment. The undersigned further cited to *State v. Jimenez*, 111 N.M. 782, 784 (1991), where the court extended *Bearden* to preprosecution diversion programs and held that, "[u]nder the principles established in *Bearden*, the state may terminate a diversion agreement, even if the sole ground is the defendant's nonwilful failure to make restitution, but only if there are no adequate alternatives to termination which will meet the state's legitimate penological interests."

While TASC argues that *Bearden* should be limited solely to situations involving incarceration and is thus inapplicable to the present matter, the undersigned has already rejected this argument in denying TASC's motion to dismiss. As the *Jimenez* court reasoned, "[b]oth defendants granted probation and those accepted into preprosecution diversion programs have a 'conditional liberty' interest—freedom from imprisonment or

freedom from prosecution and the possibility of a criminal record and imprisonment—which may not be revoked in violation of the procedural and substantive requirements of due process." 111 N.M. at 786 (citing *Black v. Romano*, 471 U.S. 606, 610 (1985)). "Similarly, the different treatment of individuals in the criminal justice system based on ability to pay restitution as a condition of either probation or preprosecution diversion invokes the same concerns for a defendant's right to equal protection." *Id.* (citing *Bearden*, 461 U.S. at 664). Thus, in denying TASC's motion to dismiss and finding Plaintiffs sufficiently pled a claim for wealth-based discrimination, the undersigned found that:

> Plaintiffs "have a 'conditional liberty' interest . . . [in] freedom from prosecution and the possibility of a criminal record and imprisonment." *Jimenez*, 111 N.M. at 786. And, this interest can be impacted to a great extent: when pay-only participants are required to stay in the program beyond 90 days solely because of inability to pay the program fee, they remain subject to all of the program terms including prohibitions on alcohol use, leaving the county or the state, and taking any prescription medication without reporting it to TASC, plus the required urine screens. (Doc. 20 ¶ 118). Moreover, participants live in fear of the ultimate consequence of being terminated from the program, referred for felony prosecution, and sentenced to prison. While TASC argues that Plaintiffs have not been absolutely deprived of the ability to complete the program, Plaintiffs have indeed been absolutely deprived of the ability to complete the program in 90 days like other, wealthier participants solely because they are unable to pay the program fee.

(Doc. 89 at 19); *see also MacFarlane v. Walter*, 179 F.3d 1131, 1141 (9th Cir. 1999) (noting that "crucial factor" was that additional incarceration was caused solely by indigency, and that "even a single extra day of incarceration is of substantial significance for constitutional purposes"), *cert. granted*, *opinion vacated sub nom. Lehman v. MacFarlane*, 529 U.S. 1106 (2000).

Extending the principles delineated in *Bearden* and *Jimenez* to the present matter requires that TASC first determine the reasons for non-payment and consider alternatives before extending a participant in the MDPP solely because of alleged inability to pay TASC's fees. *See Bearden*, 461 U.S. at 668 (drawing a distinction "of critical

importance" between a probationer who "has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own," and a probationer who has "willfully refused to pay" when he has the means to do so or who has failed "to make sufficient bona fide efforts to seek employment or borrow money") and 672–73 (Requiring an inquiry "into the reasons for the failure to pay" before revoking probation and sentencing a defendant to imprisonment because "[t]o do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment."); *see also Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) (applying *Bearden* line of criminal cases to immigration detention and finding that due process requires consideration of financial circumstances and alternative conditions of release because criminal cases "confirm the common-sense proposition that when the government detains someone based on his or her failure to satisfy a financial obligation, the government cannot reasonably determine if the detention is advancing its purported governmental purpose unless it first considers the individual's financial circumstances and alternative ways of accomplishing its purpose[]"); *MacFarlane*, 179 F.3d at 1139 ("*Bearden* controls the analysis of whether and under what circumstances an individual can be subjected to greater incarceration solely because of indigency."); *United States v. Parks*, 89 F.3d 570, 572–73 (9th Cir. 1996) (applying *Bearden* to hold that imposition of criminal history points to enhance sentence based solely on nonpayment of fees and restitution without inquiry as to whether nonpayment was willful was fundamentally unfair); *Martin v. Solem*, 801 F.2d 324, 332 (8th Cir. 1986) (finding state trial court failed to comply with *Bearden* when it revoked probation without determining whether petitioner made sufficient bona fide efforts to pay and stated petitioner was not totally disabled and had some ability work, but reversing district court's order granting habeas relief because trial court also found that petitioner intentionally refused to pay); *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758, 767 (M.D. Tenn. 2015) (finding that "the Fourteenth Amendment

requires an inquiry into indigency before probationers are held on secured money bonds and before they can be jailed solely on the basis of nonpayment"); *De Luna v. Hidalgo Cty., Tex.*, 853 F. Supp. 2d 623, 653 (S.D. Tex. 2012) (applying *Bearden* and granting summary judgment on "Plaintiffs' claims that the County violated their federal due process and equal protection rights by failing to conduct an affirmative indigency determination before incarcerating them for nonpayment of fines and costs[]"); *Com. v. Melnyk*, 378 Pa. Super. 42, 53–54 (1988) (applying *Bearden* to hold that it was fundamentally unfair to deny defendant participation in accelerated rehabilitative disposition program solely because she was unable to pay restitution). While TASC contends that the evidence establishes that none of the named Plaintiffs were unable to pay the fees through no fault of their own, TASC puts the cart before the horse and ignores *Bearden's* procedural framework. Further, in focusing on Plaintiffs' alleged failure to prove their indigency, TASC asks the Court to make what is inherently a factual determination—weighing the evidence and determining the truth of Plaintiffs' alleged inability to pay—precisely the kind of inquiry that summary judgment forbids. *See Anderson*, 477 U.S. at 249; *Musick*, 913 F.2d at 1394. Indeed, it is hard to say how any issue could be more "material" than the one presented here, where the underlying basis of Plaintiffs' claims is that they were extended in the MDPP solely because they were unable to pay TASC's fees.[5]

While TASC's motion largely ignores Plaintiffs' Fourth Amendment theory of liability by focusing on Plaintiffs' alleged failure to prove inability to afford TASC's fees, Plaintiffs argue that their "Fourth Amendment claims are not contingent on inability to pay." (Doc. 277 at 18); *see also* Hr'g Tr. at 21:2–4, 21:9–11, 29:19–30:4. However, it is clear from the face of the SAC that Plaintiffs only allege claims for participants who were subjected to longer terms of supervision "solely because of their inability to pay fees associated with the program." (Doc. 110 at 51 ¶ 487) (Count One, wealth-based

---

[5] Plaintiffs allege that TASC case managers admitted that Plaintiffs were required to remain on supervision after completing all other program requirements solely because they were unable to pay, and that case managers made no efforts to assess Plaintiffs' ability to pay. (Doc. 277 at 5); *see also* Hr'g Tr. at 34:14–25, 44:13–17, Dec. 2, 2021.

discrimination in violation of the Fourteenth Amendment); *see also id.* at 54 ¶ 512 (Count Four, unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments, alleging that TASC required urinalysis for participants who remained on MDPP "solely because they were unable to pay the required fees"). The Court further rejects Plaintiffs' assertion that inherent in the Court's ruling on TASC's motion to dismiss "was a determination that TASC's Fourth Amendment liability is not predicated solely on Plaintiffs' ability to pay." (Doc. 277 at 16). The Court made no such finding, and the SAC pleads no Fourth Amendment claims separate from the claim that individuals who were extended on MDPP solely because they were unable to pay TASC's fees were subjected to urinalysis.[6] The Court likewise rejects Plaintiffs' argument that their procedural due process claim encompasses both individuals who could afford to pay TASC's fees as well as those who could not. Accordingly, the Court finds that Plaintiffs' claims in Counts One and Four are limited to individuals who were extended on the MDPP solely because they were unable to pay TASC's fees within 90 days. As the litigation of this matter continues, Plaintiffs' theory and evidence is limited to this class of individuals.[7]

## IV. CONCLUSION

Accordingly, for the reasons explained above,

**IT IS HEREBY ORDERED** denying TASC's Motion for Summary Judgment. (Doc. 246).

**IT IS FURTHER ORDERED** dismissing Counts Two and Five of Plaintiffs' Second Amended Complaint. (Doc. 110).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion to Strike. (Doc. 308).

---

[6] In denying TASC's motion to dismiss, the Court referenced Plaintiffs' own argument that they had stated a valid Fourth Amendment claim based on TASC's policy that required pay-only participants to continue to submit to urinalysis and that this was a suspicionless search that only applied to the indigent because they were unable to pay TASC's fees. (Doc. 89 at 24). At oral argument, Plaintiffs' counsel admitted that their complaint repeatedly references "pay-only participants who TASC extended solely because they were unable to afford the fees[.]" Hr'g Tr. at 44:4–7.
[7] Because the Court finds that Plaintiffs' claims in Count One and Count Four survive summary judgment, TASC's arguments regarding standing are moot and the Court declines to address them further.

The contested exhibits are not unduly prejudicial to Plaintiffs and had no bearing on the Court's decision on TASC's motion for summary judgment.

IT IS SO ORDERED.

Dated this 29th day of December, 2021.

Eric J. Markovich
United States Magistrate Judge