# EXHIBIT 6

(Exhibit 4 to the Settlement Agreement)

**Process for Determining Claim Eligibility for a Cash Award**

**Background:**

1. To determine eligibility for a Cash Award, Atticus reviewers will follow the process outlined in this document.

2. Only claimants who had a verified inability to pay the program fees <u>and</u> were extended "pay-only" on the Possession of Marijuana Deferred Prosecution Program (POM or MDPP) will be eligible for a Cash Award.

**Determining Whether A Claimant Has A Verified Inability to Pay Program Fees:**

3. Under the terms of the Settlement Agreement, a Claimant has a verified inability to pay the program fees if they were a recipient of public benefits or otherwise met the threshold standard for inability to pay the TASC program fees under the 2018 Self-Sufficiency Standard during their enrollment in POM.

4. The determination of whether someone had a verified inability to pay the program fees begins with information included in the Verification of Income Form.

*Reviewing Claim Form:*

5. If a Claimant answered "Yes" to questions 2 or 3, or verified that one of the options on the Household Income Chart applies to them, they are presumed to have had an inability to pay the program fees. The presumption of inability to pay can only be overcome if there is a material distinction between the information on the Claimant's Verification of Income Form and any financial documentation or reported personal or financial information included in the claimant's Complete Participant File.

1

6.      If a Claimant answered "No" to questions 2 and 3, but provided verified information under penalty of perjury regarding their household composition and approximate income on the Household Income Chart, the Atticus reviewer will consider whether they fell under the income limits set forth in the 2018 Self-Sufficiency Standard using the chart in Appendix A to this exhibit.

7.      If a Claimant answers "No" to questions 2 and 3 and did not check any of the boxes in column 3 of the Household Income Chart, they may still self report information under the penalty of perjury regarding their household composition and income. Using the information provided, the Atticus reviewer shall refer to Appendix A using the Claimant's reported household composition and corresponding average approximate household income for that specific household composition as set forth in Appendix A. For example, according to Appendix A, if the Claimant's household (while a POM participant) consisted of 1 adult and 2 children, and their reported income at that time was less than $5,000 per month (or $60,000 per year), they would be below the Self Sufficiency Standard's minimum income required to meet their basic needs and presumed unable to pay their TASC program fees.

8.      If the reviewer concludes that the Claimant fell under the 2018 Self-Sufficiency Standard based on the self-reported information, the reviewer will presume that they were unable to pay the program fees.

9.      If the reviewer concludes that the Claimant did not fall under the 2018 Self-Sufficiency Standard based on the self-reported information, the reviewer will conclude that the Claimant does not have a Valid Claim. No further review is necessary.

*Reviewing Program File:*

10. The Atticus reviewer will review the program files of claimants with a presumed inability to pay for any material distinction between the information on the claimant's Verification of Income Form and any financial documentation or reported personal or financial information included in the claimant's Complete Participant File. A material distinction is one that would exclude the claimant from eligibility under the 2018 Self Sufficiency Standard (Appendix A), including income and/or household size. For example, if the Claimant indicated on the Verification of Income Form that they lived in a household of one adult and one child and had an average approximate household income of less than $43,000, but had indicated on their POM intake form that they lived alone and made $50,000 per year, that would be grounds to conclude they do not have a verified inability to pay, because $46,000 is the outer limit under the Standard for that household composition. On the other hand, if the Claimant indicated on the Verification of Income Form that they lived in a household of one adult and one child and had an average approximate household income of $38,000, but had indicated on their POM intake form that they made $40,000 per year, that would not be considered a material distinction because they still fall under the Standard.

11. If there is no material distinction between the Verification of Income Form and the information in the Claimant's Complete Participant File, the Atticus reviewer will conclude that the Claimant has a verified inability to pay.

12. If a material distinction exists, the reviewer will conclude that the Claimant does not have a Valid Claim. No further review is necessary.

13. If the reviewer is unsure, they may consult with Class Counsel as provided for under the terms of the Settlement Agreement.

**Determining Whether A Claimant Was Extend Pay-Only:**

14. The determination of whether someone was extended pay-only is based on the following foundational principles about POM:

   a. To complete POM, a participant had to satisfy three requirements: (1) 90 days of clean testing ("the Clean Testing Requirement"); and (2) a three-hour seminar ("the Seminar Requirement"); and (3) payment of fees.

   b. In addition, some participants who tested positive for prohibited substances were required to complete "treatment services."

   c. Once these requirements (including payment) were satisfied, the participant was successfully "completed" from diversion.

15. "Pay-Only Extension" refers to a period of diversion supervision that commences once a participant had met all program requirements other than the payment of program fees. In other words, pay-only participants are those who satisfied the Clean Testing Requirement, the Seminar Requirement, and, where applicable, any additional "treatment services," but were continued on the program solely because they had not completed the payment of fees. This requires the reviewer to determine whether the participant continued to make program fee payments *after completing all non-payment based requirements*.

16. Using each Claimant's program file and transaction history, reviewers will look for the following in each file to determine whether the participant was extended pay-only:

    a. The date the participant completed the Clean Testing Requirement.

    b. The date the participant completed the Seminar Requirement.

    c. The date the participant completed any additional requirements that were imposed. If no such requirements were imposed, or if any such requirements were imposed only after all other non-payment-based requirements were completed, this category is not applicable.

    d. The date on which the participant completed all non-payment based requirements (*i.e.*, the latest of the three previous dates).

    e. The date on which the participant finished paying all program fees.

    f. The participant's date of completion or termination.

17. If the date described in Paragraph 16.e. is later than that in 16.d., the reviewer should conclude that the claimant was subjected to a pay-only extension ("Pay Only Extension").

18. Once a reviewer concludes that a claimant was subjected to a Pay-Only Extension, they will compute the duration of the extension (using the dates in Paragraphs 16.d. and f.) to determine the amount of the Cash Payment in accordance with the Settlement Agreement.

**Clean Testing Requirement:**

19.     A participant completed the Clean-Testing Requirement when they had no positive urinalysis tests for a specified number of days. For purposes of review, the requirement for all files is 90 days of clean testing.

20.     If a participant tested positive, the Clean-Testing Requirement time period would re-start. As a result, this clean-testing period could be completed at the start of the program, after a positive test, or even a series of positive tests.

21.     The "Individual Testing Compliance Summary" demonstrates the date on which the participant completed the clean-testing period. The Compliance Summary is included in each participant's file and documents all of the participant's testing results.

22.     As a general rule, a missed or diluted test did not trigger a restart of the clean testing period. But if a participant tested positive for a prohibited substance while participating in the POM program, including at the outset of the POM program, the participant was required to restart the clean testing period of clean testing from the date of his/her next clean test.

23.     For example, the following compliance summary shows that the participant's first clean test was on December 16, 2016, and that the participant completed 90 days of clean testing from December 16, 2016, to March 16, 2017:

6

| Date | Random Color Match | Accn # | ALC | AMP | BAR | BEN | COC | MDN | OPI | PCP | PRO | THC | BUP | XTC | ETG | OTH | Com |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/28/16 | No Sample Collected (YELLOW) | | | | | | | | | | | | | | | | |
| 10/31/16 | YELLOW - Match | 10822284 | | neg | | neg | neg | | | | | POS | | | neg | | 1 |
| 11/09/16 | YELLOW - Match | 10845934 | | neg | | neg | neg | | | | | POS | | | | | 1 |
| 11/16/16 | YELLOW - Match | 10860595 | | neg | | neg | neg | | | | | POS | | | neg | | 1 |
| 11/21/16 | YELLOW - Match | 10872387 | | neg | | neg | neg | | | | | POS | | | neg | | 1 |
| 12/01/16 | YELLOW - Match | 10894243 | | neg | | neg | neg | | | | | POS | | | | | 1 |
| 12/09/16 | YELLOW - Match | 10911621 | | neg | | neg | neg | | | | | POS | | | | | 1 |
| 12/16/16 | YELLOW - Match | 10928742 | | neg | | neg | neg | | | | | | | | neg | | |
| 12/19/16 | YELLOW - Match | 10931242 | | neg | | neg | neg | | | | | | | | neg | | |
| 12/28/16 | YELLOW - Match | 10951199 | | neg | | neg | neg | | | | | | | | neg | | |
| 01/06/17 | YELLOW - Match | 10972579 | | neg | | neg | neg | | | | | | | | neg | | |
| 01/11/17 | YELLOW - Match | 10983727 | | neg | | neg | neg | | | | | | | | neg | | |
| 01/18/17 | YELLOW - Match | 10997348 | | neg | | neg | neg | | | | | | | | neg | | |
| 01/24/17 | YELLOW - Match | 11011605 | | neg | | neg | neg | | | | | | | | neg | | |
| 01/30/17 | YELLOW - Match | 11025530 | | neg | | neg | neg | | | | | | | | neg | | |
| 02/10/17 | YELLOW - Match | 11053314 | | neg | | neg | neg | | | | | | | | neg | | |
| 02/13/17 | YELLOW - Match | 11058493 | | neg | | neg | neg | | | | | | | | neg | | |
| 02/23/17 | YELLOW - Match | 11065359 | | neg | | neg | neg | | | | | | | | neg | | |
| 03/03/17 | YELLOW - Match | 11103339 | | neg | | neg | neg | | | | | | | | neg | | |
| 03/09/17 | YELLOW - Match | 11116035 | | neg | | neg | neg | | | | | | | | neg | | |
| 03/14/17 | YELLOW - Match | 11128316 | | neg | | neg | neg | | | | | | | | neg | | |

Individual Testing Compliance Summary for the Period: 7/1/11 - 7/31/17
Name: [redacted]   DOB: [redacted]   Account: OM/BM   Agency ID: [redacted]   Current Color: N/A   Referred By: YOLANDA BROOKS

24. In some circumstances, a participant could complete the Clean-Testing Requirement despite testing positive for a prohibited substance within the 90-day period. When calculating completion of the Clean-Testing Requirement, the reviewer should check if any of the circumstances described in paragraph 25 and 28 below applied.

25. Positive tests did not count against the 90-day period if (1) the participant had a medical marijuana card and TASC had approved them for usage; or (2) the positive test was a result of an authorized prescription. These circumstances were recorded in the participant's "Case Notes."

26. Thus, where applicable, the Case Notes document participants' approval for marijuana use and authorized prescriptions.

Created on: 4/11/2017    Created by: jmoreno
CT met with CM re. MM paperwork. CT signed all MM paperwork. CM explained to CT that from now on THC positives will not be considered a program violation. CM also explained that if CTs MM expires, CT may not continue using during the lapse of time between getting CTs new MMC. Any THC positives in the time will be considered a program violation. CT stated he understood. CM reviewed program requirements.



27. When a participant's Compliance History shows that the participant tested positive for a prohibited substance, the Atticus reviewer should review the participant's Case Notes and file to determine whether one of the two specified exceptions applied. If there is no explicit evidence of such an approved exception, the reviewer should assume that the participant was required to restart the clean testing period from her next clean test. But if explicit evidence of such an approved exception exists, the reviewer should disregard the positive test for the purpose of computing the Clean-Testing Requirement completion date.

28. Finally, even when a participant tested positive, TASC sometimes opted to extend the program for fewer than 90 days (or not to extend it at all). These circumstances are documented in the Case Notes. If such is the case, the Atticus reviewer should compute the Clean-Testing Requirement completion date based on what the Case Notes say.

**The Seminar Requirement**

29. To successfully complete the POM diversion program, participants were required to complete a three-hour seminar.

30. Participants' files provide multiple means to determine whether and when the participant completed this requirement.

31. Each participant's originally scheduled seminar date was documented on their intake forms.

32. In many cases, the Case Notes explicitly state that the seminar was completed. If so, this is the date of the completion of the Seminar Requirement. No further review is needed for determining when the Seminar Requirement was satisfied.



33. If not, the reviewer should look for evidence that the seminar was missed or rescheduled, as described in Paragraphs 34-36.

34. Case managers tracked the participant's seminar date and any rescheduled dates in the Case Notes. This is one indication that a participant missed her originally scheduled seminar date.



35. If the participant's file shows no indication that the seminar was not completed on the day it was rescheduled, that indicates the participant completed it on the day it was rescheduled.

9

36. Also, for participants who were terminated unsuccessfully from diversion, the "Submittal Form" in the participant's file states whether and when the participant completed the Seminar Requirement. This is another way to verify the seminar completion date.

**Additional Treatment Requirements**

37. Participants who tested positive were sometimes required to complete "treatment services," like an Alcohol Education Awareness Class, on top of the program's other requirements.

38. Any additional requirements imposed were documented in the Case Notes:



39. Where applicable, the participant had to satisfy these additional requirements before they could successfully complete the POM diversion program. Therefore, it is necessary to review each participant's Case Notes to see whether any such requirements were imposed before they were otherwise eligible for completion (*i.e.* before the participant had completed all other non-payment-based requirements). If such requirements were imposed, documents in the case file often indicated when the participant completed these requirements.

40. The Case Notes also often document when a participant completed these additional requirements.



41. When the case manager scheduled the treatment requirement, like the Alcohol Education Awareness Class, the Case Notes also document whether it was rescheduled or missed.



42. Additionally, participants were required to pay for "treatment services" at the time of each session. Therefore, it is often possible to see the date the participant completed the treatment requirement based on the date of their final counseling payment. This is shown in the participant's Transaction History, which includes every payment the participant has made and the date of that payment, including not only the program fees, but also the urine testing fees, surcharges, counseling fees, and any other fee paid to TASC.

43. Finally, for participants who were terminated, the "Submittal Form" states whether the participant was referred for counseling, and if so, whether and when the participant completed any counseling requirements.

44. If there is no indication in the participant file that they completed any additional required treatment and, also, paid any required fee for such treatment, the reviewer should conclude that the participant failed to satisfy this program requirement.

**Non-Payment-Based Requirements Complete**

45. A participant completed all non-payment based requirements—the 90-Day Requirement, the Seminar Requirement, and any additional required treatment services—on the latest of those three completion dates, representing the point in time in which there were no further program obligations to satisfy other than payment. The reviewer should note this date.

**Program Fees Paid**

46. To determine whether a participant was extended pay-only, the reviewer must determine whether the participant continued to make program fee payments *after completing all non-payment based requirements*.

47. The program fees include:[1]

   a. "County Attorney Assessment," also referred to as the "POM CA Fund" (all participants);

   b. "TASC Program Fee," also referred to as the "POM TASC Fee" (all participants);

---

[1] "Program fees" do not include fees for urinalysis.

      c. "TASC Application Fee," also referred to as the "Admission Fee" or "Orientation Fee" (all participants);

      d. "County Jail Booking Fee," also referred to as the "MCSO Fee" (some participants); and

      e. Seminar rescheduling fee (some participants).

48. Each participant's file includes a "Payment History," which documents the dates and amounts of every installment the participant made against each program fee and seminar rescheduling fee.

| | | | |
|---|---|---|---|
| **10002 Admission Fee** | | BALANCE: | $0.00 |
| | TRANDATE | Receipt No. | AMOUNT |
| 10002 | 4/3/18 | 180403-005601437 | $150.00 |
| | | Total Payments: | $150.00 |
| **10015 POM CA Fund** | | BALANCE: | $0.00 |
| | TRANDATE | Receipt No. | AMOUNT |
| 10015 | 4/20/18 | 180420-005622658 | $20.00 |
| 10015 | 5/18/18 | 180518-005653487 | $105.00 |
| 10015 | 6/15/18 | 180615-005683441 | $180.00 |
| 10015 | 7/20/18 | 180720-005717988 | $180.00 |
| 10015 | 8/17/18 | 180817-005745634 | $165.00 |
| | | Total Payments: | $650.00 |
| **10016 POM MCSO Fund** | | BALANCE: | $0.00 |
| **10017 POM TASC Fee** | | BALANCE: | $0.00 |
| | TRANDATE | Receipt No. | AMOUNT |
| 10017 | 4/20/18 | 180420-005622658 | $150.00 |
| | | Total Payments: | $150.00 |
| **10080 SEMINAR RESCHEDULE FEE** | | BALANCE: | $0.00 |
| | TRANDATE | Receipt No. | AMOUNT |
| 10080 | 5/18/18 | 180518-005653487 | $75.00 |
| | | Total Payments: | $75.00 |

49. A participant was extended pay-only only if the date of her final program fee payment is later than the date the participant completed all non-payment based requirements (i.e. the date in Paragraph 43). If the date of the final program fee payment is prior to the date on which the participant completed all non-payment based requirements, the reviewer should conclude that the claimant was not extended pay-only and is not entitled to a Cash Award.

**Completion/Termination Date**

50. For claimants that were extended pay-only, the reviewer must calculate the length of the Pay-Only Extension to determine the amount of the Cash Award the participant is entitled to.

51. They should do this by computing the number of days between the completion or termination date (date in Paragraph 50) with the date the participant completed all non-payment based requirements (date in Paragraph 43).

52. The participants' completion or termination dates are noted on the "Maricopa County Attorney/TASC Diversion Submittal Form" located in each file. Terminations from the program are noted on this form as well.